IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| ALTABA, INC. (F.K.A. YAHOO! INC.) | ) | |
| 140 East 45th Street, 15th Floor | ) | |
| New York, New York 10017-3144, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT TO REDUCE TAX LIABILITIES TO JUDGMENT

Plaintiff, the United States of America, at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of Treasury, and at the direction of the Attorney General, brings this civil action to collect the unpaid federal tax liabilities of the taxpayer Altaba, Inc. ("Altaba").

### JURISDICTION AND VENUE

1.      Jurisdiction over this action is conferred upon this Court pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 because Altaba is incorporated in this jurisdiction.

### PARTIES

3.      Plaintiff is the United States of America.

4.      Altaba is a Delaware corporation with its current headquarters and principal place of business in New York, New York.  Ex. A, Chancery Court Pet. ¶ 14.[1]

## BACKGROUND

5.      Yahoo! Inc. ("Yahoo") was incorporated in 1995 and developed into one of the largest internet companies in the world.  Ex. A, Chancery Court Pet. ¶ 15.  Yahoo provided a variety of web services, including a web portal and search engine.  *Id.* ¶ 16.

6.      Yahoo acquired a thirty percent interest in Alibaba Group Holding Limited ("Alibaba") in 2005 for approximately $1 billion.  Alibaba is a Chinese multinational technology company specializing in e-commerce, retail, internet, and technology.

7.      In 2012, Yahoo sold half of its stake in Alibaba.

8.      Between 2012 and 2016, Yahoo reported annual gross revenue of approximately $5 billion and had a market capitalization between $25 and $45 billion.

9.      On June 13, 2017, Yahoo sold its internet operating business to Verizon Communications, Inc. for approximately $4.5 billion.  Ex. A, Chancery Court Pet. ¶¶ 2, 17.

10.     Shortly after the sale, Yahoo changed its name to Altaba ("Altaba").  Ex. A, Chancery Court Pet. ¶¶ 2-3, 17.  Altaba's assets consisted primarily of approximately 383.6 million ordinary shares of Alibaba, a portfolio of marketable debt securities, and its interest in Yahoo Japan Corporation, a joint venture between Yahoo and the Japanese company Softbank. *Id.* ¶¶ 2-3.  Altaba also continued to own a portfolio of patent assets through Excalibur IP, LLC, a wholly-owned subsidiary.

---

[1] "Chancery Court Pet." references are to Altaba's petition in the Delaware Chancery Court requesting that Court to determine, *inter alia*, the amount of the security that must be set aside to cover the Internal Revenue Service's tax claims against Altaba.  *See* ¶ 39, *infra*.

11.     Altaba is an independent non-diversified, closed-end management investment company.  Ex. A, Chancery Court Pet. ¶¶ 3, 19.  It was registered under the Investment Company Act of 1940 and was publicly traded on the NASDAQ under the ticker AABA.  *Id.*

12.     Altaba is taxed as a C Corporation.

13.     In its 2018 annual report, Altaba reported approximately $48 billion in assets, $12 billion in liabilities, $266 million in net investment income, and $17 billion in net realized gains.

14.     On April 2, 2019, Altaba's Board of Directors approved a plan of complete liquidation and dissolution ("Dissolution Plan"), which was approved by stockholders on June 27, 2019.  Ex. A, Chancery Court Pet. ¶¶ 5, 21, 23.

15.     At that time, Altaba had approximately $49 billion in assets, including its 15% interest in Alibaba, and approximately $10 billion in reported liabilities.

16.     Following the approval of the Dissolution Plan, Altaba began monetizing its holdings in Alibaba and other securities.  Ex. A, Chancery Court Pet. ¶ 5.

17.     Between July 1, 2019, and August 15, 2019, Altaba sold 143,712,628 shares of Alibaba for approximately $24.4 billion.

18.     During 2019, Altaba sold a total of 278,315,416 Alibaba shares for approximately $46 billion.  During January 2020, Altaba sold its remaining 5,000,000 Alibaba shares for approximately $1.1 billion.

19.     On September 23, 2019, Altaba distributed $26.8 billion in cash to its shareholders in an initial pre-dissolution liquidating distribution.  Ex. A, Chancery Court Pet. ¶ 6.  After that distribution, Altaba still had billions of dollars of net assets.  *Id.*

20.     On October 4, 2019, Altaba filed a certificate of dissolution with the Delaware Secretary of State and formally dissolved in accordance with Delaware law.  Ex. A, Chancery Court Pet. ¶ 25.

21.     Following the filing of its certificate of dissolution, Altaba's operations and activities were limited to those required to wind up its business under Delaware law.

22.     Altaba elected to wind up its affairs through a state-law dissolution process under the General Corporation Law of the State of Delaware ("DGCL").  Ex. A, Chancery Court Pet. ¶ 7.

23.     In general, the elective dissolution procedure in DGCL § 280 requires that the dissolved corporation provide notice to all known claimants for the presentation of claims to the corporation; pay all agreed claims; provide notice of rejection for all disallowed claims; petition the Delaware Chancery Court to determine the amount and form of security that will be reasonably likely to be sufficient to provide compensation of all unresolved claims against the corporation; and then post the security ordered by the Chancery Court.

24.     Following the completion of such process, the directors of the dissolved corporation will not be personally liable to the claimants and the stockholders will not be liable for claims against the corporation in excess of their pro rata share of the claim or the amount distributed to the shareholder, whichever is less.  DGCL §§ 280-282.

25.     In accordance with DGCL § 280, Altaba sent notice of its dissolution to the Internal Revenue Service ("Service") on October 7, 2019 ("Dissolution Notice").  Ex. B, Dissolution Notice.

26.     The Dissolution Notice informed the Service that any claim against Altaba must be submitted by December 11, 2019.  Ex. B, Dissolution Notice.

27.     At the time the Service received the Dissolution Notice, Altaba had filed its income tax returns for the 2013 through 2017 taxable years and its employment tax returns (Forms 941 and Forms 940) for all quarterly and annual taxable periods of 2013 through 2017.

28.     Altaba filed its 2018 income tax return on October 15, 2019, and paid the tax reported due along with all applicable penalties and interest on February 4, 2020.

29.     On December 6, 2019, the Service presented its dissolution claim to Altaba in the total amount of $12,736,879,763 ("Dissolution Claim").  The Dissolution Claim consisted of a claim for income taxes for the taxable years 2013, 2014, and 2016 through 2029 and a claim for Federal Insurance Contributions Act tax, federal income tax withholding, and Federal Unemployment Tax Act tax ("employment taxes") for all quarterly and annual taxable periods of 2013 through 2017 and 2019 through 2029.  Ex. A, Chancery Court Pet. ¶ 51.

30.     After the Service submitted its Dissolution Claim, Altaba made estimated tax payments in the amount of $5,759,000,000 for the 2019 tax year.  These payments, made on December 16, 2019, effectively reduced the Service's income tax claim for 2019 to $988,447,686 and reduced the Service's overall claim to $6,977,879,763.

31.     On February 24, 2020, Altaba issued a letter to the Service accepting-in-part and rejecting-in-part the Service's claim ("Rejection Notice").  Ex. A, Chancery Court Pet. ¶ 52; Ex. C, Rejection Notice.

32.     The Rejection Notice did not specify which parts of the Dissolution Claim it rejected, or provide the basis for such a rejection.  *See* Ex. C, Rejection Notice.

33.     On March 20, 2020, the Service presented a revised claim in the total amount of $2,879,738,162 ("Revised Claim").  Ex. D, Revised Claim.  The Revised Claim consisted of a

claim for income taxes for the taxable years 2016 through 2029 and a claim for employment

taxes for all quarterly and annual taxable periods of 2014 through 2017 and 2019 through 2029.

34.     On April 25, 2020, Altaba filed its income tax return for the 2019 tax year.

35.     On May 15, 2020, the Service presented its second revised claim in the total

amount of $1,501,161,359 ("Second Revised Claim").  Ex. A, Chancery Court Pet. ¶ 53; Ex. E,

2d Revised Claim.  As before, the Second Revised Claim consisted of claims for both income

taxes for the taxable years 2016 through 2029 and employment taxes for all quarterly and annual

taxable periods of 2014 through 2017 and 2019 through 2029.

36.     The Second Revised Claim is, in its entirety, made up of unassessed tax liabilities.

37.     Altaba currently has approximately $13 billion in total assets, of which $12.9

billion consists of cash and cash equivalents.  Ex. A, Chancery Court Pet. ¶ 9.

38.     Under DGCL § 280(a)(4), the Service has 120 days from the date of the Rejection

Notice to file a suit or proceeding with respect to the claim, otherwise its claim will be barred.

39.     On May 28, 2020, Altaba filed a petition for determinations pursuant to

DGCL § 280 in the Delaware Chancery Court seeking, among other things, a determination of

the amount of security that must be set aside to cover all known and future claims in its

dissolution proceedings ("holdback amount"), including the Service's Second Revised Claim of

May 15, 2020.  Ex. A, Chancery Court Pet.

40.     On June 16, 2020, the United States filed a Notice of Removal with this Court,

informing the parties in Altaba's Delaware Chancery Court dissolution proceeding that it was

removing, pursuant to 28 U.S.C. §§ 1441, 1442(a), and 1446(a), the case of *In re Altaba, Inc.*,

previously pending in the Delaware Court of Chancery assigned Docket Number 2020-0413-

JTL, to the United States District Court for the District of Delaware (Docket Number

_____).

### COUNT I - REDUCE FEDERAL INCOME TAX LIABILITIES TO JUDGMENT

41.     The United States incorporates by reference the allegations set forth in paragraphs

1 through 40 above.

42.     Altaba timely filed its 2017 through 2019 income tax returns.

43.     Using information reported on Altaba's tax returns, filings with the Securities and

Exchange Commission ("SEC"), prior years' tax returns, adjustments to the returns made in prior

years, and additional information provided by Altaba, the Service determined certain adjustments

should be made to the tax reported on Altaba's returns.

44.     The tax adjustments are laid out in more detail below:

### 2017 Income Tax Adjustments

45.     On its 2017 income tax return, Altaba reported $2,438,905,101 in total income;

$11,696,159 in taxable income; and no tax due.

46.     The Service determined an additional tax liability in the amount of $17,962,806

based on certain international (cross-border) and domestic adjustments to Altaba's 2017 tax

liability.

47.     The Service's international adjustments to Altaba's tax liability in the amount of

$11,089,875 are described in more detail below:

a.      Altaba's income was increased $25,678,373 for cost-sharing transaction

charges from increases to cost shared intangible development costs per

26 U.S.C. § 482; and

      b.      Altaba's income was increased $6,006,984 for intercompany service charge from allocations of stock-based compensation per 26 U.S.C. § 482.

48.     The Service's domestic adjustments to Altaba's tax liability in the amount of $6,872,931 are described in more detail below:

      a.      Altaba's income was increased $10,601,478 for gain from the sale of Yahoo's operating business; and

      b.      Altaba's income was increased $9,035,467 for assumption of liabilities from the sale of Yahoo's operating business.

## 2018 Income Tax Adjustments

49.     On its 2018 income tax return, Altaba reported $28,212,125,850 in total income; $25,900,879,304 in taxable income; and a tax of $3,986,067,837.

50.     The Service determined an additional tax liability in the amount of $549,510,900 based on certain international (cross-border) and domestic adjustments to Altaba's 2018 tax liability.

51.     The Service's international adjustments to Altaba's tax liability in the amount of $273,804,029 are described in more detail below:

      a.      Altaba's income was decreased $98,213,599 for global intangible low-taxed income ("GILTI") under 26 U.S.C. § 951A;

      b.      Altaba's income was decreased $490,623,941 for the 26 U.S.C. § 965(a) inclusion with respect to Alibaba and Yahoo Japan;

      c.      Altaba's income was increased $72,799,708 for the disallowance of an 26 U.S.C. § 250 deduction relating to GILTI;

> d.      Altaba's tax was increased $570,816,003 for disallowance of foreign tax credits; and
>
> e.      Altaba's income was correspondingly decreased $898,304,901 to reverse the foreign tax credit gross-up under 26 U.S.C. § 78 for the disallowed foreign tax credits.

52.     The Service's domestic adjustments to Altaba's tax liability in the amount of $275,706,871 are described in more detail below:

> a.      Altaba's income was increased $1,181,099,866 for net long-term gain from the sale of investments;
>
> b.      Altaba's income was increased $15,515,550 for miscellaneous other income;
>
> c.      Altaba's income was increased $77,032,944 for an exchange gain;
>
> d.      Altaba's income was increased $2,634,612 for the disallowance of a net operating loss deduction; and
>
> e.      Altaba's income was increased $7,687,447 for the disallowance of general business credit carryforwards.

**2019 Income Tax Adjustments**

53.     Altaba filed its 2019 income tax return on April 25, 2020, reporting $42,419,899,993 in taxable income; and a tax of $8,745,639,554.

54.     The Service determined an additional tax liability in the amount of $474,825,144.

55.     The additional tax liability was based on income of $43,906,974,751, inclusive of adjustments to income of $1,711,965,052, as described in more detail below:

a.      $382,422,450 net investment income, which does not reflect an adjustment to the amount of net investment income reported on the return;

b.      $219,000,000 income from an indemnification asset, which reflects an adjustment of $219,000,000 as no income from an indemnification asset was reported on the return;

c.      $62,131,969 miscellaneous other income, which reflects an adjustment of $9,060 from the amount of miscellaneous other income reported on the return; and

d.      $43,243,420,332 realized gain from the sale of Alibaba shares, which reflects an adjustment of $1,492,955,922 from the realized gain reported on the return.

56.     The additional tax liability reflects further adjustments to Altaba's tax return, as described in more detail below:

a.      Altaba's income was decreased $1,292,078,828 for GILTI under 26 U.S.C. § 951A;

b.      Altaba's income was increased $783,868,409 for the disallowance of an 26 U.S.C. § 250 deduction relating to GILTI;

c.      Altaba's tax was increased $162,537,345 for disallowance of foreign tax credits;

d.      Altaba's income was correspondingly decreased $275,657,989 to reverse the foreign tax credit gross-up under 26 U.S.C. § 78 for the disallowed foreign tax credits;

e.    Altaba's income was increased $536,171,763 for disallowance of

deductions; and

f.    Altaba's income was increased $22,816,351 for the disallowance of a net

operating loss deduction.

57.    In summary, Altaba has accrued income tax liabilities for the 2017 through 2019

tax years as follows:

| Tax Year | Additional Tax | Interest | Total Amount of Claim as of May 15, 2020 |
|----------|----------------|----------|------------------------------------------|
| 2017 | $17,962,806 | $2,324,948 | $20,287,753 |
| 2018 | $549,510,900 | $39,161,540 | $588,672,440 |
| 2019 | $474,825,144 | $7,979,519 | $482,804,662 |
| | | **Total:** | $1,091,764,855 |

58.    Statutory penalties and interest continue to accrue on the income tax liabilities

listed in paragraph 57.

59.    Altaba has not fully paid the income tax liabilities listed in paragraph 57.

60.    Altaba is indebted to the United States for its unpaid income tax liabilities for the

2017 through 2019 tax years in the amount of $1,091,764,855 as of May 15, 2020, plus interest

and other statutory additions to tax that have accrued and will continue to accrue as provided by

law.

**COUNT II - REDUCE FEDERAL EMPLOYMENT TAX LIABILITIES TO JUDGMENT**

61.    The United States incorporates by reference the allegations set forth in paragraphs

1 through 60 above.

62.    At all times relevant to this action, Altaba has been an employer paying wages to

employees within the meaning of Subtitle C of the Internal Revenue Code and, as an employer,

has been subject to the employment tax obligations imposed by federal law, including, but not limited to, duties to:

      a.     Withhold federal income and the employees' share of Federal Insurance Contributions Act ("FICA") taxes from employees' wages, and pay over to the Service those withheld taxes, along with the employer's own share of FICA and Federal Unemployment Tax Act ("FUTA") taxes.  *See* 26 U.S.C. §§ 3102, 3111, 3301, and 3402.

      b.     File with the Service its Employer's Quarterly Federal Tax Returns (Form 941), and annual Employer's FUTA Tax Returns (Form 940).  *See* 26 U.S.C. § 6011; 26 C.F.R. §§ 31.6011(a)-1, 31.6011(a)-3, and 31.6011(a)-4.

63.     The Service determined Altaba owed additional employment taxes and penalties for the taxable periods of 2015, 2016, 2017, and 2019 using information reported on Altaba's employment tax returns, information from prior years' employment tax returns, adjustments made in prior years, and additional information provided by Altaba.

64.     Specifically, the Service adjusted Altaba's timely reported employment tax liabilities as set forth in more detail below:

### 2015 Employment Tax Adjustments

65.     Altaba timely filed its 2015 employment tax returns (Forms 941 and 940).

66.     The Service determined Altaba owed additional employment taxes and penalties in the total amount of $18,056,462, which includes $14,799,433 in additional income tax withholding and FICA taxes, $2,959,887 in penalties under 26 U.S.C. § 6662(c), and $297,142 in penalties under 26 U.S.C. § 6656.

67.     The additional employment tax and penalties are based upon the following adjustments:

      a.     $309,944 in additional tax and penalties for adjustments to wages for tax preparation services provided to employees;

      b.     $653,219 in additional tax and penalties for adjustments to wages and taxes for insufficient FICA tax withholdings; and

      c.     $17,093,299 in additional tax and penalties for adjustments to wages for employer-provided meals.

**2016 Employment Tax Adjustments**

68.     Altaba timely filed its 2016 employment tax returns (Forms 941 and 940).

69.     The Service determined Altaba owed additional employment taxes and penalties in the total amount of $16,748,503, which includes $13,728,737 in additional income tax withholding and FICA taxes; $2,745,748 in penalties under 26 U.S.C. § 6662(c); and $274,018 in penalties under 26 U.S.C. § 6656.

70.     The additional employment tax and penalties are based upon the following adjustments:

      a.     $288,678 in additional tax and penalties for adjustments to wages for tax preparation services provided to employees;

      b.     $540,480 in additional tax and penalties for adjustments to wages and taxes for insufficient FICA tax withholding; and

      c.     $15,919,345 in additional tax and penalties for adjustments to wages for employer-provided meals.

**2017 Employment Tax Adjustments**

71.     Altaba timely filed its 2017 employment tax returns (Forms 941 and 940).

72.     The Service determined Altaba owed additional employment taxes and penalties in the total amount of $5,880,864, which includes $4,821,294 in additional income tax withholding and FICA taxes; $964,259 in penalties under 26 U.S.C. § 6662(c); and $95,311 in penalties under 26 U.S.C. § 6656.

73.     The additional employment tax and penalties are based upon the following adjustments:

        a.     $172,728 in additional tax and penalties for adjustments to wages for tax preparation services provided to employees;

        b.     $152,757 in additional tax and penalties for adjustments to wages and taxes for insufficient FICA tax withholdings; and

        c.     $5,555,379 in additional tax and penalties for adjustments to wages for employer-provided meals.

**2019 Employment Tax Adjustments**

74.     Altaba timely filed its 2019 employment tax returns (Forms 941 and 940).

75.     The Service determined Altaba owed additional employment taxes in the total amount of $2,986,927, which includes $2,986,591 of income tax withholding and FICA tax for the quarter ending December 31, 2019, and FUTA tax of $336.

76.     The additional employment tax is made up of the following items, less $136,846 in deposits and payments:

        a.     $436,685 of income tax withholding and FICA tax on wages, which is based upon an average of the prior eight quarters;

14

b.      $2,686,374 of income tax withholding and FICA tax on projected annual

bonuses, which is based upon the last annual bonuses paid by Altaba; and

c.      $714 FUTA tax, which is based upon the FUTA tax liability for the prior

year.

77.      In summary, the Service determined Altaba owes additional employment taxes for

all periods of 2015, 2016, 2017, and 2019, plus penalties and interest as follows:

| Tax Year | Current Unpaid Liabilities and/or Unrefunded Credits | Additional Tax | Current Balance on Additional Tax | Interest | Total Amount of Claim as of May 15, 2020 |
|---|---|---|---|---|---|
| 2015 | $0 | $18,056,462 | $18,056,462 | $4,188,233 | $22,244,695 |
| 2016 | $0 | $16,748,503 | $16,748,503 | $3,108,185 | $19,856,688 |
| 2017 | ($3,593) | $5,880,864 | $5,877,271 | $817,500 | $6,694,771 |
| 2019 | $0 | $2,986,927 | $2,986,927 | $81,472 | $3,068,399 |
|  |  |  |  | **Total:** | $51,864,553 |

78.      Statutory interest continues to accrue on the employment tax liabilities listed in

paragraph 77 as provided by law.

79.      Altaba has not fully paid the employment tax and penalties listed in paragraph 77.

80.      Altaba is indebted to the United States for its unpaid employment tax and

penalties for all quarterly and annual taxable periods of 2015, 2016, 2017, and 2019 in the

amount of $51,864,553 as of May 15, 2020, plus interest that has accrued and will continue to

accrue as provided by law.

WHEREFORE, the United States prays that this Court:

A.      Render judgment in favor of the United States and against Altaba for the 2016

through 2019 income tax liabilities set forth above, in the amount of $1,091,764,855 as of May

15, 2020, together with all interest and penalties that will continue to accrue thereafter according to law.

B.      Render judgment in favor of the United States and against Altaba for the 2015, 2016, 2017, and 2019 employment taxes and penalties set forth above, in the amount of $51,469,316 as of May 15, 2020, together with all interest that will continue to accrue thereafter according to law.

C.      Grant the United States such other relief as it deems just and proper under the circumstances.

Date: June 16, 2020

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Catriona M. Coppler*
DENNIS M. DONOHUE (OH Bar # 0026504)
Chief Senior Litigation Counsel
CATRIONA M. COPPLER (D.C. Bar # 241446)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
Telephone: 202-307-6492 (DMD)
            202-514-5153 (CMC)
Fax:  202-514-6866
Dennis.Donohue@usdoj.gov
Catriona.M.Coppler@usdoj.gov

EFiled: May 28 2020 03:06PM EDT
Transaction ID 65656179
Case No. 2020-0413-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |  |
|---|---|---|---|
| IN RE ALTABA, INC. | ) ) ) | C.A. No. 2020-____-___ | **Government Exhibit** <br> _____ A _____ |

## VERIFIED PETITION FOR DETERMINATIONS PURSUANT TO 8 *DEL. C.* § 280

Petitioner Altaba, Inc. ("Altaba"), by and through its undersigned counsel, hereby brings this Verified Petition for Determinations Pursuant to 8 *Del. C.* § 280 (the "Petition") for an Interim Order and a Final Order determining the amount and form of security that will be reasonably likely to be sufficient to provide compensation for (i) claims that are the subject of a pending action, suit or proceeding to which Altaba is a party; (ii) other claims asserted in response to a notice provided under 8 *Del. C.* § 280(a)(i), as to which the amount and form of security for such claims has not been agreed upon by the parties; (iii) costs and expenses through the completion of the wind-up process; and (iv) other claims, if any, that are not barred under 8 *Del. C.* § 280 and have not been made known to Altaba or that have not yet arisen but that, based on facts known to Altaba, are likely to arise or become known within five years after the date of dissolution of Altaba, including contingent, conditional or otherwise unmatured contractual claims.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................1

JURISDICTION.........................................................................6

FACTS ....................................................................................6

    Altaba's History........................................................................6

    Altaba Sells Its Operating Business In 2017 ...................................7

    More Than Two Years Later, Altaba Files For Dissolution............................8

    Altaba Issues Notices Of Dissolution Under 8 *Del. C.* § 280(a) and (b) ......10

CLAIMS PRESENTED BY POTENTIAL CREDITORS......................................11

    Claims Relating To Pending Litigation .........................................13

    Contingent Contractual Claims .................................................26

    State And Municipal Taxes ......................................................33

    IRS ...................................................................................36

    Verizon................................................................................40

    Other Current Liabilities..........................................................46

    Other Responses Received ......................................................46

DETERMINATIONS MADE UNDER 8 *DEL. C.* § 280(c)(3) ...........................48

    Costs and Expenses...............................................................48

    Future Or Unknown Claims ......................................................49

SUMMARY OF PROPOSED INTERIM & FINAL RESERVE AMOUNTS.......49

ALTABA'S CURRENT STATUS ...................................................52

PRAYER FOR RELIEF .............................................................53

In support of this Petition, Altaba alleges as follows:

## **INTRODUCTION**

1.     This is an unusual Section 280 petition because Altaba is a fully

solvent corporation with billions of dollars in assets in excess of its liabilities.  As a

result, through this dissolution, the board of directors of Altaba (the "Board")

anticipates eventually paying Altaba's legitimate creditors in full and distributing

billions of dollars in excess funds to Altaba stockholders.  For this reason, Altaba

intends to request a two-step process for the Court's determinations under Section

280.  First, Altaba will request an Interim Order that approves conservative

holdback amounts equal to the full amount requested for each claimant as security

for all claims in dispute, which will allow Altaba to distribute billions of dollars in

cash to stockholders without waiting for final determinations of the amount of

security reasonably likely to be sufficient compensation for the small number of

claims that are in dispute.  Then, after the claimants who have appeared in this

action have been afforded an opportunity to develop a factual record (if necessary)

and present legal arguments, Altaba will request a Final Order that makes final

determinations pursuant to Section 280.  This fair and efficient process will serve

to protect the interests of both creditors and stockholders of Altaba.

2.     Prior to June 2017, Altaba was known as the Internet giant, Yahoo!

Inc.  ("Yahoo").  In June 2017, Altaba completed the sale of its entire operating

business (*i.e.*, Yahoo), including nearly all of the attendant liabilities, to Verizon Communications Inc. ("Verizon").  After the sale of its operating business, Altaba's assets primarily consisted of an investment in Alibaba Group Holding Limited ("Alibaba") in the form of approximately 383.6 million ordinary shares (the "Alibaba Shares").

3.      After the sale of the Yahoo operating assets, the company formally changed its name to Altaba.  In light of its new business model, Altaba registered as a closed-end management investment company under the Investment Company Act of 1940.

4.      For the past three years, the Board has managed Altaba's investments while carefully considering how to maximize Altaba's assets for the benefit of its stockholders.  During this time, Altaba's shares generally traded at a meaningful discount to pre-tax value, despite substantial share repurchases and self-tender offers.  After considering the risks, timing, viability and potential impact of the alternatives potentially available to Altaba, the Board determined that the best way to maximize value for the Altaba stockholders was to distribute all of Altaba's net assets directly to them, either through a direct distribution or by monetizing its assets and distributing the proceeds to stockholders.

5.      In April 2019, the Board approved a Plan of Complete Liquidation and Dissolution (the "Plan of Dissolution").  On June 27, 2019, Altaba

stockholders approved the dissolution at a special meeting of stockholders. Thereafter, through the beginning of 2020, the Board strategically sold the Alibaba Shares into the market to maximize the net proceeds from the sale of those shares. As a result, nearly all of Altaba's current assets are cash, money market funds or high quality short-term fixed income investments (e.g., A-1/P-1 commercial paper) (collectively, "Cash and Cash Equivalents" or "CCE").

6.      On May 17, 2019, when Altaba mailed its proxy statement seeking stockholder approval of the dissolution, Altaba estimated, based on the assumptions described in the Proxy Statement (defined below), that it would be able, after paying all of Altaba's creditors in full, to make aggregate liquidating distributions to the Altaba stockholders ranging between $39.9 billion and $41.2 billion.  The Board elected to make a pre-dissolution liquidating distribution to stockholders of more than $26 billion, which was completed on September 23, 2019.  Even after that distribution, Altaba still had net assets in the billions of dollars.

7.      The Board has chosen to effectuate its dissolution under the notice and consent structure laid out in Section 280 of the Delaware General Corporation Law (the "DGCL").  In accordance with the requirements of that procedure, more than four hundred notices were mailed to potential creditors notifying them of the dissolution filing and informing them of the deadline to assert a claim under

3

Section 280.  Only a small fraction responded, and Altaba has either satisfied or agreed to retain full security for a large majority of these claims.  In this Petition, Altaba asks the Court to approve the holdbacks adopted in the Board's plan of dissolution, including resolving the few remaining disputes regarding the form or amount of security that is reasonably likely to be sufficient for asserted claims.

8.     However, for purposes of obtaining an Interim Order, Altaba intends to seek ***undisputed*** relief.  Altaba is willing to retain as security the ***full amount of security requested*** by all unresolved claimants until such time as the Court decides the appropriate final holdback for these claims.  By seeking immediate, undisputed relief, Altaba will avoid the unnecessary economic costs of delaying the distribution of billions of dollars that are indisputably excess assets.

9.     Accordingly, an "Interim Total Reserve" in the amount of approximately $7.3 billion will be retained for purposes of the Interim Order, which consists of (i) the aggregate amount of funds required as security for all accepted claims; (ii) the maximum amount of security requested by all other claimants whose claims or security demands were rejected; (iii) the amount of costs and expenses that Altaba believes that it will incur (other than those amounts identified in (i) and (ii)) during the course of its wind-up; (iv) the costs and other claims, if any, that are not barred under 8 *Del. C.* § 280 and have not been made known to Altaba or that have not yet arisen but that, based on facts known to

Altaba, are likely to arise or become known within five years after the date of

dissolution of Altaba, including contingent, conditional or otherwise unmatured

contractual claims; and (v) a $250 million "cushion" to cover any shortfall in the

amount of estimated claims.  Altaba currently has approximately $13.0 billion in

total assets, of which $12.9 billion is Cash and Cash Equivalents.  Thus, Altaba

currently has approximately $5.6 billion in Cash and Cash Equivalents in excess of

the Interim Total Reserve (the "Interim Excess Assets").  Promptly distributing the

Interim Excess Assets will serve the interests of stockholders while preserving the

rights of all other stakeholders.

10.     Altaba is therefore asking the Court for an Interim Order solely for the

purpose of setting an interim aggregate required security amount for all claims at

the Interim Total Reserve, and allowing Altaba to distribute all of the Interim

Excess Assets to its stockholders immediately following the Interim Order.

11.     Thereafter, Altaba will seek a Final Order that memorializes any

agreements Altaba may reach with claimants while this action is ongoing and

determines, after the interested parties have been heard by the Court, the

appropriate form and amount of security for each claim in accordance with the

requirements of Section 280.  The Final Order will set a Final Total Reserve,

which will allow for a distribution of the "Final Excess Assets" (the remaining

assets net of the Final Total Reserve).

12.     This approach, if approved by the Court, would provide Altaba certainty on the maximum security required to be retained and allow Altaba to distribute the Interim Excess Assets to its stockholders more expeditiously.  The two-step process also allows any creditors who dispute their proposed holdback in the proposed Final Total Reserve an opportunity to develop a record and present argument in support of a different holdback amount before the Court issues a Final Order.

## JURISDICTION

13.     The Court has jurisdiction over this matter pursuant to 8 *Del. C.* § 283.

## FACTS

### Altaba's History

14.     Altaba[1] is a dissolved Delaware corporation with its principal executive offices at 140 East 45th Street, 15th Floor, New York, New York 10017.

15.     Altaba incorporated under the laws of the State of California on March 5, 1995 as Yahoo! Inc.  On May 18, 1999, Altaba reincorporated under the laws of the State of Delaware.

---

[1]   For the sake of clarity, this Petition refers to "Altaba" regardless of whether it was then known as Yahoo.

6

16.     Prior to June 13, 2017, Altaba's primary business consisted of
operating as the Internet giant, Yahoo.  This included providing web services to its
users on its network of search, communications and digital content products and
using its data, content and technology to connect advertisers with their target
audiences.

### Altaba Sells Its Operating Business In 2017

17.     On July 23, 2016, Altaba entered into a Stock Purchase Agreement (as
amended, the "SPA") with Verizon.  Concurrently with the execution of the SPA,
Altaba entered into a Reorganization Agreement (as amended, the "Reorganization
Agreement") with Yahoo Holdings, Inc. ("Yahoo Holdings"), a newly formed,
wholly owned subsidiary of Altaba.  Under the terms of the Reorganization
Agreement, Altaba transferred to Yahoo Holdings all of Altaba's assets and
liabilities relating to its operating business, other than specified excluded assets
and retained liabilities.  In the SPA, Verizon agreed to acquire all of the
outstanding shares of Yahoo Holdings (the "Sale").

18.     Altaba stockholders authorized the Sale at a special meeting of
stockholders held on June 8, 2017.  The Sale closed on June 13, 2017.

19.     From June 16, 2017 until its dissolution, Altaba operated as a publicly
traded, non-diversified, closed-end management investment company that was, and
continues to be, registered under the Investment Company Act of 1940.  Altaba has

not been involved in the operations of its former operating business since the Sale, and has had no operating assets.  Under cooperation agreements related to the Sale, Altaba and Verizon have cooperated with each other regarding certain legal matters, including certain tax matters and Altaba's status as a defendant in certain litigation arising out of the Yahoo business.

### More Than Two Years Later, Altaba Files For Dissolution

20.     After the Sale, the Board exhaustively reviewed alternatives to maximize value for Altaba stockholders.  This included the completion of a series of stock repurchases (made through open-market purchases and self-tender offers) to help raise Altaba's stock price to more closely align it with the value of Altaba's assets.  However, Altaba's stock continued to trade at a discount to the value of its underlying assets.  Following nearly two years of review and analysis, the Board decided that liquidating or distributing the Alibaba Shares and distributing the net assets to stockholders would best serve the interests of Altaba stockholders.

21.     To carry out this strategy, on April 2, 2019, the Board approved the voluntary liquidation and dissolution of Altaba pursuant to the Plan of Dissolution.

22.     On May 17, 2019, Altaba mailed to its stockholders a proxy statement asking stockholders to approve the dissolution (the "Proxy Statement").  The Proxy Statement advised Altaba stockholders that, if they approved the voluntary dissolution, Altaba intended to make a pre-dissolution liquidating distribution to

8

stockholders.  Altaba told its stockholders that "before making a pre-dissolution liquidating distribution, [Altaba] intends to hold back an amount of assets that the Board estimates will be sufficient to cover the maximum potential reserves that might be required by the Court to satisfy [Altaba's] known, contingent and potential future liabilities" (emphasis removed).  Altaba estimated, based on assumptions described in the Proxy Statement, that the pre-dissolution liquidating distribution could fall between $52.12 per share and $59.63 per share.

23.     At a special meeting held on June 27, 2019, Altaba stockholders approved the dissolution.

24.     On September 5, 2019, the Board approved a conservative pre-dissolution liquidating distribution of $51.50 per share (approximately $26.75 billion total), which amount was within the range previously disclosed after adjusting for the decline in the value of the Alibaba Shares since the Proxy Statement was mailed.  Altaba announced the approval of the distribution the next day, and the Company paid the distribution on September 23, 2019.

25.     In accordance with 8 *Del. C.* § 275, on October 4, 2019, Altaba filed with the Secretary of State of the State of Delaware a certificate of dissolution (the "Certificate of Dissolution"), which became effective on the same date.  A copy of the Certificate of Dissolution is attached as Exhibit 1.

26.    Since filing the Certificate of Dissolution, Altaba has been operating in accordance with the Plan of Dissolution, which contemplates an orderly wind-down of Altaba's business, including (1) the now-completed liquidation of all of the Alibaba Shares and the now-completed sale of the patent portfolio of Excalibur IP, LLC ("Excalibur"); (2) the monetization of Altaba's other remaining non-cash assets; (3) the settlement of its liabilities and obligations, including contingent liabilities and claims; and (4) the payment of liquidating distributions under the approval of the Court in accordance with 8 *Del. C.* § 280.

### Altaba Issues Notices Of Dissolution Under 8 *Del. C.* § 280(a) and (b)

27.    On October 7, 2019, Altaba mailed notices (each a "Notice," and, together, the "Notices"), pursuant to 8 *Del. C.* § 280, to all persons who Altaba believed might purport to have claims against it, requesting that those receiving such Notice present any claims against Altaba as directed therein and advising such parties that any claims not presented by December 11, 2019 would be barred. Altaba mailed Notices to more than 400 potential claimants.  The Notices were mailed to the last-known post-office address, place of business or registered agent of each potential claimant.  An example of the form of Notice sent is attached as Exhibit 2.

28.    On October 7 and October 14, 2019, notice of Altaba's dissolution was published in the *News Journal*, a newspaper of general circulation in New

Castle County, Delaware, the county in which Altaba's registered agent is located. A copy of the Affidavit of Publication is attached as Exhibit 3.

29.    On October 7 and October 14, 2019, notice of Altaba's dissolution was published in the *New York Times*, a newspaper of both national circulation and general circulation in New York, New York, the city in which Altaba's principal place of business is located.  A copy of the Proof of Publication is attached as Exhibit 4.

30.    As set forth in the mailed Notices, unless extended by Altaba, the claim period for potential claimants who received the Notices expired on December 11, 2019, which is a date not less than the statutorily prescribed sixty (60) days after the date on which the Notices were mailed.

## CLAIMS PRESENTED BY POTENTIAL CREDITORS

31.    As of the date of this Petition, Altaba has received correspondence from 68 potential creditors.  A list of all potential claimants who submitted claims is attached as Exhibit 5.  The potential claimants to whom Altaba sent a Notice and who did not respond and submit a claim by the deadline are set forth in Exhibit 6. Accordingly, in conjunction with determining the Interim Total Reserve, Altaba requests that the Interim Order provide that the claims of persons or entities listed in Exhibit 6 are barred pursuant to 8 *Del. C.* § 280(a)(2).

32.     Altaba has either satisfied, agreed to retain the full amount of security requested, or otherwise reached agreement regarding an amount of security for a large majority of the 68 claims received.  Generally, this Petition does not individually discuss the asserted claims for which Altaba and the claimant reached an agreement to resolve the claim via payment of an agreed upon amount without resorting to litigation.  However, because Altaba seeks an order under Sections 280(c)(1) and 280(c)(2) approving the security retained for pending litigation and contingent contractual claims, it details those claims below even if Altaba has either resolved the claim in principle or agreed to retain the full amount of security requested.

33.     Altaba hopes that continuing good faith discussions regarding any outstanding disputed claims will result in the various parties reaching agreement on a mutually acceptable amount of security for each unresolved outstanding security claim.  Nevertheless, for purposes of the Interim Order and allowing the distribution of the Interim Excess Assets, Altaba is willing to retain the *full amount* of security requested for each asserted claim, with the final amount to be later agreed upon by the parties or to be determined by the Court in the Final Order.

## **Claims Relating To Pending Litigation**

34.    Altaba is currently party to litigation involving claims related to
(i) the Yahoo Data Breaches (defined below); (ii) a serial patent litigator (in a
matter for which Verizon has assumed financial responsibility); (iii) a convicted
child predator who contends that Yahoo violated his privacy rights when aiding the
police in catching him (for which Verizon has assumed financial responsibility);
and (iv) a claimant who falsely alleges that Altaba and Alibaba are related entities,
and that Altaba is responsible for an Alibaba subsidiary's tort liabilities solely
because Altaba previously owned stock in Alibaba.

35.    As described below, Altaba does not believe that any security is
necessary for any of these claims other than two class actions related to the Yahoo
Data Breaches; however, to maximize the efficiency of distributing the Interim
Excess Assets and granting the Interim Order, Altaba is willing to temporarily
retain the full amount requested by these plaintiffs, and to retain $50,000 as
security in the case brought by the child predator (who did not specify an amount).

36.    *Consumer Class Actions Related to the Yahoo Data Breaches.*

(a)    In 2016, Yahoo disclosed that unauthorized third parties stole
certain user account information related to Yahoo users (the "Yahoo Data
Breaches").  Altaba is a defendant in cases in the United States and Canada arising
from the Yahoo Data Breaches.  A settlement in principle has been reached in the

13

National Consumer Class Actions (defined below) and Altaba has reached an agreement on an appropriate reserve for the Canadian Consumer Class Actions (defined below).

        (b)    *National Consumer Class Actions.*

        (i)    Altaba is a defendant in two consolidated consumer class action lawsuits filed in the United States related to the Yahoo Data Breaches.  The cases are:  (i) *In re:  Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. 5:16-MD-02752-LHK (N.D. Cal.) ("U.S. Consumer Class Action"); and (ii) *Yahoo! Inc. Private Information Disclosure Cases*, JCCP No. 4895 (Orange Cty. Sup. Ct., Cal.) (the "California Consumer Class Actions," and together with the U.S. Consumer Class Action, the "National Consumer Class Actions").

        (ii)    On April 9, 2019, the parties filed an Amended Settlement Agreement and Release that would resolve all claims against Altaba and provide for a release of all claims against Altaba in the National Consumer Class Actions.  A true and correct copy of the Amended Settlement Agreement and Release is attached as Exhibit 7.  As consideration for the settlement, Altaba will pay 50% of the total settlement fund of $117,500,000 (with Verizon paying the remainder).  Altaba previously paid $1,000,000, and Altaba has retained $57,750,000 as security to satisfy the balance of its obligations.

14

(iii)     On July 20, 2019, the Northern District of California

court preliminarily approved the settlement that would resolve all claims in the

National Consumer Class Actions.  A true and correct copy of the order

preliminarily approving the settlement is attached as Exhibit 8.  The final hearing

on the settlement was originally scheduled to occur in April 2020.  However, the

effects of COVID-19 have caused the hearing to be delayed until June 18, 2020.

Through its actions, the putative class has expressed support for the proposed

settlement.  Out of a potential class of approximately 194 million people, more

than 1.2 million submitted claims, while fewer than 40 people submitted individual

objections.  Altaba expects the settlement to be approved by the court and therefore

is holding back $57,750,000 as security that is reasonably likely to be sufficient for

this pending lawsuit.

(iv)     The settlement in the National Consumer Class Actions

allowed for opt-outs.  The opt-out deadline was March 6, 2020.  Approximately

1,800 people opted out of the proposed settlement.  To Altaba's knowledge, none

of the people who opted out of the settlement have filed suit, except as set forth

below.

(v)     Altaba is aware of a *pro se* lawsuit by an opt-out class

member alleging individual harm from the Yahoo Data Breaches, captioned

*Morton v. Facebook, Inc., et al.*, No. 30-2018-01016720-CU-CR-CJC (Orange

15

Cty. Sup. Ct., Cal.).  Plaintiff Morton was mailed a Notice, but did not respond.

On December 2, 2019, the *Morton* case was dismissed by the California court, and

Mr. Morton was notified by the California court of the dismissal by U.S. mail.  The

California court's Certificate of Mailing/Electronic Service transmitting the

dismissal is attached as Exhibit 9.  Mr. Morton has appealed the dismissal,

captioned *Morton v. Facebook, Inc., et al.*, No. G057936 (Cal. Ct. App.).  That

appeal is pending.

> (vi)    Altaba is also aware of a handful of small filings and

other demands related to the Yahoo Data Breaches filed or sent in the last few

months, certain of which were asserted by people who opted out of the settlement

in the National Consumer Class Actions.  A compilation of those filings and

demands is attached as Exhibit 10.  These individual filings or demands range in

value from $5,000 to $60,000 each.  As with the proposed settlement, Verizon and

Altaba are each responsible for 50% of any costs and expenses associated with

these claims, including potential liabilities.  Altaba has held back $2,500,000 to

cover its share of costs and expenses, including potential liabilities, arising from

any opt-outs or related claims.

> (c)    *Canadian Consumer Class Actions*.

> (i)    Altaba is also a defendant in multiple consumer class

action lawsuits in Canada related to the Yahoo Data Breaches.  The cases are:

*Karasik, et al. v. Yahoo! Inc., et al.*, No. CV-16-566248-00CP (Ontario Sup. Ct. of Justice); (ii) *Gill v. Yahoo! Canada, et al.*, No. S-168873 (British Columbia S. Ct.); (iii) *Sidhu, et al. v. Yahoo! Canada, et al.*, No. 1603-22837 (Queens Bench of Alberta); *Chami v. Altaba Inc., et al.*, No. CV-19-00614734-00CP (Ontario Sup. Ct. of Justice); *Boubonniere v. Yahoo! Inc., et al.*, Nos. SMC 500-06-000841-177 & SMC 500-06-000843-175 (originally filed as *Demers v. Yahoo! Inc., et al.*, Sup. Ct. of Quebec); and *Larocque v. Yahoo! Inc. and Yahoo! Canada Co.*, No. QBG 1242 (Queen's Bench of Saskatchewan) (together, the "Canadian Consumer Class Actions"). Except for *Boubonniere* (which the Quebec court refused to certify), these cases are still pending as putative class actions. Of these cases, the *Karasik* action, filed in Ontario, is in the most advanced stages of litigation.

(ii)     To allow the Canadian Consumer Class to meaningfully participate in the Section 280 proceeding in the Court, the Ontario court appointed Ted Charney, Esq. to represent the putative class of Canadian plaintiffs for purposes of negotiating or litigating a reasonable holdback under Section 280. Altaba has agreed with Mr. Charney, on behalf of the putative Canadian class, and with Verizon (as discussed below), to a holdback of $50,000,000 as security reasonably likely to be sufficient to compensate the Canadian Consumer Class. Under that agreement, the $50,000,000 will be retained by Altaba until such time

17

as the Ontario court approves any settlement resolving the Canadian Consumer

Class Actions or they are otherwise resolved.

37.    *Droplets, Inc.*

(a)    Droplets, Inc. ("Droplets") has a pending lawsuit against Altaba

(f/k/a Yahoo! Inc.) captioned *Droplets, Inc. v. Amazon.com, Inc., et al.*, Case No.

4:12-cv-03733-JST (N.D. Cal.) (the "Droplets Litigation").  The operative

complaint in the Droplets Litigation is attached as Exhibit 11.  The Droplets

Litigation alleges unspecified damages arising from the purported infringement of

U.S. Patent No. 6,687,745 ("the '745 Patent").

(b)    In connection with the Sale, Verizon, and/or one or more of its

subsidiaries, agreed to indemnify Altaba for the Droplets Litigation, among other

matters.  On November 26, 2019, two of Verizon's subsidiaries, Oath, Inc. and

Oath Holdings Inc. (together, "Verizon Media"), filed a Complaint in Intervention

in the Droplets Litigation stating that Verizon Media "has agreed to a request from

Altaba to indemnify it from Droplets' claims in this action" and that "the

assignment and sales documents include indemnity provisions that require Verizon

Media to indemnify, defend, and hold Altaba harmless against any losses related to

the Accused Products."  A true and correct copy of the Complaint in Intervention is

attached as Exhibit 12.  As a result, even if Droplets' claims were meritorious –

and they are not – Altaba bears no financial responsibility for the Droplets Litigation.

(c)     Nevertheless, Altaba mailed Droplets a Notice.  By letter dated December 6, 2019, a true and correct copy of which is attached as Exhibit 13, Droplets asserted a purported claim against Altaba for alleged infringement of the '745 Patent and asked Altaba to retain $1,500,000,000 as security for Droplets' claim.  By letter dated and mailed on December 23, 2019, a true and correct copy of which is attached as Exhibit 14, Altaba informed Droplets that it did not intend to hold back any assets as security because the Verizon indemnity provides a form of security that is reasonably likely to be sufficient to compensate Droplets for its claim.

(d)     Droplets' requested security amount also bears no relationship to the actual potential damages in the Droplets Litigation.  Droplets is a well-known serial litigator that has a track record of resolving claims for a tiny fraction of the $1.5 billion Droplets asserts that its claims are worth here.  For example, in *Droplets Inc. v. eBay, Inc., et al.*, Case No. 2:11-cv-00401-JRG, a jury in the Eastern District of Texas awarded Droplets $15 million total ($4 million from Overstock and $11 million from Sears).  In a more recent judgment, Droplets lost

19

and received nothing as a result of its patent claims.[2]  Thus, even without the

Verizon indemnity, Droplets' demand for a holdback of $1.5 billion is several

orders of magnitude higher than its recoveries in prior cases involving the same

patent.

      (e)     However, solely for the purposes of effectuating Altaba's

forthcoming motion for an Interim Order setting interim security amounts under

Section 280 to allow for a more expeditious distribution to Altaba stockholders of

Interim Excess Assets, Altaba will retain, on an interim basis, the full $1.5 billion

that Droplets requests as security for its claim.

      (f)     Following the Interim Order, Altaba will ask the Court to

determine that the Verizon indemnity provides sufficient security for this claim and

that no reserve of Altaba funds is required.

    38.    *Carsten Rosenow*

      (a)     Mr. Rosenow was mailed a Notice.  On October 22, 2019,

Altaba received from Mr. Rosenow a partial copy of a complaint he filed against

Facebook, Inc. and Yahoo in which he alleges that, in connection with an

investigation related to his ultimate indictment, arrest and conviction for

---

[2]    *See Droplets, Inc. v. E\*Trade Fin. Corp.*, 2015 WL 1062670, at \*1 (S.D.N.Y. Mar. 9, 2015) (dismissing patent claim on summary judgment because of non-infringement).

possession of child pornography and attempted sexual exploitation of a child,
defendants violated the Stored Communications Act and the Electronic
Communications Privacy Act under federal law and the Invasion of Privacy Act
under the California penal code, and that defendant committed negligence.  The
portion of the complaint sent by Mr. Rosenow does not identify any specific
amount of damages that Mr. Rosenow claims to have suffered, and Mr. Rosenow
does not otherwise request that Altaba retain any assets as security for his claims.
A true and correct copy of the materials received from Mr. Rosenow is attached as
Exhibit 15.

       (b)     By letter dated and mailed in accordance with the statutory
requirements on November 20, 2019, a true and correct copy of which is attached
as Exhibit 16, Altaba rejected this purported claim.  Altaba informed Mr. Rosenow
that it was rejecting his claim because the claim is without merit (citing to a brief
filed in support of defendant's motion to dismiss) and the fact that a Verizon
affiliate, Oath Holdings Inc. (f/k/a Yahoo Holdings), has expressly noted in court
filings that it bears full financial responsibility for defending and resolving the
matter, if an adverse judgment were to be entered.  A true and correct copy of the
document in which Oath Holdings Inc. acknowledges its financial responsibility
for the matter is attached as Exhibit 17.

(c)     Defendants moved to dismiss Mr. Rosenow's claims, among other reasons, under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  On April 27, 2020, the United States District Court for the Southern District of California granted defendants' motions to dismiss, and informed Mr. Rosenow that he has 60 days to seek leave to amend under the court's local rules.  A true and correct copy of the court's opinion granting the motions to dismiss is attached as Exhibit 18.

(d)     However, solely for the purposes of effectuating Altaba's forthcoming motion for an Interim Order setting interim security amounts under Section 280 to allow for a more expeditious distribution to Altaba stockholders of Interim Excess Assets, Altaba will retain on an interim basis $50,000 as security for Mr. Rosenow's claim.  If the parties cannot reach agreement on a mutually acceptable amount to retain as security, Altaba will ask the Court to determine that the Verizon indemnity provides a reasonably sufficient form of security for this claim and that no Altaba funds should be held back.

39.     *State Farm*

(a)     On December 11, 2019, State Farm General Insurance Company ("State Farm") filed a Complaint for Damages against Maria Teresa Martinez (a.k.a. Maria Guadalupe Vargas Martinez), Alibaba Group (U.S.) Inc., Altaba (f/k/a Yahoo! Inc.), and twenty Does, captioned *State Farm General*

*Insurance Company v. Martinez, et al.*, Case No. 19STCV44491 (Cal. Super.) (the "Space Heater Litigation").  The Complaint for Damages filed on December 11, 2019 is attached as Exhibit 19.  Altaba did not identify State Farm as a source of potential claims prior to sending the Notices because the Space Heater Litigation was filed after the Notices were mailed and Altaba was unaware of any of the facts alleged in the Space Heater Litigation at that time.  As a result, State Farm did not receive a Notice.

(b)     The Space Heater Litigation alleges damages on theories of negligence, product liability and breach of implied warranties related to a fire, which occurred on or about November 21, 2018, allegedly caused by a halogen space heater.  The complaint alleges that the space heater was sold online by AliExpress.  It also alleges that Altaba "manufactured, designed, distributed, inspected, supplied and/or sold" the allegedly defective space heater because it owned AliExpress.  Altaba does not own AliExpress.  As discussed above, Altaba previously owned shares of Alibaba, a publicly traded company.  According to Alibaba's most recent annual report, Alibaba's indirect subsidiaries control the operations of AliExpress.  Of course, it is black letter law that passive stockholders are not responsible for the torts or debts of the company in which they own an equity interest.

(c)     State Farm seeks $1,242,537.05 in damages for the claims in the Space Heater Litigation.  Altaba expects to be dismissed from this case and does not believe that any security is necessary for these claims.  However, solely for the purposes of effectuating Altaba's forthcoming motion for an Interim Order setting interim security amounts under Section 280 to allow for a more expeditious distribution to Altaba stockholders of Interim Excess Assets, Altaba will retain as security on an interim basis the full $1,242,537.05 State Farm is seeking in the Space Heater Litigation.  If Altaba's status in the case is not resolved before a final hearing in this action or the parties cannot reach agreement on a mutually acceptable amount to retain as security, Altaba will ask the Court to determine that no security is required for the frivolous Space Heater Litigation.

40.    *Kmart*

(a)     On January 29, 2020, Kmart Holding Corporation ("Kmart") filed an adversary proceeding, captioned *Kmart Holding Corporation v. Altaba Inc.*, Adversary Proceeding No. 20-08228-RDD (Bankr. S.D.N.Y.) (the "Kmart Adversary Proceeding"), which is part of a broader chapter 11 bankruptcy of Kmart within the action captioned *In re: Sears Holding Corporation*, Case No. 18-23538-RDD (Bankr. S.D.N.Y.).  The operative complaint for the Kmart Adversary Proceeding is attached as Exhibit 20.  For reasons stated below, Altaba did not

identify Kmart as a source of potential claims prior to sending the Notices.  As a result, Kmart did not receive a Notice.

(b)     Kmart sought to void three alleged payments to Yahoo "for the purchase of goods and/or services" totaling $307,123.81 during the 90-day period preceding the bankruptcy filing, dating from July 17, 2018 to October 15, 2018 (the "Kmart Preference Period").

(c)     The Sale of the Yahoo operating business to Verizon closed on June 13, 2017, more than a year prior to the beginning of the Kmart Preference Period.  Altaba did not own the Yahoo operating assets during the Kmart Preference Period and did not receive any of the alleged payments.  In fact, Altaba did not have any business relationship with Kmart during the Kmart Preference Period.  Altaba was therefore not a proper defendant in the Kmart Adversary Proceeding.

(d)     On May 1, 2020, Kmart filed a Notice of Dismissal of Adversary Proceeding, which is attached as Exhibit 21.  This notice dismissed claims against Altaba without prejudice.  While there is no pending claim against Altaba, because the dismissal was without prejudice, and in an abundance of caution, Altaba lists it here.  Altaba intends to retain no security for the Kmart Adversary Proceeding for purposes of the Interim Order and will ask the Court to

find in the Final Order that no security is needed for the plainly frivolous Kmart Adversary Proceeding (should it return).

## Contingent Contractual Claims

41.     Altaba has received requests to reserve funds for contingent contractual claims from three lessors regarding leases originally entered into by Yahoo or its affiliates and from twenty-six purported former employees regarding indemnification.  Altaba has also received a request from Verizon related to indemnification and other obligations arising from the Sale, which is addressed later in this Petition.

42.     Altaba has proposed to reserve funds as security for some of these contingent claims.  As explained further below, however, for purposes of the Interim Order and avoiding the unnecessary economic costs of delaying the distribution of the Interim Excess Assets to Altaba's stockholders, Altaba is willing to temporarily retain the full amounts of security requested for each of these contingent contractual claims.

43.     *ESRT Empire State Building, LLC*

(a)     Lessor ESRT Empire State Building, LLC ("ESRT") asserted a purported claim by letter dated December 10, 2019, a true and correct copy of which is attached as Exhibit 22.  ESRT's purported claim asserted that a lease for the entire 55th floor of the Empire State Building, located at 350 Fifth Avenue,

26

New York, New York  10118 (the "New York Lease"), was entered into by Altaba

when it was known as Yahoo! Inc., and that the New York Lease was assigned to

the company then known as Yahoo Holdings Inc. prior to the Sale.  ESRT stated

that Altaba remains jointly and severally liable for the future obligations under the

New York Lease, and that ESRT has an unliquidated claim against Altaba if

Yahoo Holdings were to default under the New York Lease.  ESRT did not

articulate an amount it requested Altaba to retain as security.

(b)     By letter dated and mailed in accordance with the statutory

requirements on December 23, 2019, a true and correct copy of which is attached

as Exhibit 23, Altaba explained that it did not intend to retain any security for

ESRT's contingent claim.  Altaba explained that the New York Lease was assigned

to Yahoo Holdings, which is now a subsidiary of Verizon; that a Verizon affiliate

is paying all rent and other amounts due under the New York Lease; and that the

Verizon affiliate has sufficient resources to cover any future liability owed under

the New York Lease.  ESRT has not responded to the December 23, 2019 letter.[3]

Because ESRT has not responded, Altaba does not intend to reserve any funds as

---

[3]    Under Section 280(b)(2), ESRT was required to act by April 21, 2020 to
       preserve its rights.  However, due to COVID-19, that deadline may have been
       extended to July 1, 2020 by the Delaware Supreme Court.  If ESRT takes action
       by July 1, 2020, Altaba will consider that submission in accordance with its
       statutory obligations.

security for purposes of the Interim Order.  In both the Interim Order and the Final Order, Altaba requests that the Court find that ESRT has accepted the assignment to Verizon as an adequate form of security for its purported claim, and that no further security from Altaba funds is required.

44.   *PV Campus Parcel 4, L.P.*

(a)   Lessor PV Campus Parcel 4, L.P. ("PV Campus") asserted (through its counsel) a purported claim by letter dated November 25, 2019.  A true and correct copy of the November 25, 2019 letter is attached as Exhibit 24.  PV Campus requested security in the amount of $178,268,254, which it claimed were the aggregate total future obligations pursuant to a lease of three buildings at Playa Vista, located at 11975, 11985 and 11995 West Bluff Creek Drive, Los Angeles, California  90066 (the "Playa Vista Lease").  PV Campus acknowledged that the Playa Vista Lease was assigned to Yahoo Holdings, which is now a Verizon subsidiary, in connection with the Sale.  PV Campus explained that its "$178 million claim" assumes both an anticipatory repudiation of the lease based on Altaba's filing dissolution and that the Verizon subsidiary would still voluntarily elect to exercise two seven-year extension options for the Playa Vista Lease in the future.  PV Campus asserted that Altaba was jointly and severally liable for the lease obligations, including the hypothetical future extensions.

28

(b)     By letter dated and mailed in accordance with the statutory

requirements on December 23, 2019, a true and correct copy of which is attached

as Exhibit 25, Altaba informed PV Campus that it does not intend to retain any

amount as security for PV Campus's claim beyond the form of security provided

by the Verizon assignment.  Altaba emphasized PV Campus's acknowledgment

that the Playa Vista Lease was assigned to Yahoo Holdings, which is now a

subsidiary of Verizon; that the Verizon affiliate had paid all rent and other amounts

due under the Playa Vista Lease; and that Verizon and its affiliates have sufficient

resources to cover any future liability owed under the Playa Vista Lease.  Altaba

rejected PV Campus's assertion that Altaba has breached or repudiated the Playa

Vista Lease in any way.  It also disagreed with PV Campus's assertion of potential

liability, noting that the Playa Vista Lease did not allow the exercise of renewal

options in the event of a breach by the Verizon affiliates and that PV Campus

would have a duty to mitigate any alleged damages.

(c)     On May 27, 2020, the parties reached an agreement to resolve

this claim (the "PV Campus Agreement") by adjusting the form of security

provided by Verizon.  A Verizon subsidiary continues to be the assignee of the

lease and the Verizon parent entity will replace Altaba as a guarantor.  As a result,

Altaba does not intend to reserve any security for the Playa Vista Lease for

purposes of the Interim Order, and, prior to the Interim Order, Altaba expects PV

Campus to withdraw and release its claims against Altaba relating to or arising out of the Playa Vista Lease.

45.   *Vornado Realty Trust*

(a)   Lessor Vornado Realty Trust ("Vornado"), doing business as HWA 555 Owners, LLC, asserted (through its counsel) a purported claim by letter dated December 4, 2019.  A true and correct copy of the December 4, 2019 letter is attached as Exhibit 26.  Vornado sought security in the amount of $2,768,233, which it claimed were the total future obligations of a lease of Suite 3325 at 555 California Street, San Francisco, California (the "San Francisco Lease").  Vornado stated that this amount did not include other potential obligations that may arise, such as indemnification.  Vornado also asserted that Altaba's dissolution had resulted in an anticipatory repudiation of the San Francisco Lease.  Vornado did not assert whether the $2.768 million claim purported to be based on the present value of the future lease payments and, if so, what discount rate was used to calculate Vornado's claim amount.

(b)   By letter dated and mailed in accordance with the statutory requirements on December 23, 2019, a true and correct copy of which is attached as Exhibit 27, Altaba rejected Vornado's assertion that Altaba had breached the San Francisco Lease in any capacity, but informed Vornado that it intended to retain as security the full $2,768,233 requested.  Vornado did not respond to the

December 23, 2019 letter.  Altaba asks that Vornado be held to have accepted the offer of $2,768,233 as security for all of its claims related to the San Francisco Lease.

46. *Christopher P. Rohlf*

(a)     By letter dated December 3, 2019, former Yahoo employee Christopher P. Rohlf (through counsel) submitted a purported claim to Altaba.  A true and correct copy of the December 3, 2019 letter is attached as Exhibit 28.  Mr. Rohlf asserted that he was entitled to potential indemnification for future causes of action related to the Yahoo Data Breaches.  Mr. Rohlf did not specify an amount of assets that he believed Altaba should retain as security for his purported claims.

(b)     By letter dated December 23, 2019, Altaba responded.  A true and correct copy of the December 23, 2019 letter is attached as Exhibit 29.  Altaba explained that it had no ongoing duty to indemnify Mr. Rohlf because he is not a former officer, director or California employee, and that there was unlikely any need in the future for his testimony.  However, Altaba nevertheless offered to retain security of $50,000 to cover possible future legal expenses if Altaba were to choose to indemnify Mr. Rohlf.  Altaba stated that it intended to retain this amount as security until December 14, 2021, which will be the expiration of five years following Yahoo's disclosure of the 2013 data breach.  Mr. Rohlf has not responded to the December 23, 2019 letter.  Altaba asks the Court to hold that Mr.

31

Rohlf has accepted Altaba's offer to retain $50,000 until December 14, 2021 as security for all of his purported claims.

47.     *25 Former Yahoo Officers & Employees*

(a)     By letter dated December 11, 2019, attorneys for twenty-five former Yahoo officers and employees[4] asserted purported claims arising from alleged indemnification rights.  A true and correct copy of the December 11, 2019 letter is attached as Exhibit 30.  The letter asked Altaba to retain a total of $10 million as security for these claims.

(b)     By letter dated December 23, 2019, Altaba responded.  A true and correct copy of the December 23, 2019 letter is attached as Exhibit 31.  Altaba accepted the claim and agreed to retain $10 million as security until December 14, 2021, which will be the expiration of five years following Yahoo's disclosure of the 2013 data breach.  The 25 Former Yahoo Officers & Employees have not responded to the December 23, 2019 letter.  Altaba asks the Court to hold that the 25 Former Yahoo Officers & Employees have accepted Altaba's offer to retain $10 million until December 14, 2021 as security for all of their purported claims.

---

[4]     The twenty-five former employees are Ronald Bell, Jeff Bonfarte, Jacqueline Brehmer, Dylan Case, Apoorv Dutta, Peter Ellehauge, Anne Espiritu, David Farrell, David Filo, Kausar Khizra, Atte Lahtiranta, Robert Lord, Nick Lyon, Chris Madsen, Amotz Maimon, Laurie Mann, Marissa Mayer, P.P.S. Narayan, Suzanne Philion, Nasa Quba, Jay Rossiter, Andrew Savage, Shirali Shiresta Mattam Suresh, Sean Zadig and Elizabeth Zwicky (the "25 Former Yahoo Officers & Employees").

## **State And Municipal Taxes**

48.     Altaba continues to work with state and municipal tax authorities to resolve claims related to purported pending and future tax obligations.  For example, as a result of these efforts, Altaba has reached resolution with the New York State Department of Taxation & Finance ("New York State Tax") on asserted outstanding tax obligations.  On February 28, 2020, Altaba paid the agreed upon amount of taxes due to the State of New York, and New York State Tax withdrew its claim.

49.     *California State Taxes*

(a)     Altaba continues to negotiate with the California Franchise Tax Board (the "CA Tax Board").  By letter dated December 5, 2019, the CA Tax Board asserted a purported claim for $299,126,296.26.

(b)     After initial discussions with Altaba and an additional tax payment by Altaba of estimated 2019 tax, but before Altaba formally responded to the December 5, 2019 letter, the CA Tax Board amended its prior claims and asserted a revised purported aggregate claim of $192,309,528.42.

(c)     By letter dated February 24, 2020, Altaba responded.  A true and correct copy of the February 24, 2020 letter is attached as Exhibit 32.  Altaba accepted-in-part and rejected-in-part the CA Tax Board's revised claim, and explained why it was rejecting portions of the CA Tax Board's claim.

33

(d)     Since Altaba's February 24, 2020 letter, several items have brought additional clarity to the total amount of security that should be reserved for the CA Tax Board's claims.  First, Verizon, as ultimate owner of the tax liabilities for 2005-2006, reached an agreement on April 28, 2020 to resolve the 2005 and 2006 liabilities, and a payment satisfying that agreement has been made.  Thus, those claims from the CA Tax Board's February 20, 2020 letter have been resolved.

(e)     Second, there has been additional clarity on the tax liability for 2018 and 2019.  Altaba's tax liability for those years arises out of its sales of the Alibaba Shares.  Altaba's tax liability to the CA Tax Board for these sales is defined by multiplying the gain received from the sale of the Alibaba Shares in a given year by the percentage of the gain apportioned to California.  Altaba has executed closing agreements with the CA Tax Board on the method to calculate Altaba's tax liability for 2018 and 2019.  Altaba has also filed its 2019 tax return, and explained that the total tax due was $98,717,381.

(f)     On May 12, 2020, the CA Tax Board submitted a revised purported claim (dated May 7, 2020) that acknowledged the partial resolution of its claims and requests a reduced aggregate amount of security for its claims in the amount of $134,510,861.88.  A true and correct copy of the May 12, 2020 letter is attached as Exhibit 33.

34

(g)    The May 12, 2020 letter broke down the CA Tax Board's claims by year as follows:

(i)    2008:  $2,040,277.65

(ii)    2009:  $80,761.64

(iii)    2018:  $27,463,621.82

(iv)    2019:  $104,926,200.77

(h)    The only material outstanding dispute relating to Altaba's tax liability for 2018 relates to the appropriate application and amount of research and development credits that can be carried forward from Altaba's legacy operating business.  The only outstanding dispute relating to Altaba's tax liability for 2019 relates to whether the IRS could assess Altaba any penalty.

(i)    As a result, Altaba anticipates that further discussions may result in the parties reaching an agreement on a mutually acceptable security amount for the claims of the CA Tax Board.  However, solely for the purposes of effectuating Altaba's forthcoming motion for an Interim Order setting interim security amounts under Section 280 to allow for a more expeditious distribution to Altaba stockholders of Interim Excess Assets, Altaba will retain for the Interim Order the revised security amount of $134,510,861.88 requested by the CA Tax Board in its May 12, 2020 letter.  If the parties cannot reach agreement, Altaba

35

intends to request that the Court order Altaba to retain a total of $98,717,381 as security for the CA Tax Board's claims in the Final Order.

  50. *New York City Department of Finance*

    (a) Altaba has reached an agreement with the New York City Department of Finance (the "NYC Finance Department") regarding any outstanding potential liability for 2018 and 2019.  The agreement will be executed shortly and Altaba expects to pay the amount owed on May 29, 2020.  Once the payment is made, the NYC Finance Department will have no further claims for 2018 and 2019, except as expressly reserved for certain limited circumstances. While Altaba expects to pay the amount before any hearing in this matter, for purposes of calculating the Interim Reserve and Final Reserve (and subject to eliminating this amount from the Interim Reserve and Final Reserve once paid), the amounts to be paid to the NYC Finance Department are included with the amount reserved for Other Current Liabilities (described below).

## IRS

  51. By letter dated December 6, 2019, the Internal Revenue Service (the "IRS") asserted purported claims allegedly derived from outstanding and estimated income tax and employment tax liabilities for Altaba and its wholly owned subsidiary, Excalibur, through the end of the taxable year 2029.  The IRS's letter asserted a potential maximum tax liability for Altaba through 2029 of more than

$12.7 billion (which included approximately $5.8 billion in tax liabilities that Altaba paid on December 16, 2019). The IRS's revised net $6.9 billion figure was still unrealistic and was not based on a comprehensive review of Altaba's actual potential tax liabilities to the IRS.

52.     By letter dated February 24, 2020, Altaba responded to the IRS's claim by offering an aggregate holdback of $659,177,452 for all of the IRS's claims. The more than $6 billion spread between Altaba's position and the IRS's net position reflected the fact that Altaba, with the help of expert advisors, had carefully studied its potential tax liabilities and had made well-informed judgments about the amounts that would be reasonably likely to be sufficient to satisfy the IRS's asserted claims. Because Altaba believed that the IRS's position would change after reviewing relevant information relating to Altaba's tax liabilities, Altaba's letter invited the IRS to continue discussions regarding those potential liabilities in order to reduce the requested holdback amounts. A true and correct copy of the February 24 letter is attached as Exhibit 34.

53.     Since February 24, 2020, Altaba and the IRS have continued to negotiate in good faith in an effort to reach agreement on a mutually acceptable security amount for the claims of the IRS. As Altaba expected, as the IRS became better informed about Altaba's tax liabilities, the IRS reduced its demands for security for its claims. Discussions between the parties to date have resulted in the

IRS reducing its aggregate security request from a net of $6.9 billion to $1,501,161,359, comprised of approximately $1.405 billion for purported income tax-related liabilities and approximately $96 million for purported employment tax-related liabilities.  On May 15, 2020, the IRS submitted a document showing the IRS's revised requests for security, which included a "Claim Summary."  A true and correct copy of the "Claim Summary" sent by the IRS on May 15, 2020 is attached as Exhibit 35.  The IRS's aggregate request for security for its claims related to potential income tax liability can be broken down by year as follows:

    (i)    2016:  ($1,242,320);

    (ii)    2017:  $20,287,753;

    (iii)    2018:  $588,672,440;

    (iv)    2019:  $482,804,662;

    (v)    2020:  $205,755,788;

    (vi)    2021:  $30,492,000;

    (vii)    2022:  $16,401,840; and

    (viii)    2023-2029:  between $8.3 million and $9.4 million per year.[5]

---

[5]    While this Petition aggregates the IRS's claims, Altaba will provide the Court with specific details on each of the IRS's distinct claims so that each claim, by year and particular tax issue, can be identified and the appropriate holdback determined in the Final Order.

54.     Altaba submits that, while the parties have made substantial progress on their discussions, the tax claims asserted by the IRS remain inflated and do not reflect amounts that the IRS would actually seek from Altaba after the IRS has fully considered the facts and circumstances regarding the tax matters in discussion.  Accordingly, Altaba anticipates that continued discussions will result in the IRS further reducing the amount of security that it contends is reasonably likely to be sufficient to provide compensation for its historical and future tax claims.  Altaba believes that $659,177,452 is the appropriate aggregate amount that should be held back as security reasonably likely to be sufficient to provide compensation for the claims the IRS has asserted and, if necessary, will make that showing to the Court.

55.     However, solely for the purposes of effectuating Altaba's forthcoming motion for an Interim Order, Altaba will retain on an interim basis the full $1,501,161,359 currently requested by the IRS as security for its purported claims. Following the entry of the Interim Order, Altaba will either reach agreement with the IRS on a mutually acceptable amount to retain as security, or will ask the Court to determine that $659,177,452 is the appropriate aggregate amount that should be held back as security reasonably likely to be sufficient to satisfy the claims the IRS has asserted.

### Verizon

56.     As discussed above, Verizon acquired the assets and liabilities of Altaba's operating business, Yahoo, in 2017. The parties continue to have contractual obligations to each other as a result of that transaction through the Reorganization Agreement.

57.     Verizon has requested that Altaba retain more than $3.5 billion as security for Verizon's various claims.  Because Verizon and Altaba continue to have some shared or overlapping liabilities following Verizon's acquisition of the Yahoo business, Verizon's aggregate $3.5 billion holdback demand relates almost entirely to claims that duplicate or backstop other litigation or tax claims described above.  As addressed in more detail below, Verizon's requests for holdbacks on these claims dwarf the amounts sought by the plaintiffs in the Yahoo Data Breaches litigations and the taxing authorities from which Verizon's claims are purportedly derived.

    (a)     *Correspondence*.

        (i)     By letter dated November 22, 2019, Verizon asserted purported claims related to alleged indemnification, defense cost sharing and liability sharing obligations of Altaba under the Reorganization Agreement.  A true and correct copy of the November 22, 2019 letter is attached as Exhibit 36.

(ii)     First, Verizon asserted claims related to the Canadian

Consumer Class Actions and Altaba's agreement to pay 50% of the settlement in

the National Consumer Class Actions.  Verizon also cited other purported potential

obligations of Altaba arising out of the Yahoo Data Breaches, which all fall under

the defined term "User Security Liabilities" in the Reorganization Agreement.  In

its initial November 22, 2019 letter, Verizon did not specify the amounts that it

contended that Altaba should retain as security for these potential claims arising

out of the Yahoo Data Breaches.

(iii)     Verizon next identified indemnification and other rights

related to potential taxes owed to the IRS, New York, California and other tax

authorities.  Verizon did not identify any specific amount that Altaba should retain

as security for any indemnification or other rights related to such tax liabilities.

(iv)     By letter dated December 23, 2019, Altaba responded to

Verizon.  A true and correct copy of the December 23, 2019 response letter is

attached as Exhibit 37.  Altaba agreed that it is responsible under Section 5.5 of the

Reorganization Agreement for certain tax-related liabilities, and that Altaba is

responsible for 50% of User Security Liabilities.  Although Verizon's letter failed

to identify the appropriate holdbacks for those claims, Altaba's response specified

the amounts reasonably likely to be sufficient to provide compensation to Verizon

for each of its asserted claims based on information known at the time.

(v)     In subsequent negotiations with Verizon, Altaba has

offered to retain the following amounts:

> (1)     Altaba reaffirmed that it intends to retain $58,750,000
>
> (which included the $1 million since paid) as security for
>
> the settlement of the National Consumer Class Actions
>
> and offered to retain $50 million as security for the
>
> Canadian Consumer Class Actions.  These amounts arise
>
> from agreements with the respective class counsel and
>
> Verizon, as described above.

> (2)     Altaba also offered to retain $2,500,000 as security to
>
> cover its 50% share of any remaining User Security
>
> Liabilities, *i.e.*, any such liabilities not resolved by the
>
> National Consumer Class Actions and the Canadian
>
> Consumer Class Actions.

(vi)    On March 18, 2020, Verizon responded by letter to

Altaba's December 23, 2019 letter.  A true and correct copy of Verizon's counsel's

March 18 letter is attached as Exhibit 38.  Verizon rejected the offer of security

and demanded aggregate security in the amount of more than $3.5 billion for all of

its claims:  $475 million for potential Yahoo Data Breaches claims (which Verizon

has since acknowledged to be inclusive of the $110.25 million Altaba is already

retaining as security) and more than $3.1 billion for potential tax liabilities that are based solely on the tax years and potential claims already reviewed by the IRS (and for which the IRS is requesting an aggregate security amount of only $19 million).  As discussed below, Verizon's claims are unreasonable because they far exceed even the potential liabilities for the underlying claims.

  (b) *Yahoo Data Breaches duplication*.

   (i) Both Altaba and Verizon agree that Altaba should retain as security the $50 million agreed upon with class counsel for the Canadian Consumer Class Actions and that no additional security is required for this claim.

   (ii) However, Verizon contends that Altaba should reserve $400,000,000 for its half of the potential liability in the National Consumer Class Actions.  Verizon asks that the $400,000,000 amount should be withheld until the settlement becomes final and unappealable and the related cases are dismissed, at which point the reserve would drop to the agreed-upon $58,750,000 (of which Altaba has already paid $1 million).

   (iii) In subsequent discussions, Verizon clarified that it required total security of $400 million for the National Consumer Class Actions, not incremental security of $400 million.  Because Altaba is already retaining $57,750,000 as security for the underlying claim (in addition to the $1 million already paid, as discussed above), Verizon's additional security request is

43

$342,250,000.  This is almost six times the amount the parties agreed that Altaba would pay in the settlement, which, as described above, has already received preliminary approval from the trial court and has received minimal objections.

(iv)    In response to Altaba's proposal to hold back $2,500,000 as security reasonably likely to compensate for its 50% share of other User Security Liabilities, Verizon stated that Altaba should hold back ten times that amount:  $25 million.

(c)    *Tax claim duplication.*

(i)    Verizon demanded that Altaba retain more than $3.16 billion as security for purported "Tax Related Liabilities" (as defined in Verizon's letter dated November 22, 2019), including $2.56 billion for federal income taxes from 2017 and prior years and $528 million for state taxes (which are derived from the flow-through effects of the presumed federal income tax claim) for the same periods.  This demand dwarfs the security request by the claimant for the actual underlying tax claims.

(ii)    The IRS's total income tax claims for the years 2017 and prior are just $19 million.  As protection for its entirely secondary liability risk for the same tax years, Verizon demands that Altaba hold back an additional ***$2.56 billion*** as security.  Because the IRS has every incentive to protect itself by demanding reasonably sufficient security for its claims, adding any duplicative

44

layer of security for Verizon is unreasonable.  But Verizon not only demands additional funds for its redundant claim, it demands that the security be set at *134 times greater* than the amount the IRS is actually asserting against Altaba.

> (iii)   Verizon's position on state taxes is even more disconnected from reality.  Verizon demands that $528 million be held back as security for the state tax "effects" arising from the additional income tax sought by the IRS; however, the IRS is only seeking $19 million for 2017 and prior years. Any flow-through state tax impact from that $19 million federal income tax claim would be *de minimus*.

58.     However, solely for the purposes of effectuating Altaba's forthcoming motion for an Interim Order setting interim security amounts under Section 280 to allow for a more expeditious distribution to Altaba stockholders of Interim Excess Assets, Altaba will retain, on an interim basis, the full $3,526,500,000 Verizon requests as redundant security for its claims (which represents the full amount requested by Verizon less the $110.25 million Altaba is currently withholding for the Yahoo Data Breaches claims and its 50% share of the User Security Liabilities).  If the parties cannot reach agreement on a mutually acceptable amount to retain as security, Altaba anticipates asking the Court to determine in the Final Order that the amounts that Altaba is already reserving as security for the National Consumer Class Actions, the Canadian Consumer Class

Actions, User Security Liabilities and Altaba's potential tax liabilities are reasonably likely to provide compensation to Verizon for all of its claims, and that no additional security is required.

## Other Current Liabilities

59.   In addition to the claims asserted above, Altaba has reserved $192,853,538 for other current liabilities.  These include liabilities for all accepted claims not listed above, the NYC Finance Department agreement and other current tax and non-tax liabilities for which no claim was received and that are not listed above.

## Other Responses Received

60.   Altaba received one additional response to the Notice, which did not state a claim.  Altaba lists it here for completeness.

61.   *San Francisco Treasurer & Tax Collector*

(a)   By letter dated December 9, 2019, the Office of the Treasurer & Tax Collector for the City and County of San Francisco (the "San Francisco Treasurer & Tax Collector") responded to the Notice it was sent by Altaba.  A true and correct copy of the December 9, 2019 letter is attached as Exhibit 39.  The letter claimed to have "received your application for Business Registration," but was "unable to process" the request.  The December 9, 2019 letter from the San Francisco Treasurer & Tax Collector did not identify any claim.

46

(b)    By letter dated December 30, 2019, Altaba responded.  Altaba reiterated that it had filed a Certificate of Dissolution in the State of Delaware, that it was not filing an application for business registration and that its letter was providing the San Francisco Treasurer & Tax Collector with notice.  The response letter also directed the San Francisco Treasurer & Tax Collector to the DGCL for more information on the dissolution process under Delaware law.  A true and correct copy of the December 30, 2019 letter is attached as Exhibit 40.

(c)    The San Francisco Treasurer & Tax Collector did not assert a claim by the required deadline.  As a result, any claims that it could have asserted in response to the Notice are barred under Section 280(a)(2) of the DGCL.

(d)    Nevertheless, in light of the "cushion" (identified below), Altaba submits that the proposed funds to be retained under the Interim Order would still be sufficient to satisfy any claim that the San Francisco Treasurer & Tax Collector could reasonably assert if the Court were to grant the San Francisco Treasurer & Tax Collector the opportunity to participate in these proceedings despite missing the statutory deadline for presenting its claims.

## DETERMINATIONS MADE UNDER 8 *DEL. C.* § 280(c)(3)

## Costs and Expenses

62.   Altaba expects that it will incur $99,608,000 of additional wind-down costs and expenses through the completion of the wind-up period, which may include, but are not limited to, the following:

(a)   legal fees and expenses;

(b)   professional services fees, including for accounting and tax services, and for money manager or financial advisor fees;

(c)   payroll, incentive compensation, consultant fees and benefits for current and former employees and directors;

(d)   severance payments upon the termination of current employees;

(e)   office and facility-related expenses, including rent;

(f)   domestic and foreign corporate taxes not accounted for separately above;

(g)   insurance premiums;

(h)   director fees; and

(i)   general corporate expenses, including costs related to filings with the U.S. Securities and Exchange Commission and administrative costs.

63.    These forecasted expenses of $99,608,000 through the completion of the wind-up do not include the amounts listed in the Other Current Liabilities section above.

### Future Or Unknown Claims

64.    Because Altaba has not had an operating business for nearly three years, additional claims arising out of actions since the Sale are not reasonably likely.  Except for the future costs and expenses identified above, Altaba is not aware of any potential claims not otherwise barred under Section 280 of the DGCL that have not been made known to Altaba or that have not yet arisen but that, based on facts known to Altaba, are likely to arise or become known within five years after the date of dissolution of Altaba, including contingent, conditional or otherwise unmatured contractual claims.

65.    Nevertheless, the Board has also approved a "cushion" of $250 million to account for any unknown claims that may arise and/or expenses exceeding Altaba's estimate.  Altaba believes that this amount is more than sufficient to cover any other claims that may arise within five years of its dissolution.

### SUMMARY OF PROPOSED INTERIM & FINAL RESERVE AMOUNTS

66.    Below is a chart summarizing Altaba's interim and proposed final reserve amounts for each reserved claim:

49

| Claimant | Interim Reserve | Proposed Final Reserve |
|---|---|---|
| **Pending Litigation** | | |
| National Consumer Class Actions (Yahoo Data Breaches) | $57,750,000 | $57,750,000 |
| Canadian Consumer Class Action (Yahoo Data Breaches) | $50,000,000 | $50,000,000 |
| Remaining User Security Liabilities | $2,500,000 | $2,500,000 |
| Droplets | $1,500,000,000 | $0 |
| Carsten Rosenow | $50,000 | $0 |
| State Farm | $1,242,537 | $0 |
| **Contingent Contractual Claims** | | |
| Vornado (San Francisco) | $2,768,233 | $2,768,233 |
| Christopher Rohlf | $50,000 | $50,000 |
| Indemnity for 25 Former Yahoo Officers & Employees | $10,000,000 | $10,000,000 |
| Excess Verizon Holdback for tax claims (in excess of Altaba's reserve for certain federal and state tax claims) | $3,161,750,000 | $0 |
| Excess Verizon Holdback for Yahoo Data Breaches claims (in excess of Altaba's reserve for Yahoo Data Breaches cases and User Security Liabilities) | $364,750,000 | $0 |
| **Asserted Tax Claims** | | |
| California Franchise Tax Board | $134,510,862 | $98,717,381 |
| IRS | $1,501,161,359 | $659,177,452 |

| Other Current Liabilities, Costs & Expenses, and Cushion | | |
|---|---|---|
| Other Current Liabilities | $192,853,538 | $192,853,538 |
| Costs and expenses during wind-down | $99,608,000 | $99,608,000 |
| "Cushion" | $250,000,000 | $250,000,000 |
| **Total** | $7,328,994,529 | $1,423,424,604 |

51

## ALTABA'S CURRENT STATUS

67.     Altaba no longer conducts business in any capacity, but operates solely for the purpose of winding up its affairs and distributing its remaining assets.

68.     The aggregate amount, on an annual basis, of all distributions made by Altaba to holders of its common stock in 2019 and the three full calendar years before then was as follows:  (i) 2016:  $0.00; (ii) 2017:  $0.00; (iii) 2018:  $0.00; and (iv) 2019:  $26,754,835,349.  Altaba completed open market repurchases of its common stock, in the following aggregate amounts between 2016 and 2019:  (i) 2016:  $0.00; (ii) 2017:  $4,999,999,973; (iii) 2018:  $4,153,843,874; and (iv) 2019:  $3,384,376,347.  In addition, the Company has completed two self-tender offers since 2016.  In 2017, the Company completed a modified "Dutch auction" self-tender offer in which it paid aggregate consideration of $3,432,185,604 in cash to the tendering holders of 64,514,767 shares of the common stock.  In 2018, the Company completed a self-tender offer in which the Company paid aggregate consideration consisting of 68,250,000 American Depository Shares of Alibaba Group Holding Limited and $1,741,350,000 in cash to the tendering holders of 195,000,000 shares of the common stock.

69.     No distributions have been made to Altaba stockholders since Altaba filed its Certificate of Dissolution.

## **PRAYER FOR RELIEF**

WHEREFORE, Altaba respectfully requests that the Court:

A.     Find that Altaba has complied with the procedures set forth in 8 *Del. C.* § 280.

B.     Find that Altaba has provided adequate notice to potential claimants under 8 *Del. C.* § 280.

C.     Determine that each claimant identified in Exhibit 5 to this Petition as having responded to a Notice be notified of the pendency of this proceeding and his, her or its right to appear.

D.     Order that all claims from potential claimants who received actual notice of the dissolution and did not respond in accordance with 8 *Del. C.* § 280(a), listed in Exhibit 6, are barred under 8 *Del. C.* § 280(a)(2) and (a)(4), as applicable.

E.     Grant the Interim Order and authorize the Board to make one or more distributions to Altaba stockholders up to the full amount of the Interim Excess Assets.

F.     Determine, under 8 *Del. C.* § 280(c)(1), that Altaba's proposed total security of $58,750,000 (including the $1 million already paid), which represented Altaba's portion of the agreed total payment under the settlement agreement, is reasonably likely to be sufficient to cover the claims pending in the National Consumer Class Actions.

G.      Determine, under 8 *Del. C.* § 280(c)(1), that $2,500,000 is reasonably likely to be sufficient to cover claims filed by putative class plaintiffs who opted out the settlement in the National Consumer Class Actions.

H.      Determine, under 8 *Del. C.* § 280(c)(1), that Altaba's proposed total security of $50,000,000 pending final approval of a settlement or other resolution of the claims is reasonably likely to be sufficient to cover the claims pending in the Canadian Consumer Class Actions and the *Larocque* action.

I.      Determine, under 8 *Del. C.* § 280(c)(1), that the retention of $0.00 is reasonably likely to be sufficient security for the claims against Altaba in the Droplets Litigation.

J.      Determine, under 8 *Del. C.* § 280(c)(1), that the Verizon indemnity is reasonably likely to be sufficient security for the claims against Altaba brought by Mr. Rosenow, as described in paragraph 38 above.

K.      Determine, under 8 *Del. C.* § 280(c)(1), that the retention of $0.00 is reasonably likely to be sufficient security for the claims previously asserted against Altaba in the Kmart Adversary Proceeding.

L.      Determine, under 8 *Del. C.* § 280(c)(1), that the retention of $0.00 is reasonably likely to be sufficient security for the claims previously asserted against Altaba in the Space Heater Litigation.

54

M.     Determine, under 8 *Del. C.* § 280(b)(2), that ESRT has accepted the assignment to Verizon as adequate security for its purported claims, as described in paragraph 43 above.

N.     Determine, under 8 *Del. C.* § 280(b)(2), that the PV Campus Agreement provides adequate security for PV Campus's purported claims, as described in paragraph 44 above.

O.     Determine, under 8 *Del. C.* § 280(b)(2), that Vornado has accepted the Offer of Security described in paragraph 45 above and determine, under 8 *Del. C.* § 280(a)(4), that Vornado's assertion of anticipatory repudiation by Altaba is barred.

P.     Determine, under 8 *Del. C.* § 280(b)(2), that Mr. Rohlf has accepted the Offer of Security described in paragraph 46 above.

Q.     Determine, under 8 *Del. C.* § 280(b)(2), that the 25 Former Yahoo Officers & Employees have accepted the Offer of Security described in paragraph 47 above.

R.     Determine, under 8 *Del. C.* § 280(b)(2), that $98,717,381 provides sufficient security for the claims asserted by CA Tax, as described in paragraph 49 above.

S.      Determine, under 8 *Del. C.* § 280(b)(2), that $659,177,452 provides

sufficient security for the claims asserted by the IRS, as described in paragraphs

51-55 above.

T.      Determine, under 8 *Del. C.* § 280(b)(2), that the existing amounts

Altaba is reserving for other claims provides sufficient security for the claims

asserted by Verizon, as described in paragraphs 56-58 above.

U.      Determine, under 8 *Del. C.* § 280, as appropriate, that $192,853,538

constitutes sufficient security for Altaba's Other Current Liabilities.

V.      Determine, under 8 *Del. C.* § 280(c)(3), that (i) $99,608,000 is

sufficient to be retained for anticipated wind-down costs and expenses identified in

paragraph 62 of this Petition and that $250 million is a sufficient cushion to

account for, among other things, claims that have not yet been made known to the

corporation or that have not arisen, but that, based on facts known to Altaba are

likely to arise or to become known within five years of Altaba's dissolution.

W.     Take any other action or provide any other relief that is just and

proper.

/s/  Paul J. Lockwood
Paul J. Lockwood (ID No. 3369)
Arthur R. Bookout (ID No. 5409)
Matthew P. Majarian (ID No. 5696)
Gregory P. Ranzini (ID No. 6624)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King Street
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.:  (302) 651-3000

*Attorneys for Petitioner Altaba, Inc.*

DATED:  May 28, 2020

# Altaba

**Government Exhibit**

B

555 California Street
Suite 3325
San Francisco, CA 94104
Office: 415-801-4520
www.altaba.com

October 7, 2019

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0042

To Whom It May Concern:

On October 4, 2019, Altaba Inc., a Delaware corporation formerly known as Yahoo! Inc. (the "Company"), dissolved (the "Dissolution") in accordance with Section 275 of the General Corporation Law of the State of Delaware (the "DGCL"). As a result of the Dissolution, the continued corporate existence of the Company has ceased (except for the limited purposes expressly set forth in the DGCL) and the affairs of the Company will be wound up. The Company is hereby providing you with notice of the Dissolution pursuant to Section 280 of the DGCL.

This notice only applies to individuals or entities that may have a claim against the Company. If you have no claim against the Company, no action on your part is required.

If you have a claim against the Company, you must present such claim to the Company in writing, and such claim must contain sufficient information and supporting documentation to reasonably enable the Company to identify you and the substance of the claim. All claims must be sent to:

Claims Department
Altaba Inc.
555 California Street, Suite 3325
San Francisco, CA, U.S.A. 94104

**All claims must be received by the Company, at the address set forth above, on or before December 11, 2019. Pursuant to Section 280 of the DGCL, any claim not received by the Company on or before December 11, 2019 will be barred.**

Pursuant to the DGCL, the Company (or any liquidating trust or any other successor entity) may make distributions to any claimant and to the Company's stockholders (or persons interested as having been such) without further notice to any claimant.

The aggregate amount of distributions paid by the Company to its stockholders was $0 in 2016, $0 in 2017, $0 in 2018 and $26,754,835,349 in 2019 through the date hereof. In addition, the Company completed open market repurchases of its common stock, par value $0.001 per share (the "Common Stock"), in the aggregate amounts of $0 in 2016, $4,999,999,973 in 2017, $4,153,843,874 in 2018, and $3,384,376,347 in 2019 through the date hereof. In 2017, the Company completed a modified "Dutch auction" self tender offer in which it paid aggregate consideration of $3,432,185,604 in cash to the tendering holders of 64,514,767 shares of the Common Stock, and during 2018, the Company completed a self tender offer in which the Company paid aggregate consideration consisting of 68,250,000 American Depository Shares of Alibaba Group Holding Limited, a Cayman Islands company, and $1,741,350,000 in cash to the tendering holders of 195,000,000 shares of the Common Stock.

After the sale of its operating businesses in 2017, Yahoo! Inc. registered as an investment company and was renamed Altaba Inc.

Very truly yours,

ALTABA INC.

By: _____

Arthur Chong
General Counsel and Secretary

cc:    Alicia Tobin, Team Manager, Internal Revenue Service
       Gloria Sullivan, Director Western Compliance Practice Area, SE:LB:E
       Erick Slack, Director of Field Operations, Internal Revenue Service
       Kerri Hansen, Collections Unit, Internal Revenue Service

RECEIVED BY IRS-EEFAX    10/09/2019 4:05PM (GMT-05:00)

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636

TELEPHONE No.: (302) 651-3000
FACSIMILE No.: (302) 651-3001

DIRECT FACSIMILE No: 302-651-3001
EMAIL:

## FACSIMILE TRANSMITTAL SHEET

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

NAME: Collections Unit: ATTN KERRI HANSEN

FIRM:

CITY:                               DATE: October 9, 2019

TELEPHONE No.:

FACSIMILE No.: 888-843-0232

FROM: Aarish Sheikh              FLR/RM: 7th Floor

                                        DIRECT DIAL: 302-651-3116

TOTAL NUMBER OF PAGES INCLUDING COVER(S):      3

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

MESSAGE:
SEE ATTACHED



# Altaba

555 California Street
Suite 3325
San Francisco, CA 94104
Office: 415-801-4520
www.altaba.com

February 24, 2020

VIA U.S. MAIL AND EMAIL

Gloria Sullivan
Director, Western Compliance Practice Area
Internal Revenue Service
Attn: SE:LB:E
1301 Clay Street
Oakland, CA 94612-5217
Gloria.C.Sullivan@irs.gov

Michael James
Insolvency Advisor
1352 Marrows Road, Suite 204
Newark, DE 19711-5445

      RE:    Dissolution of Altaba Inc.

Dear Ms. Sullivan and Mr. James:

    Altaba received your letter, dated December 6, 2019, responding to Altaba's Dissolution Notice and submitting claims on behalf of the Internal Revenue Service ("IRS") for taxes in the aggregate amount of $12,736,879,763.26.

Altaba hereby accepts-in-part and rejects-in-part your claim. Without prejudice to Altaba's rights to defend any aspect of the IRS claim, and without admitting or acknowledging that any specific amount of tax is or will be owed by Altaba, for purposes of Altaba's ongoing liquidation and dissolution process under Delaware law, we intend to hold back an aggregate amount of $659,177,452 as security for the claims of the IRS.

    Altaba is required by the General Corporation Law of the State of Delaware (the "DGCL") to give you the following notice: Pursuant to Section 280(a)(3) of the DGCL, you are hereby notified that your claims will be barred if an action, suit or proceeding with respect to such claims is not commenced within 120 days of the date of this letter. Enclosed please find a copy of Sections 278-283 of the DGCL for your reference.

    Notwithstanding the foregoing, as discussed in our prior meetings and conversations, Altaba is prepared to acknowledge that the IRS already has satisfied the requirement of commencing an action, suit or proceeding and, accordingly, Altaba will not seek to bar the claims of the IRS on this basis. We understand that the IRS is reviewing certain matters in connection with Altaba's tax filings and there remain differences in Altaba's position and the

position of the IRS with respect to the amount of funds which should be held back from distribution pending that review.  We believe that it would be productive to continue our discussions to see if the parties can reach a mutually agreeable resolution as to the underlying matters under review or, in lieu thereof, as to an appropriate amount of funds which should be held back from distribution pending such resolution.

As noted during our prior meetings and conversations, this letter is a step in the legal process associated with the liquidation and dissolution of Altaba, and the timing of other subsequent steps depends on our sending you this letter.  By sending this letter at this time, we do not intend to foreclose further discussion between Altaba and the IRS with respect to the claims submitted by the IRS, and we hope that we will be able to continue the constructive dialogue with the IRS that has been taking place thus far.

Please let me know if you have any questions.  Thank you for your attention to this matter.

Sincerely,

Art Chong
General Counsel

Enclosures:  DGCL §§ 278-283



**Legislative Council,
General Assembly
State of Delaware**

# Title 8

# Corporations

NOTICE: The Delaware Code appearing on this site is prepared by the Delaware Code Revisors and the editorial staff of LexisNexis in cooperation with the Division of Research of Legislative Council of the General Assembly with the assistance of the Government Information Center, and is considered an official version of the State of Delaware statutory code. This version includes all acts effective as of April 18, 2018, up to and including 81 Del. Laws, c. 229.

DISCLAIMER: With respect to the Delaware Code documents available from this site or server, neither the State of Delaware nor any of its employees, makes any warranty, express or implied, including the warranties of merchantability and fitness for a particular purpose, or assumes any legal liability or responsibility for the usefulness of any information, apparatus, product, or process disclosed, or represents that its use would not infringe privately-owned rights. Please seek legal counsel for help on interpretation of individual statutes.

(c) Dissolution of a corporation may also be authorized without action of the directors if all the stockholders entitled to vote thereon shall consent in writing and a certificate of dissolution shall be filed with the Secretary of State pursuant to subsection (d) of this section.

(d) If dissolution is authorized in accordance with this section, a certificate of dissolution shall be executed, acknowledged and filed, and shall become effective, in accordance with § 103 of this title. Such certificate of dissolution shall set forth:

(1) The name of the corporation;

(2) The date dissolution was authorized;

(3) That the dissolution has been authorized by the board of directors and stockholders of the corporation, in accordance with subsections (a) and (b) of this section, or that the dissolution has been authorized by all of the stockholders of the corporation entitled to vote on a dissolution, in accordance with subsection (c) of this section;

(4) The names and addresses of the directors and officers of the corporation; and

(5) The date of filing of the corporation's original certificate of incorporation with the Secretary of State.

(e) The resolution authorizing a proposed dissolution may provide that notwithstanding authorization or consent to the proposed dissolution by the stockholders, or the members of a nonstock corporation pursuant to § 276 of this title, the board of directors or governing body may abandon such proposed dissolution without further action by the stockholders or members.

(f) Upon a certificate of dissolution becoming effective in accordance with § 103 of this title, the corporation shall be dissolved.

(8 Del. C. 1953, § 275; 56 Del. Laws, c. 50; 57 Del. Laws, c. 148, §§ 31, 32; 59 Del. Laws, c. 106, § 14; 66 Del. Laws, c. 136, § 34; 77 Del. Laws, c. 14, § 14; 77 Del. Laws, c. 290, § 25.)

### § 276 Dissolution of nonstock corporation; procedure.

(a) Whenever it shall be desired to dissolve any nonstock corporation, the governing body shall perform all the acts necessary for dissolution which are required by § 275 of this title to be performed by the board of directors of a corporation having capital stock. If any members of a nonstock corporation are entitled to vote for the election of members of its governing body or are entitled to vote for dissolution under the certificate of incorporation or the bylaws of such corporation, such members shall perform all the acts necessary for dissolution which are contemplated by § 275 of this title to be performed by the stockholders of a corporation having capital stock, including dissolution without action of the members of the governing body if all the members of the corporation entitled to vote thereon shall consent in writing and a certificate of dissolution shall be filed with the Secretary of State pursuant to § 275(d) of this title. If there is no member entitled to vote thereon, the dissolution of the corporation shall be authorized at a meeting of the governing body, upon the adoption of a resolution to dissolve by the vote of a majority of members of its governing body then in office. In all other respects, the method and proceedings for the dissolution of a nonstock corporation shall conform as nearly as may be to the proceedings prescribed by § 275 of this title for the dissolution of corporations having capital stock.

(b) If a nonstock corporation has not commenced the business for which the corporation was organized, a majority of the governing body or, if none, a majority of the incorporators may surrender all of the corporation rights and franchises by filing in the office of the Secretary of State a certificate, executed and acknowledged by a majority of the incorporators or governing body, conforming as nearly as may be to the certificate prescribed by § 274 of this title.

(8 Del. C. 1953, § 276; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 35; 77 Del. Laws, c. 253, § 60.)

### § 277 Payment of franchise taxes before dissolution, merger, transfer or conversion.

No corporation shall be dissolved, merged, transferred (without continuing its existence as a corporation of this State) or converted under this chapter until:

(1) All franchise taxes due to or assessable by the State including all franchise taxes due or which would be due or assessable for the entire calendar month during which such dissolution, merger, transfer or conversion becomes effective have been paid by the corporation; and

(2) All annual franchise tax reports including a final annual franchise tax report for the year in which such dissolution, merger, transfer or conversion becomes effective have been filed by the corporation;

notwithstanding the foregoing, if the Secretary of State certifies that an instrument to effect a dissolution, merger, transfer or conversion has been filed in the Secretary of State's office, such corporation shall be dissolved, merged, transferred or converted at the effective time of such instrument.

(8 Del. C. 1953, § 277; 56 Del. Laws, c. 50; 70 Del. Laws, c. 79, § 17; 71 Del. Laws, c. 120, § 16; 78 Del. Laws, c. 96, §§ 8, 9.)

### § 278 Continuation of corporation after dissolution for purposes of suit and winding up affairs.

All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration

or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

Sections 279 through 282 of this title shall apply to any corporation that has expired by its own limitation, and when so applied, all references in those sections to a dissolved corporation or dissolution shall include a corporation that has expired by its own limitation and to such expiration, respectively.

(8 Del. C. 1953, § 278; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 36; 77 Del. Laws, c. 290, § 26.)

## § 279 Trustees or receivers for dissolved corporations; appointment; powers; duties.

When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any creditor, stockholder or director of the corporation, or any other person who shows good cause therefor, at any time, may either appoint 1 or more of the directors of the corporation to be trustees, or appoint 1 or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.

(8 Del. C. 1953, § 279; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 37.)

## § 280 Notice to claimants; filing of claims.

(a)(1)  After a corporation has been dissolved in accordance with the procedures set forth in this chapter, the corporation or any successor entity may give notice of the dissolution, requiring all persons having a claim against the corporation other than a claim against the corporation in a pending action, suit or proceeding to which the corporation is a party to present their claims against the corporation in accordance with such notice. Such notice shall state:

a. That all such claims must be presented in writing and must contain sufficient information reasonably to inform the corporation or successor entity of the identity of the claimant and the substance of the claim;

b. The mailing address to which such a claim must be sent;

c. The date by which such a claim must be received by the corporation or successor entity, which date shall be no earlier than 60 days from the date thereof; and

d. That such claim will be barred if not received by the date referred to in paragraph (a)(1)c. of this section; and

e. That the corporation or a successor entity may make distributions to other claimants and the corporation's stockholders or persons interested as having been such without further notice to the claimant; and

f. The aggregate amount, on an annual basis, of all distributions made by the corporation to its stockholders for each of the 3 years prior to the date the corporation dissolved.

Such notice shall also be published at least once a week for 2 consecutive weeks in a newspaper of general circulation in the county in which the office of the corporation's last registered agent in this State is located and in the corporation's principal place of business and, in the case of a corporation having $10,000,000 or more in total assets at the time of its dissolution, at least once in all editions of a daily newspaper with a national circulation. On or before the date of the first publication of such notice, the corporation or successor entity shall mail a copy of such notice by certified or registered mail, return receipt requested, to each known claimant of the corporation including persons with claims asserted against the corporation in a pending action, suit or proceeding to which the corporation is a party.

(2)  Any claim against the corporation required to be presented pursuant to this subsection is barred if a claimant who was given actual notice under this subsection does not present the claim to the dissolved corporation or successor entity by the date referred to in paragraph (a)(1)c. of this section.

(3)  A corporation or successor entity may reject, in whole or in part, any claim made by a claimant pursuant to this subsection by mailing notice of such rejection by certified or registered mail, return receipt requested, to the claimant within 90 days after receipt of such claim and, in all events, at least 150 days before the expiration of the period described in § 278 of this title; provided however, that in the case of a claim filed pursuant to § 295 of this title against a corporation or successor entity for which a receiver or trustee has been appointed by the Court of Chancery the time period shall be as provided in § 296 of this title, and the 30-day appeal period provided for in § 296 of this title shall be applicable. A notice sent by a corporation or successor entity pursuant to this subsection shall state that any claim rejected therein will be barred if an action, suit or proceeding with respect to the claim is not commenced within 120 days of the date thereof, and shall be accompanied by a copy of §§ 278-283 of this title and, in the case of a notice sent by a court-appointed receiver or trustee and as to which a claim has been filed pursuant to § 295 of this title, copies of §§ 295 and 296 of this title.

(4)  A claim against a corporation is barred if a claimant whose claim is rejected pursuant to paragraph (a)(3) of this section does not commence an action, suit or proceeding with respect to the claim no later than 120 days after the mailing of the rejection notice.

(b)(1)  A corporation or successor entity electing to follow the procedures described in subsection (a) of this section shall also give notice of the dissolution of the corporation to persons with contractual claims contingent upon the occurrence or nonoccurrence of future

**Title 8 - Corporations**

events or otherwise conditional or unmatured, and request that such persons present such claims in accordance with the terms of such notice. Provided however, that as used in this section and in § 281 of this title, the term "contractual claims" shall not include any implied warranty as to any product manufactured, sold, distributed or handled by the dissolved corporation. Such notice shall be in substantially the form, and sent and published in the same manner, as described in paragraph (a)(1) of this section.

(2) The corporation or successor entity shall offer any claimant on a contract whose claim is contingent, conditional or unmatured such security as the corporation or successor entity determines is sufficient to provide compensation to the claimant if the claim matures. The corporation or successor entity shall mail such offer to the claimant by certified or registered mail, return receipt requested, within 90 days of receipt of such claim and, in all events, at least 150 days before the expiration of the period described in § 278 of this title. If the claimant offered such security does not deliver in writing to the corporation or successor entity a notice rejecting the offer within 120 days after receipt of such offer for security, the claimant shall be deemed to have accepted such security as the sole source from which to satisfy the claim against the corporation.

(c)(1) A corporation or successor entity which has given notice in accordance with subsection (a) of this section shall petition the Court of Chancery to determine the amount and form of security that will be reasonably likely to be sufficient to provide compensation for any claim against the corporation which is the subject of a pending action, suit or proceeding to which the corporation is a party other than a claim barred pursuant to subsection (a) of this section.

(2) A corporation or successor entity which has given notice in accordance with subsections (a) and (b) of this section shall petition the Court of Chancery to determine the amount and form of security that will be sufficient to provide compensation to any claimant who has rejected the offer for security made pursuant to paragraph (b)(2) of this section.

(3) A corporation or successor entity which has given notice in accordance with subsection (a) of this section shall petition the Court of Chancery to determine the amount and form of security which will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity within 5 years after the date of dissolution or such longer period of time as the Court of Chancery may determine not to exceed 10 years after the date of dissolution. The Court of Chancery may appoint a guardian ad litem in respect of any such proceeding brought under this subsection. The reasonable fees and expenses of such guardian, including all reasonable expert witness fees, shall be paid by the petitioner in such proceeding.

(d) The giving of any notice or making of any offer pursuant to this section shall not revive any claim then barred or constitute acknowledgment by the corporation or successor entity that any person to whom such notice is sent is a proper claimant and shall not operate as a waiver of any defense or counterclaim in respect of any claim asserted by any person to whom such notice is sent.

(e) As used in this section, the term "successor entity" shall include any trust, receivership or other legal entity governed by the laws of this State to which the remaining assets and liabilities of a dissolved corporation are transferred and which exists solely for the purposes of prosecuting and defending suits, by or against the dissolved corporation, enabling the dissolved corporation to settle and close the business of the dissolved corporation, to dispose of and convey the property of the dissolved corporation, to discharge the liabilities of the dissolved corporation and to distribute to the dissolved corporation's stockholders any remaining assets, but not for the purpose of continuing the business for which the dissolved corporation was organized.

(f) The time periods and notice requirements of this section shall, in the case of a corporation or successor entity for which a receiver or trustee has been appointed by the Court of Chancery, be subject to variation by, or in the manner provided in, the Rules of the Court of Chancery.

(g) In the case of a nonstock corporation, any notice referred to in the last sentence of paragraph (a)(3) of this section shall include a copy of § 114 of this title. In the case of a nonprofit nonstock corporation, provisions of this section regarding distributions to members shall not apply to the extent that those provisions conflict with any other applicable law or with that corporation's certificate of incorporation or bylaws.

(8 Del. C. 1953, § 280; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 38; 67 Del. Laws, c. 376, §§ 21-25; 69 Del. Laws, c. 266, §§ 1-17; 70 Del. Laws, c. 186, § 1; 77 Del. Laws, c. 253, § 61.)

## § 281 Payment and distribution to claimants and stockholders.

(a) A dissolved corporation or successor entity which has followed the procedures described in § 280 of this title:

(1) Shall pay the claims made and not rejected in accordance with § 280(a) of this title,

(2) Shall post the security offered and not rejected pursuant to § 280(b)(2) of this title,

(3) Shall post any security ordered by the Court of Chancery in any proceeding under § 280(c) of this title, and

(4) Shall pay or make provision for all other claims that are mature, known and uncontested or that have been finally determined to be owing by the corporation or such successor entity.

Such claims or obligations shall be paid in full and any such provision for payment shall be made in full if there are sufficient assets. If there are insufficient assets, such claims and obligations shall be paid or provided for according to their priority, and, among claims of equal priority, ratably to the extent of assets legally available therefor. Any remaining assets shall be distributed to the stockholders of the dissolved corporation; provided, however, that such distribution shall not be made before the expiration of 150 days from the date

of the last notice of rejections given pursuant to § 280(a)(3) of this title. In the absence of actual fraud, the judgment of the directors of the dissolved corporation or the governing persons of such successor entity as to the provision made for the payment of all obligations under paragraph (a)(4) of this section shall be conclusive.

(b) A dissolved corporation or successor entity which has not followed the procedures described in § 280 of this title shall, prior to the expiration of the period described in § 278 of this title, adopt a plan of distribution pursuant to which the dissolved corporation or successor entity (i) shall pay or make reasonable provision to pay all claims and obligations, including all contingent, conditional or unmatured contractual claims known to the corporation or such successor entity, (ii) shall make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the corporation which is the subject of a pending action, suit or proceeding to which the corporation is a party and (iii) shall make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity within 10 years after the date of dissolution. The plan of distribution shall provide that such claims shall be paid in full and any such provision for payment made shall be made in full if there are sufficient assets. If there are insufficient assets, such plan shall provide that such claims and obligations shall be paid or provided for according to their priority and, among claims of equal priority, ratably to the extent of assets legally available therefor. Any remaining assets shall be distributed to the stockholders of the dissolved corporation.

(c) Directors of a dissolved corporation or governing persons of a successor entity which has complied with subsection (a) or (b) of this section shall not be personally liable to the claimants of the dissolved corporation.

(d) As used in this section, the term "successor entity" has the meaning set forth in § 280(e) of this title.

(e) The term "priority," as used in this section, does not refer either to the order of payments set forth in paragraph (a)(1)-(4) of this section or to the relative times at which any claims mature or are reduced to judgment.

(f) In the case of a nonprofit nonstock corporation, provisions of this section regarding distributions to members shall not apply to the extent that those provisions conflict with any other applicable law or with that corporation's certificate of incorporation or bylaws.

(8 Del. C. 1953, § 281; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 39; 67 Del. Laws, c. 376, §§ 26-28; 68 Del. Laws, c. 163, § 1; 69 Del. Laws, c. 266, §§ 18-21; 70 Del. Laws, c. 299, § 4; 71 Del. Laws, c. 120, §§ 17, 18; 77 Del. Laws, c. 253, § 62.)

## § 282 Liability of stockholders of dissolved corporations.

(a) A stockholder of a dissolved corporation the assets of which were distributed pursuant to § 281(a) or (b) of this title shall not be liable for any claim against the corporation in an amount in excess of such stockholder's pro rata share of the claim or the amount so distributed to such stockholder, whichever is less.

(b) A stockholder of a dissolved corporation the assets of which were distributed pursuant to § 281(a) of this title shall not be liable for any claim against the corporation on which an action, suit or proceeding is not begun prior to the expiration of the period described in § 278 of this title.

(c) The aggregate liability of any stockholder of a dissolved corporation for claims against the dissolved corporation shall not exceed the amount distributed to such stockholder in dissolution.

(8 Del. C. 1953, § 282; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 40; 71 Del. Laws, c. 339, §§ 57, 58.)

## § 283 Jurisdiction.

The Court of Chancery shall have jurisdiction of any application prescribed in this subchapter and of all questions arising in the proceedings thereon, and may make such orders and decrees and issue injunctions therein as justice and equity shall require.

(66 Del. Laws, c. 136, § 41.)

## § 284 Revocation or forfeiture of charter; proceedings.

(a) The Court of Chancery shall have jurisdiction to revoke or forfeit the charter of any corporation for abuse, misuse or nonuse of its corporate powers, privileges or franchises. The Attorney General shall, upon the Attorney General's own motion or upon the relation of a proper party, proceed for this purpose by complaint in the county in which the registered office of the corporation is located.

(b) The Court of Chancery shall have power, by appointment of receivers or otherwise, to administer and wind up the affairs of any corporation whose charter shall be revoked or forfeited by any court under any section of this title or otherwise, and to make such orders and decrees with respect thereto as shall be just and equitable respecting its affairs and assets and the rights of its stockholders and creditors.

(c) No proceeding shall be instituted under this section for nonuse of any corporation's powers, privileges or franchises during the first 2 years after its incorporation.

(8 Del. C. 1953, § 283; 56 Del. Laws, c. 50; 66 Del. Laws, c. 136, § 41; 71 Del. Laws, c. 339, § 59.)

## § 285 Dissolution or forfeiture of charter by decree of court; filing.

Whenever any corporation is dissolved or its charter forfeited by decree or judgment of the Court of Chancery, the decree or judgment shall be forthwith filed by the Register in Chancery of the county in which the decree or judgment was entered, in the office of the



**Government Exhibit**

D

**Altaba Inc.**
**EIN:** ████8689
**Summary of Revised Claim Amounts - March 20, 2020**

| | Current Unpaid Liabilities and Unrefunded Credits [a] | Estimated Additional Tax [b] | Current Balance and Estimated Additional Tax [a] + [b] | Estimated Interest | Total Claim Amount |
|---|---|---|---|---|---|
| **Income Tax** | | | | | |
| 2013 | ($43,321,963) | $43,321,963 | $0 | $0 | $0 |
| 2014 | $0 | $0 | $0 | $0 | $0 |
| 2015 | $0 | $0 | $0 | $0 | $0 |
| 2016 | $0 | $137,470,755 | $137,470,755 | $22,963,513 | $160,434,268 |
| 2017 | $0 | $511,829,584 | $511,829,584 | $61,841,450 | $573,671,034 |
| 2018 | $0 | $887,447,883 | $887,447,883 | $56,000,199 | $943,448,082 |
| 2019 | ($8,767,000,000) | $9,223,929,252 | $456,929,252 | $4,138,199 | $461,067,451 |
| 2020 | $0 | $268,674,887 | $268,674,887 | $0 | $268,674,887 |
| 2021 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2022 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2023 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2024 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2025 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2026 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2027 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2028 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| 2029 | $0 | $42,294,000 | $42,294,000 | $0 | $42,294,000 |
| **Total Income Tax Claim** | | | | | **$2,787,941,723** |
| **Employment Tax** | | | | | |
| 2013 | ($5,977,612) | $4,223,556 | ($1,754,056) | $0 | ($1,754,056) |
| 2014 | ($6,545,351) | $6,478,890 | ($66,461) | $0 | ($66,461) |
| 2015 | $0 | $18,056,462 | $18,056,462 | $4,018,716 | $22,075,178 |
| 2016 | $0 | $16,748,503 | $16,748,503 | $2,956,866 | $19,705,369 |
| 2017 | ($3,593) | $5,880,864 | $5,877,271 | $766,482 | $6,643,753 |
| 2018 | $0 | $0 | $0 | $0 | $0 |
| 2019 | $0 | $2,986,927 | $2,986,927 | $58,089 | $3,045,016 |
| 2020 | ($2,190,636) | $4,433,828 | $2,243,192 | $0 | $2,243,192 |
| 2021 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2022 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2023 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2024 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2025 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2026 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2027 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2028 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2029 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| **Total Employment Tax Claim** | | | | | **$91,796,439** |

**Total Income Tax and Employment Tax Claim**                                   **$2,879,738,162**

**Altaba Inc.**
**EIN:** ████8689
**Summary of Revised Claim Amounts - May 15, 2020**



**Government**
**Exhibit**
E

| | Current Unpaid Liabilities and Unrefunded Credits [a] | Estimated Additional Tax [b] | Current Balance and Estimated Additional Tax [a] + [b] | Estimated Interest | Total Claim Amount |
|---|---|---|---|---|---|
| **Income Tax** | | | | | |
| 2013 | ($43,321,963) | $43,321,963 | $0 | $0 | $0 |
| 2014 | $0 | $0 | $0 | $0 | $0 |
| 2015 | $0 | $0 | $0 | $0 | $0 |
| 2016 | $0 | ($1,242,320) | ($1,242,320) | $0 | ($1,242,320) |
| 2017 | $0 | $17,962,806 | $17,962,806 | $2,324,948 | $20,287,753 |
| 2018 | $0 | $549,510,900 | $549,510,900 | $39,161,540 | $588,672,440 |
| 2019 | $0 | $474,825,144 | $474,825,144 | $7,979,519 | $482,804,662 |
| 2020 | ($19,357,721) | $225,113,508 | $205,755,788 | $0 | $205,755,788 |
| 2021 | $0 | $30,492,000 | $30,492,000 | $0 | $30,492,000 |
| 2022 | $0 | $16,401,840 | $16,401,840 | $0 | $16,401,840 |
| 2023 | $0 | $8,329,877 | $8,329,877 | $0 | $8,329,877 |
| 2024 | $0 | $8,496,474 | $8,496,474 | $0 | $8,496,474 |
| 2025 | $0 | $8,666,404 | $8,666,404 | $0 | $8,666,404 |
| 2026 | $0 | $8,839,732 | $8,839,732 | $0 | $8,839,732 |
| 2027 | $0 | $9,016,527 | $9,016,527 | $0 | $9,016,527 |
| 2028 | $0 | $9,196,857 | $9,196,857 | $0 | $9,196,857 |
| 2029 | $0 | $9,380,794 | $9,380,794 | $0 | $9,380,794 |
| **Total Income Tax Claim** | | | | | **$1,405,098,829** |

| | | | | | |
|---|---|---|---|---|---|
| **Employment Tax** | | | | | |
| 2013 | $0 | $0 | $0 | $0 | $0 |
| 2014 | $6 | $0 | $6 | $0 | $6 |
| 2015 | $0 | $18,056,462 | $18,056,462 | $4,188,233 | $22,244,695 |
| 2016 | $0 | $16,748,503 | $16,748,503 | $3,108,185 | $19,856,688 |
| 2017 | ($3,593) | $5,880,864 | $5,877,271 | $817,500 | $6,694,771 |
| 2018 | $0 | $0 | $0 | $0 | $0 |
| 2019 | $0 | $2,986,927 | $2,986,927 | $81,472 | $3,068,399 |
| 2020 | ($140,304) | $4,433,828 | $4,293,524 | $0 | $4,293,524 |
| 2021 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2022 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2023 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2024 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2025 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2026 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2027 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2028 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| 2029 | $0 | $4,433,828 | $4,433,828 | $0 | $4,433,828 |
| **Total Employment Tax Claim** | | | | | **$96,062,531** |

**Total Income Tax and Exmployment Tax Claim**          **$1,501,161,359**

**Summary of Tax Increase by Year for Altaba Claim Filing Purposes**

For tax years 2013 through 2019, the Total Tax Increase amount is the estimated increase in tax liability from the tax liability stated on the filed return or as previously determined after examination.
For tax years 2020 through 2029, because Altaba cannot file a return for those years yet, the Total Tax Increase amount is the estimated tax liability without taking into account tax liability stated on a filed return.

| Tax Year Ending | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CbA Adjustments | 43,321,963 | - | - | (1,242,320) | 11,089,875 | 273,804,029 | 474,825,144 | 225,133,508 | 30,492,000 | 16,401,840 | 8,329,877 | 8,496,474 | 8,666,404 | 8,839,732 | 9,016,527 | 9,196,857 | 9,380,794 |
| Domestic Adjustments | | | | | 6,872,931 | 275,706,871 | | | | | | | | | | | |
| Total Income Tax Increase | 43,321,963 | - | - | (1,242,320) | 17,962,806 | 549,510,900 | 474,825,144 | 225,133,508 | 30,492,000 | 16,401,840 | 8,329,877 | 8,496,474 | 8,666,404 | 8,839,732 | 9,016,527 | 9,196,857 | 9,380,794 |

Total Estimated Additional Income Tax from 2013 to 2029: 1,418,312,506

Total Unpaid Liabilities and Unrefunded Credits: (62,679,684)

Estimated Interest: 49,466,007

IRS Income Tax Claim (i.e., Unpaid Past, Present, and Future Federal Income Tax Liabilities): 1,405,098,829

| Employment Tax Examination Adjustments | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Non-Examination Projected Employment Tax Liabilities | $0 | $0 | $18,056,462 | $16,748,503 | 55,880,864 | $0 | 52,986,927 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 |
| Total Employment Tax Increase | $0 | $0 | $18,056,462 | $16,748,503 | 55,880,864 | $0 | 52,986,927 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 | 54,433,828 |

Total Estimated Additional Employment Tax from 2013 to 2029: 88,011,032

Total Unpaid Liabilities and Unrefunded Credits: (143,890)

Estimated Interest: 8,195,389

IRS Employment Tax Claim (i.e., Unpaid Past, Present, and Future Federal Employment Tax Liabilities): 96,062,531

**Altaba Inc.**
**EIN:** 8689
**Summary of Current Unpaid Balances Due and Unrefunded Credits**

## Income Tax

| Year | Income Tax |
|---|---|
| 2013 | ($43,321,963) |
| 2014 | $0 |
| 2015 | $0 |
| 2016 | $0 |
| 2017 | $0 |
| 2018 | $0 |
| 2019 | $0 |
| 2020 | ($19,357,721) |
| 2021 | $0 |
| 2022 | $0 |
| 2023 | $0 |
| 2024 | $0 |
| **Total** | **($62,679,684)** |

## Employment Tax

| Year | Form 941 Q1 | Form 941 Q2 | Form 941 Q3 | Form 941 Q4 | Form 940 | Total |
|---|---|---|---|---|---|---|
| 2013 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2014 | $0 | $0 | $0 | $0 | $6 | $6 |
| 2015 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2016 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2017 | ($5) | ($3,588) | $0 | $0 | $0 | ($3,593) |
| 2018 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2019 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2020 | $0 | ($139,926) | $0 | $0 | ($378) | ($140,304) |
| 2021 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2022 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2023 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2024 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | **(143,890)** |

**Altaba Inc.**
EIN: ████ 689
**Summary of Estimated Interest**

| | Estimated Tax | Interest Start Date [1] | Interest End Date [2] | Estimated Interest |
|---|---|---|---|---|
| **Income Tax** | | | | |
| 2013 | $0 | N/A | N/A | $0 |
| 2014 | $0 | N/A | N/A | $0 |
| 2015 | $0 | N/A | N/A | $0 |
| 2016 | ($1,242,320) | N/A | N/A | $0 |
| 2017 | $17,962,806 | 4/15/2018 | 8/15/2020 | $2,324,948 |
| 2018 | $549,510,900 | 4/15/2019 | 8/15/2020 | $39,161,540 |
| 2019 | $474,825,144 | 4/15/2020 | 8/15/2020 | $7,979,519 |
| 2020 | $205,755,788 | N/A | N/A | $0 |
| 2021 | $30,492,000 | N/A | N/A | $0 |
| 2022 | $16,401,840 | N/A | N/A | $0 |
| 2023 | $8,329,877 | N/A | N/A | $0 |
| 2024 | $8,496,474 | N/A | N/A | $0 |
| 2025 | $8,666,404 | N/A | N/A | $0 |
| 2026 | $8,839,732 | N/A | N/A | $0 |
| 2027 | $9,016,527 | N/A | N/A | $0 |
| 2028 | $9,196,857 | N/A | N/A | $0 |
| 2029 | $9,380,794 | N/A | N/A | $0 |
| | | | | **$49,466,007** |
| **Employment Tax** | | | | |
| 2013 | $0 | N/A | N/A | $0 |
| 2014 | $6 | N/A | N/A | $0 |
| 2015 | $18,056,462 | 1/31/2016 | 8/15/2020 | $4,188,233 |
| 2016 | $16,748,503 | 1/31/2017 | 8/15/2020 | $3,108,185 |
| 2017 | $5,877,271 | 1/31/2018 | 8/15/2020 | $817,500 |
| 2018 | $0 | N/A | N/A | $0 |
| 2019 | $2,986,927 | 1/31/2020 | 8/15/2020 | $81,472 |
| 2020 | $4,293,524 | N/A | N/A | $0 |
| 2021 | $4,433,828 | N/A | N/A | $0 |
| 2022 | $4,433,828 | N/A | N/A | $0 |
| 2023 | $4,433,828 | N/A | N/A | $0 |
| 2024 | $4,433,828 | N/A | N/A | $0 |
| 2025 | $4,433,828 | N/A | N/A | $0 |
| 2026 | $4,433,828 | N/A | N/A | $0 |
| 2027 | $4,433,828 | N/A | N/A | $0 |
| 2028 | $4,433,828 | N/A | N/A | $0 |
| 2029 | $4,433,828 | N/A | N/A | $0 |
| | | | | **$8,195,389** |

[1] Interest start date is the due date of the income tax return or the 4th quarter employment tax return

[2] Interest end date is 3 months from the date of the revised claim calculation

For tax years ending 2011 to 2015, IRS examination had been completed and approved by Joint Committee in June 2019.
Taxpayer informed Exam a 2015 1120X will be filed to change from foreign tax expense deduction to foreign tax credit (FTC).
Based on workpapers provided by taxpayer, changes are as follows:

| | 201112 | 201212 | 201312 | 201412 | 201512 | Tax Effect (35%) |
|---|---|---|---|---|---|---|
| **1 - Disallow 2015 NOL carried back to 2013 for portion due to foreign tax expense deduction** | | | | | | |
| Form 1120 line 29a - NOL deduction | | | | | | |
| Amount per 2011-2015 exam (see tab "**CBA 1**") | | | $ 475,982,679 | | | |
| Amount per Exam (as reported on amended return) | | | 352,205,641 | | | |
| Taxable Income Increase/(Decrease) | - | - | 123,777,038 | - | - | 43,321,963.30 |

Reason of the adjustment: Taxpayer potentially will file 2015 amended return to change foreign tax expense deduction to FTC which will reduce 2015 NOL carried back to 2013. Exam is not allowing the increase to FTCs until it can verify information. See Tab "**CBA 2**" for parts of Taxpayer's modeling of 2015 amendment. 3/20: Taxpayer has filed the amended return and the estimated tax increase has been paid.

| | 201112 | 201212 | 201312 | 201412 | 201512 | Tax |
|---|---|---|---|---|---|---|
| Taxable income/(loss) (TI/(L)) per RAR | 468,707,938 | 7,170,004,027 | 1,451,516,820 | 9,564,076,629 | (416,269,967) | |
| Expected amended return TI/(L) changes due to 2015 reduction of foreign tax expense TP provided copy by Transcript has not posted yet | | | 123,777,038 | | 123,777,038 | |
| Expected Amended return TI/(L) changes on NOL carryback from 2015 to 2013 TP provided amended and verification of payment, Transcript has not posted tax due yet. | | | | | | |
| Advance payment status is in question. | | | | | | |
| Potential amended taxable income | 468,707,938 | 7,170,004,027 | 1,575,293,858 | 9,564,076,629 | (292,492,929) | 43,321,963 |

Tax returns for 2016 and 2017 are currently under IRS examination.  Opening conference held in March 2019.  Exam is in the middle of examination on those two years.
Tax return for 2018 was filed on Oct 15, 2019 and is not currently under examination.  The following calculation is based on the return filed but not examined.

| Tax year ending | 201612 | 201712 | 201812 | Tax effect (35% for 16&17) (21% for 18) |
|---|---|---|---|---|
| **1 - NOPA # IE 1 (see Tab "CBA 5") (draft NOPA was issued to TP on 6/18/19)** | | | | |
| Form 1120, Line 10, Other Income - Cost Sharing Transactions Payment | | | | |
| Amount per return | - | - | | |
| Amount per Exam | 18,356,627 | 8,268,733 | | |
| Taxable Income Increase/ (Decrease) | 18,356,627 | 8,268,733 | | 9,318,876 |
| Reason of the adjustment:  Taxpayer inappropriately reduced pool of | | | | |
| Intangible Development Costs by licensing revenue. | | | | |
| | | | | |
| **2 - NOPA #IE 2 (see Tab "CBA 6") (draft NOPA was issued to TP on 6/18/19)** | | | | |
| Form 1120, Line 10, Other Income - R&D Cost-Share Payment | | | | |
| Amount per return | 117,767,693 | 50,768,703 | | |
| Amount per Exam | 160,049,295 | 67,884,664 | | |
| Taxable Income Increase/ (Decrease) | 42,281,602 | 17,115,961 | | 20,789,147 |
| Reason of the adjustment:  Taxpayer did not properly cost share as | | | | |
| intangible delopment costs allocable stock-based compensation costs | | | | |
| under its cost sharing arrangement with its foreign affiliate. | | | | |
| | | | | |
| **3 - NOPA #IE 3 (see Tab "CBA 7") (draft NOPA was issued to TP on 6/18/19)** | | | | |
| Form 1120, Line 26, Other Deductions - R&D Cost Sharing Allocation Adjustment | | | | |
| Amount per return | - | 293,679 | | |
| Amount per Exam | 1,637,127 | 293,679 | | |
| Taxable Income Increase/ (Decrease) | 1,637,127 | 293,679 | | 675,782 |
| Reason of the adjustment:  Taxpayer failed to include the arm's length | | | | |
| rental change for the use of land or depreciable tangible property in the | | | | |
| cost sharing allocation calculations. | | | | |

**4 - NOPA #IE 4 (see Tab "CBA 8") (draft NOPA was issued to TP on 6/18/19)**

Form 1120, Line 10, Other Income - Intercompany Service Charge

| | | | |
|---|---|---|---|
| Amount per return | 102,072,057 | 45,525,479 | |
| Amount per Exam | 119,038,778 | 51,532,463 | |
| Taxable Income Increase/ (Decrease) | 16,966,721 | 6,006,984 | 8,040,797 |

Reason of the adjustment: Taxpayer failed to allocate stock-based compensation to its foreign affiliate per IRC § 482 for FY2016 and FY2017.

**5 - 2018 Form 1120, Sch C, Line 17, Global Intangible Low-Taxed Income (GILTI) (see Tab "CBA 10")**

| | | | |
|---|---|---|---|
| Amount per return Form 8992, Sch A, Col (k) (see Tab "CBA 12") | - | | |
| Amount per Exam Form 8992, Sch A, Col (c) (see Tab "CBA 12") | 98,213,599 | | |
| Taxable Income Increase/ (Decrease) | (98,213,599) | (98,213,599) | (20,624,856) |

Reason for adjustment: 3/20. 2018 GILTI issue has not been fully resolved, Exam adjusted from the initial claim estimate to more accurately reflect risk to the government. GILTI basis taken on the form 8949 is adjusted in Claim adjustment DOM-006.

**6 - 2017 Form 1120 and 2018 Form 1120, Sch C, Line 15, Section 965(a) Inclusion (see Tab "CBA 10")**

| | | | |
|---|---|---|---|
| Amount per return | - | 5,105,355,349 | |
| Amount per Exam | - | 4,614,731,408 | |
| Taxable Income Increase/ (Decrease) | - | (490,623,941) | (103,031,028) |

| | | | |
|---|---|---|---|
| Form 965, Part I, Line 3 per Return (see Tab "CBA 11") | - | 6,916,933,054 | |
| Section 965(a) Inclusion per Exam (see Tab "CBA 12") | - | 6,252,216,747 | |
| Taxable Income Increase/ (Decrease) | - | (664,716,307) | |

Reason of the adjustment: 3/20. The Alibaba section 965 inclusion is change due to different amount from FS and ownership % used. The Yahoo Japan section 965 inclusion is changed due to the more precised data was 79 entities was provided by Aitaba.  Rev Proc 2019-40 observed, no E&P adjustments on downward attribution and 10/50 entities. Updated to reflect Exam's current estimate as of 3/12/2020. 5/15. The YJ 965 inclusion is corrected. Also, the YJ 965 inclusion is reduced by $500M to reflect the 305 dividend's E&P

| | | | |
|---|---|---|---|
| Form 965, Part II, Section 1, Line 17 per Return (see Tab "CBA 13") | - | (1,811,577,705) | |
| Amount per Exam (see Tab "CBA 12") | - | (1,637,485,338) | |
| Taxable Income Increase/ (Decrease) | - | 174,092,367 | |

Reason: 3/20. Corrected to reflect the Sec 965 inclusion amount.
5/15. Corrected to reflect the 965 inclusion adjustments.

**7 - 2018 Form 1120, Sch C, Line 22, Section 250 Deduction (see Tab ""CBA 10"")**

| | | | |
|---|---|---|---|
| Amount per return Form 8993, Part IV, Line 9 (see Tab "CBA 14") | (72,799,708) | | |
| Amount per Exam | 72,799,708 | | |
| Taxable Income Increase/ (Decrease) | - | | 15,287,939 |

Reason for adjustment: 3/20. 2018 GILTI issue has not been fully resolved. Exam is adjusting from the initial claim estimate to more accurately reflect risk to the government. GILTI basis taken on the form 8949 is adjusted in Claim adjustment DOM-006.

**8 - 2016, 2017, and 2018 Form 1120, Sch I, Part I, Line 5a Foreign Tax Credit**

| | | | | |
|---|---|---|---|---|
| Amount per return Form 1120, Sch I, Part I, Line 5a FTC | (191,026,985) | (3,993,656) | (1,425,502,511) | |
| Amount per Exam | (124,265,908) | (3,993,656) | (854,686,508) | |
| Tax Increase/ (Decrease) | 66,761,077 | - | 570,816,003 | 637,577,080 |

Reason of the adjustment: 2016, 2017 & 2018 returns have not been fully audited. Disallow FTCs pending substantiation.

| | |
|---|---|
| Amount per return Form 1118, Sch B, Part III, Line 1 Section 951A Category Income (see Tab "CBA 15") | (10,868,571) |
| Amount per return Form 1118, Sch B, Part III, Line 4 General Category Income (see Tab "CBA 15") | (1,414,633,940) |
| Total Per Return | (1,425,502,511) |
| Amount per EXAM Form 1118, Sch B, Part III, Line 1 Section 951A Category Income (see Tab "CBA 15") | - |
| Amount per EXAM Form 1118, Sch B, Part III, Line 4 General Category Income (see Tab "CBA 15")-Yahoo Japan | (743,362,848) |
| Amount per EXAM Form 1118, Sch B, Part III, Line 4 General Category Income (see Tab "CBA 15")-Alibaba | - |
| Amount per EXAM Form 1118, Sch B, Part III, Line 4 General Category Income (see Tab "CBA 15")-Other | (111,323,660) |
| Amount per EXAM carryover | (854,686,508) |
| Total Per Exam | 570,816,003 |

Tax Increase/ (Decrease)

Reason of the adjustment: 2018 return has not been audited. Disallow FTCs pending substantiation. General category FTCs include $156,008,981 of carryover FTCs. 3/20. Amounts substantiated are being allowed. Carryover FTCs allowed to more accurately reflect risk assessment. 5/15. 2016 FTCs limited per IDR Domestic #5 response. 2018 YJ FTCs adjusted. 2018 general carryover FTCs adjusted.

**9 (NEW) - 2016, 2017, and 2018 Form 1120, Sch C, Sec 78 Gross Up on FTC Claimed**

| | | | | |
|---|---|---|---|---|
| Amount per return Form 1120, Sch C, Line 18 | 191,026,985 | 3,993,656 | 2,136,843,452 | |
| Amount per Exam | 124,265,908 | 3,993,656 | 1,238,538,551 | |
| Tax Increase/ (Decrease) | (66,761,077) | - | (898,304,901) | (212,010,406) |

Reason of the adjustment: 3/20. Reverse 2016, 2017 & 2018 FTC Sec 78 Gross Up for FTC disallowed above. 5/15. Adjusted based on FTC adjustments.

**10 (NEW) - NOPA # 6 Correlative adjustment for 482 adjustments (old draft 5 NOPA was issued to TP on 6/18/19)**

Form 1120 Schedule C, Line 13: Dividends from Foreign Co

| | | | |
|---|---|---|---|
| Amount per return | 484,895,935 | | |
| Amount per Exam | 278,119,516 | | |
| Taxable Income Increase/ (Decrease) | (206,776,419) | - | (72,371,747) |

Reason of the adjustment: 3/20. TP reported $306,736,073 dividend for Y.C.V. The correlative adjustments for 2011-2015 & 2016 affects Retained Earnings which affect Dividends reported. Results in reduction in CV's Dividend by 127,534,342 + 79,242,077 (2011-15 & 2016 amounts)

| | | | |
|---|---|---|---|
| Total CBA taxable income adjustment by year | (194,295,419) | 31,685,357 | (1,414,342,733) |
| Tax effect of taxable income adjustments by year | (68,003,397) | 11,089,874.95 | (297,011,974) |
| Total CBA credit adjustments | 66,761,077 | - | 570,816,003 |
| **Total Increased Tax Estimate** | **(1,242,320)** | **11,089,875** | **273,804,029** | **283,651,584** |

Tax returns for 2016 and 2017 are currently under IRS examination.   Opening conference held in March 2019, Exam is in the middle of examination on those two years.

Tax return for 2018 was just filed on Oct 15, 2019 and not currently under examination.   The following calculation is based on the return filed but not examined.

| Tax year ending | Reference | 201612 | 201712 | 201812 | Tax effect |
|---|---|---|---|---|---|
| **2016** | | | | | (35% for 16&17) |
| Adjustment #1:    Gain from sale of land and other assets | DOM-001 | | | | (21% for 18) |
| Form 1120, line #9, gain from sale of land and other assets | | | | | |
| Amount per return | | 57,259,156 | | | |
| Amount per Exam | | 57,259,156 | | | |
| Taxable Income Increase/ (Decrease) | | - | | | - |

Reason of the adjustment: Examination currently in process, basis is not yet confirmed. As such, basis was removed for estimate purposes. 3/20: Basis has been updated to reflect amounts substantiated.

| | | | | | |
|---|---|---|---|---|---|
| Adjustment #2:    NOL | DOM-002 | | | | |
| Form 1120, line 29a, net operating loss deduction | | | | | |
| Amount per return | | (165,543,527) | | | |
| Amount per Exam | | (165,543,527) | | | |
| Taxable Income Increase/ (Decrease) | | - | | | - |

Reason of the adjustment: Examination currently in process, eligibility of NOL utilization not yet determined. As such, NOL removed for estimate purposes. 5/15: Updated to reflect amounts substantiated.

**2017**

**DOM-003**

Adjustment #3:   NOL

Form 1120, line 29a, net operating loss deduction

Amount per return                                        (38,622,693)

Amount per Exam                                          (38,622,693)

Taxable Income Increase/(Decrease)                              -

Reason of the adjustment: Examination currently in process,
eligibility of NOL utilization not yet determined. As such, NOL
removed for estimate purposes. 5/15: Updated to reflect
amounts substantiated.

**DOM-004**

Adjustment #4:   Gain from sale of operating business

Form 1120, line #8, capital gain from sale of Yahoo's operating business

Amount per return                                              -

Amount per Exam                                          10,601,478

Taxable Income Increase/(Decrease)                      10,601,478        3,710,517

Reason of the adjustment: Examination currently in process,
all basis is not yet confirmed. 3/20: Basis updated to reflect
amounts substantiated. Tab DOM-004 shows the updated
calculations. 5/15: Basis updated to reflect amounts
substantiated. Tab DOM-004 shows the updated calculations.

**DOM-005**

Adjustment #5:     Assumption of liabilities

Form 1120, line #1a, gross receipts or sales

Amount per return                                        (8,800,476)

Amount per Exam                                             234,991

Taxable Income Increase/(Decrease)                       9,035,467        3,162,413

Reason of the adjustment: Agreed adjustment in relation to
assumption of liabilities upon a stock sale that was treated as
an asset acquisition. See tab DOM-005 for a detailed
explanation. 4/24: No Change.

**2018**

Adjustment #6:    Gain from sale of investments    **DOM-006**

Form 1120, Schedule D, line 15, net long-term capital gain from sale of investments

| | |
|---|---|
| Amount per return | 19,287,442,692 |
| Amount per Exam | **20,468,542,558** |
| Taxable Income Increase/ (Decrease) | 1,181,099,866 |

| | |
|---|---|
| YJI Gain | **3,631,918,123** |
| Alibaba Gain | **16,726,510,328** |
| Excalibur Gain | 4,175,000 |
| Other Gain | **105,939,107** |
| **Total** | **20,468,542,558** |

Reason of the adjustment: For estimated purposes, Exam removed basis and adjusted the realized gain to equal net proceeds. Also, realized gain in the amount of $4.175M, from sale of Excalibur assets was not included on the return. In addition, the adjustment takes into account a potential adjustment to a "blockage" discount taken on the 2018 distribution of Alibaba shares. 3/20: Basis updated to reflect amounts substantiated. Tab DOM-006 shows the updated calculations. 5/15: Basis updated to reflect amounts substantiated. Gross proceeds updated to reflect blockage discount. Tab DOM-006 shows the updated calculations.

---

Adjustment #7:    Capital loss carryover    **DOM-007**

Form 1120, Schedule D, line 6, capital loss carryover

| | |
|---|---|
| Amount per return | (408,410,171) |
| Amount per Exam | **(408,410,171)** |
| Taxable Income Increase/ (Decrease) | - |

Reason of the adjustment: 2017 capital loss generated was eliminated in Adjustment 4, therefore, no carryover available in 2018. 3/20: Basis updated to reflect amounts substantiated. Tab DOM-007 shows the updated calculations. 5/15: Updated to reflect amounts substantiated. Tab DOM-007 shows the updated calculations.

---

Adjustment #8:    Other income Sch. M-3    **DOM-008**

Form 1120, Schedule M-3, Part 2, line 25, other income with differences

| | |
|---|---|
| Amount per return | (15,515,550) |

248,030,972

Amount per Exam — 15,515,550 — 3,258,266

Taxable Income Increase/(Decrease)

Reason of the adjustment: Insufficient information on return to identify and confirm this permanent adjustment. 4/24: No Change.

**DOM-008**

Adjustment #9: Exchange gain Sch. M-3
Form 1120, Schedule M-3, Part 2, line 25, other income with differences
Amount per return (77,032,944)
Amount per Exam -
Taxable Income Increase/(Decrease) 77,032,944 — 16,176,918

Reason of the adjustment: Insufficient information on return to identify and confirm this permanent adjustment. 4/24: No Change.

**DOM-009**

Adjustment #10: NOL
Form 1120, line 29a, net operating loss deduction
Amount per return (23,236,359)
Amount per Exam (20,601,747)
Taxable Income Increase/(Decrease) 2,634,612 — 553,269

Reason of the adjustment: Examination in process, eligibility of NOL utilization not yet determined. As such, NOL removed for estimate purposes. 5/15: Agreed adjustment based on response to IDR DOM-36.

**DOM-009**

Adjustment #11: R&D credit
Form 1120, Sch.J, line 5c, general business credit carryforwards
Amount per return (27,614,305)
Amount per Exam (19,926,858)
Taxable Income Increase/(Decrease) 7,687,447 — 7,687,447

Reason of the adjustment: Examination currently in process, R&D credit carryovers were not yet determined. 5/15: Agreed adjustment based on response to IDR DOM-25.

| | | | |
|---|---|---|---|
| Total Taxable Income increase by year | - | 19,636,945 | 1,276,282,972 |
| Tax rate | 35% | 35% | 21% |
| R&D credit increase | - | 6,872,931 | 268,019,424 |
| | - | - | 7,687,447 |
| **Total Increased Tax Estimate** | - | **6,872,931** | **275,706,871** | = **282,579,802** |

Tax return for 2019 was provided to IRS on 4/27/2020 (Taxpayer stated on the return that a superseding tax return will be filed by 10/15/2020). The tax reported on the 2019 return is in the process of being assessed and the return is not currently under examination.
The following calculation is based on the return filed but not examined.
Major transaction:  Sale of 278,315,416 Alibaba shares for net proceeds of approximately $46 billion per N-CSR as of 6/30/19, page 51 (see Tab "DOM-014").

## 2019 Taxable Income Analysis

| | Reference | |
|---|---|---|
| Net Investment Income | DOM-010 | 382,422,450 |
| Reason of the adjustment: 5/15. Previous estimate had $397M investment income from SEC filings. Updated to reflect interest income per 2019 return. | | |
| Indemnification Asset | DOM-011 | 219,000,000 |
| Reason of the adjustment: Altaba has recorded an indemnification asset from Verizon Media Group of $219 million. Since the indemnification is a net asset, any indemnification may be taxable income if it is paid. | | |
| Other Income | DOM-012 | 62,131,969 |
| Reason of the adjustment: 2018 tax return reported Miscellaneous Other Income. Exam is unable to obtain the details of the income. For purposes of this estimate, Exam is assuming that it may be annually recurring income. 5/15. Updated to reflect other income per 2019 return. | | |
| Realized Gain from Sale of Alibaba Shares | DOM-013 | 43,243,420,332 |
| Reason of the adjustment: 5/15. Updated to reflect amounts substantiated and 2019 return. See Tab DOM-006. | | |
| | | |
| Total taxable income from 1/1 to 12/31/19 | | 43,906,974,751 |
| Potential tax liability for 2019 @21% tax rate | | 9,220,464,698 |
| Tax Assessed per Filed Return | | (8,745,639,554) |

2019
Page 15 of 76

2020 to 2029 projection is based on the company's cash position and last filed semi-annual report Form N-CSR as of June 30, 2019.

**Assumption:** Since there is no public information available to indicate the timing of the sale of Altaba's remaining assets, Exam assumes all the assets will be sold in 2020. Therefore, after 2020, the company's only income will be investment income generated from the cash position and other income as reported on 2018 tax return.

## 2020 Taxable Income Analysis

| | Reference | 1/1 to 12/31/2020 |
|---|---|---|
| Projected Investment Income | | - |
| Reason of the adjustment: Since the cash position at the end of the year did not change significantly, assume same investment income in 2020 as 2019. 3/20. The semi-annual report is being used because it reflects future income more accurately than the annual report. 5/15. Adjusted to reflect state tax deduction. | | |
| Sale of Alibaba Shares | DOM-014 | 1,071,219,086 |
| Reason of the adjustment: Sale of remaining 5 million Alibaba shares using 11/20/19 closing price ($182.35). 3/20. Gain updated to reflect actual sales and substantiated basis. 5/15. Gain updated to reflect substantiation. See Tab DOM-006 for calculation. | | |
| Other Income | DOM-012 | - |
| Reason of the adjustment: 2018 tax return reported Miscellaneous Other Income. Exam is unable to obtain the details of the income. For purposes of this estimate, Exam is assuming that it may be annually recurring income. 3/20. Updated to more accurately reflect future income. | | |
| Proceeds from Sale of Excalibur Assets | DOM-17 | 750,000 |
| | | 1,071,969,086 |
| **Total taxable income from 1/1 to 12/31/20** | | **1,071,969,086** |
| **Potential tax liability for 2020** | | **225,113,508** |

## 2021 Taxable Income Analysis

| | 1/1 to 12/31/2021 |
|---|---|
| Projected Investment Income | **145,200,000** |
| Reason of the adjustment: Since all the assets were assumpted to be sold in 2020, the only income will be investment income from cash position and other income. 5/15. Adjusted per "Future Tax" tab. | |
| Other Income | - |
| DOM-012 | |
| Reason of the adjustment: 2018 tax return reported Miscellaneous Other Income. Exam is unable to obtain the details of the income. For purposes of this estimate, Exam is assuming that it may be annually recurring income. 3/20. Updated to more accurately reflect future income. | |
| **Total taxable income from 1/1 to 12/31/21** | **145,200,000** |
| **Potential tax liability for 2021** | **30,492,000** |

## 2022 Taxable Income Analysis

|  | DOM-012 | 1/1 to 12/31/2022 |
|---|---|---|
| Projected Investment Income | | 78,104,000 |
| Other Income | | - |
| Total taxable income from 1/1 to 12/31/22 | | 78,104,000 |
| Potential tax liability for 2022 | | 16,401,840 |

## 2023 Taxable Income Analysis

|  | DOM-012 | 1/1 to 12/31/2023 |
|---|---|---|
| Projected Investment Income | | 39,666,080 |
| Other Income | | - |
| Total taxable income from 1/1 to 12/31/23 | | 39,666,080 |
| Potential tax liability for 2023 | | 8,329,877 |

## 2024 Taxable Income Analysis

|  | DOM-012 | 1/1 to 12/31/2024 |
|---|---|---|
| Projected Investment Income | | 40,459,402 |
| Other Income | | - |
| Total taxable income from 1/1 to 12/31/24 | | 40,459,402 |
| Potential tax liability for 2024 | | 8,496,474 |

## 2025 Taxable Income Analysis

DOM-012

| | 1/1 to 12/31/2025 |
|---|---|
| Projected Investment Income | 41,268,590 |
| Other Income | - |
| Total taxable income from 1/1 to 12/31/25 | 41,268,590 |
| Potential tax liability for 2025 | 8,666,404 |

## 2026 Taxable Income Analysis

DOM-012

| | 1/1 to 12/31/2026 |
|---|---|
| Projected Investment Income | 42,093,961 |
| Other Income | - |
| Total taxable income from 1/1 to 12/31/26 | 42,093,961 |
| Potential tax liability for 2026 | 8,839,732 |

## 2027 Taxable Income Analysis

DOM-012

| | 1/1 to 12/31/2027 |
|---|---|
| Projected Investment Income | 42,935,841 |
| Other Income | - |
| Total taxable income from 1/1 to 12/31/27 | 42,935,841 |
| Potential tax liability for 2027 | 9,016,527 |

## 2028 Taxable Income Analysis

**1/1 to 12/31/2028**

Projected Investment Income          43,794,557
Other Income                                          -

**DOM-012**

Total taxable income from 1/1 to 12/31/28          43,794,557

Potential tax liability for 2028          9,196,857

**2029 Taxable Income Analysis**

**1/1 to 12/31/2029**

Projected Investment Income          44,670,449
Other Income                                          -

**DOM-012**

Total taxable income from 1/1 to 12/31/29          44,670,449

Potential tax liability for 2029          9,380,794

Total potential tax liability for 2020 to 2029          333,934,013

**Future Tax Calculation**

*(in millions)*

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 | **Total** |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash | 13,000 | 7,260 | 3,905 | 1,983 | 2,023 | 2,063 | 2,105 | 2,147 | 2,190 | 2,234 | |
| Less Distribution | (6,000) | (3,500) | (2,000) | - | - | - | - | - | - | - | |
| Plus Earnings | 260 | 145 | 78 | 40 | 40 | 41 | 42 | 43 | 44 | 45 | |
| Net Cash | 7,260 | 3,905 | 1,983 | 2,023 | 2,105 | 2,147 | 2,190 | 2,234 | 2,278 | | |
| | | | | | | | | | | | |
| Treasury Rate | 2.00% | 2.00% | 2.00% | 2.00% | 2.00% | 2.00% | 2.00% | 2.00% | 2.00% | 2.00% | |
| Taxable Interest Income (Beginning of Year Cash x Treasury Rate) | 260 | 145 | 78 | 40 | 40 | 41 | 42 | 43 | 44 | 45 | |
| Other Taxable Income (BABA gain, state tax deduction up to interest income) | 810 | | | | | | | | | | |
| Total Taxable Income | 1,070 | 145 | 78 | 40 | 40 | 41 | 42 | 43 | 44 | 45 | |
| Tax Rate | 21% | 21% | 21% | 21% | 21% | 21% | 21% | 21% | 21% | 21% | |
| Tax | 225 | 30 | 16 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 334 |

**Assumptions**

Initial holdback of 7B (including 2B for IRS and 5B for other claims) - distribution of 6B by end of 2020

Other taxable income for 2020 of 810M based on 1.07B Alibaba gain less 260M state tax deductions (pending substantiation)

Resolution and distribution of 3.5B other claims by end of 2021

Resolution and distribution of 2.0B other claims by end of 2022

Continuing holdback of 2.0B beyond 2022

2% Rate of Return on Investments

Altaba Inc.
EIN: ___ 689
Summary of Employment Tax Examination Adjustments (Actual 2013-14 and Projected 2015-17)
and Non-Examination Projected Employment Tax liabilities (201912 - 202912)

| Employment Tax Examination Adjustments | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020-2029 [7] |
|---|---|---|---|---|---|---|---|---|---|
| Additional Wages (Adjustment) | FITW | 306,542 | 663,286 | 630,926 | 587,639 | 351,608 | - | - | - |
| | Social Security | 66,210 | 39,137 | 630,926 | 587,639 | 351,608 | - | - | - |
| | Medicare | 306,542 | 663,286 | 630,926 | 587,639 | 351,608 | - | - | - |
| | Add'l Medicare | 306,542 | 663,286 | - | - | - | - | - | - |
| Employment Tax Exam Adjustment #1: Tax Preparation Services [2] | FITW | 58,542 | 119,391 | 157,732 | 146,910 | 87,902 | | | |
| Tax Increase | Social Security | 8,210 | 4,853 | 78,235 | 72,867 | 43,599 | | | |
| | Medicare | 8,890 | 19,235 | 18,297 | 17,042 | 10,197 | | | |
| | Add'l Medicare | 2,759 | 5,970 | - | - | - | | | |
| | TOTAL TAX | 78,401 | 149,449 | 254,264 | 236,819 | 141,698 | | | |
| Penalty | § 6662(c) Penalty | - | - | 50,853 | 47,364 | 28,340 | | | |
| | § 6656 Penalty | - | - | 4,827 | 4,495 | 2,690 | | | |
| | TOTAL PENALTY | - | - | 55,680 | 51,859 | 31,030 | | | |
| TOTAL TAX AND PENALTY | | 78,401 | 149,449 | 309,944 | 288,678 | 172,728 | - | - | - |

| Employment Tax Examination Adjustments | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020-2029 [7] |
|---|---|---|---|---|---|---|---|---|---|
| Additional Wages (Adjustment) | FITW | - | - | - | - | - | - | - | - |
| | Social Security | 63,248 | 23,417 | 3,415,526 | 2,826,038 | 798,738 | - | - | - |
| | Medicare | 63,248 | 23,417 | 3,415,526 | 2,826,038 | 798,738 | - | - | - |
| | Add'l Medicare | - | - | - | - | - | - | - | - |
| Employment Tax Exam Adjustment #2: Low/No FICA Withholding [3] | FITW | - | - | - | - | - | | | |
| Tax Increase | Social Security | 7,843 | 2,904 | 423,525 | 350,429 | 99,043 | | | |
| | Medicare | 1,834 | 679 | 99,050 | 81,955 | 23,163 | | | |
| | Add'l Medicare | - | - | - | - | - | | | |
| | TOTAL TAX | 9,677 | 3,583 | 522,575 | 432,384 | 122,206 | | | |
| Penalty | § 6662(c) Penalty | - | - | 104,515 | 86,477 | 24,441 | | | |
| | § 6656 Penalty | - | - | 26,129 | 21,619 | 6,110 | | | |
| | TOTAL PENALTY | - | - | 130,644 | 108,096 | 30,551 | | | |
| TOTAL TAX AND PENALTY | | 9,677 | 3,583 | 653,219 | 540,480 | 152,757 | - | - | - |

**Employment Tax Examination Adjustments**

| | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020-2029 [7] |
|---|---|---|---|---|---|---|---|---|---|
| Additional Wages (Adjustment) | FITW | 14,960,446 | 21,059,805 | 34,795,520 | 32,405,790 | 11,308,659 | - | - | - |
| | Social Security | 7,480,223 | 8,845,118 | 34,795,520 | 32,405,790 | 11,308,659 | - | - | - |
| | Medicare | 14,960,446 | 21,059,805 | 34,795,520 | 32,405,790 | 11,308,659 | - | - | - |
| | Add'l Medicare | 2,992,089 | 5,686,147 | - | - | - | - | - | - |
| Employment Tax Adjustment #3: Free Unlimited Meals & Snacks [4] — Tax Increase | FITW | 3,141,694 | 4,633,157 | 8,698,880 | 8,101,448 | 2,827,165 | - | - | - |
| | Social Security | 927,548 | 1,096,795 | 4,314,644 | 4,018,318 | 1,402,274 | - | - | - |
| | Medicare | 433,853 | 610,734 | 1,009,070 | 939,768 | 327,951 | - | - | - |
| | Add'l Medicare | 26,929 | 51,175 | - | - | - | - | - | - |
| | **TOTAL TAX** | **4,530,024** | **6,391,861** | **14,022,594** | **13,059,534** | **4,557,390** | **-** | **-** | **-** |
| Penalty | § 6662(c) Penalty | - | - | 2,804,519 | 2,611,907 | 911,478 | - | - | - |
| | § 6656 Penalty | - | - | 266,186 | 247,904 | 86,511 | - | - | - |
| | **TOTAL PENALTY** | **-** | **-** | **3,070,705** | **2,859,811** | **997,989** | **-** | **-** | **-** |
| **TOTAL TAX AND PENALTY** | | **4,530,024** | **6,391,861** | **17,093,299** | **15,919,345** | **5,555,379** | **-** | **-** | **-** |

**Employment Tax Examination Adjustments**

| | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020-2029 [7] |
|---|---|---|---|---|---|---|---|---|---|
| Additional Wages (Adjustment) | FITW | - | - | - | - | - | - | - | - |
| | Social Security | - | - | - | - | - | - | - | - |
| | Medicare | - | - | - | - | - | - | - | - |
| | Add'l Medicare | - | - | - | - | - | - | - | - |
| Employment Tax Adjustment #4: Gross-Up Payroll Future Years [5] — Tax Increase | FITW | - | - | - | - | - | - | - | - |
| | Social Security | - | - | - | - | - | - | - | - |
| | Medicare | - | - | - | - | - | - | - | - |
| | Add'l Medicare | - | - | - | - | - | - | - | - |
| | **TOTAL TAX** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |

| Employment Tax Examination Adjustments | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020-2029 [7] |
|---|---|---|---|---|---|---|---|---|---|
| | Period 201306 | (1,479) | - | - | - | - | - | - | - |
| | Period 201309 | (2,129) | - | - | - | - | - | - | - |
| | Period 201312 | (330) | - | - | - | - | - | - | - |
| Employment Tax Adjustment #5: 2013-14 | Period 201409 | - | (1,561) | - | - | - | - | - | - |
| | Period 201412 | - | (3,809) | - | - | - | - | - | - |
| Tax Decrease — Period 201412 | | - | (60,633) | - | - | - | - | - | - |
| Claims — Period 201412 | | (4,515) | - | - | - | - | - | - | - |
| | Period 201309 | (341,710) | - | - | - | - | - | - | - |
| | Period 201409 | (44,383) | - | - | - | - | - | - | - |
| | TOTAL TAX | (394,546) | (66,003) | - | - | - | - | - | - |

| Employment Tax Examination Adjustments | | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Annually [7] 2020 - 2029 |
|---|---|---|---|---|---|---|---|---|---|
| Additional Wages (Adjustment) | FITW | 15,266,988 | 21,723,091 | 35,426,446 | 32,993,429 | 11,660,267 | - | - | - |
| | Social Security | 7,609,681 | 8,907,672 | 38,841,972 | 35,819,467 | 12,459,005 | - | - | - |
| | Medicare | 15,330,236 | 21,746,508 | 38,841,972 | 35,819,467 | 12,459,005 | - | - | - |
| | Add'l Medicare | 3,298,631 | 6,349,433 | | | | | | |
| Tax Increase | FITW | 3,200,236 | 4,752,548 | 8,856,612 | 8,248,358 | 2,915,067 | - | - | - |
| | Social Security | 943,601 | 1,104,552 | 4,816,404 | 4,441,614 | 1,544,916 | - | - | - |
| | Medicare | 444,577 | 630,648 | 1,126,417 | 1,038,765 | 361,311 | - | - | - |
| | Add'l Medicare | 29,688 | 57,145 | - | - | - | | | |
| TOTAL OF TAX FROM EXAM ADJUST-MENTS | TOTAL TAX | 4,618,102 | 6,544,893 | 14,799,433 | 13,728,737 | 4,821,294 | - | - | - |
| Penalty | § 6662(c) Penalty | - | - | 2,959,887 | 2,745,748 | 964,259 | - | - | - |
| | § 6656 Penalty | - | - | 297,142 | 274,018 | 95,311 | - | - | - |
| | TOTAL PENALTY | - | - | 3,257,029 | 3,019,766 | 1,059,570 | - | - | - |
| Claims | TOTAL TAX | (394,546) | (66,003) | | | | | | |
| TOTAL TAX AND PENALTY | | $4,223,556 | $6,478,890 | $18,056,462 | $16,748,503 | $5,880,864 | $0 | $0 | $0 |
| Non-Examination Projected Employment Tax Liabilities [6] | | $0 | $0 | $0 | $0 | $0 | $0 | $2,986,927 | $4,433,828 |

Notes and sources:

[1] As of 11/15/2019, the 2013-14 examination is in Appeals. Exam has issued IDRs in the 2015-17 Employment Tax Examination, but the Taxpayer has not yet provided responses. Exam opened 2018 for examination, but 2018 will be closed with no change to the tax liability because the Taxpayer had only 26 employees. 2021 through 2024 are estimated to have the same liability as 2020.

[2] For 2015-2029 see Tab "ET 1." For 2013-14 see Appeals settlement file "Yahoo Tax Compforms" page 6 of 14.  2013-14 penalties conceded by Appeals.

[3] For 2015-2019 see Tab "ET 2." For 2013-14 see Appeals settlement file "Yahoo Tax Compforms" page 7 of 14.  2013-14 penalties conceded by Appeals.

[4] For 2015-2029 see Tab "ET 3." For 2013-14 see Appeals settlement file "Yahoo Tax Compforms" page 5 of 14. 2013-14 penalties conceded by Appeals.

[5] Under IRM 4.23.10.12, "[u]nless income taxes, FICA taxes, or Additional Medicare Tax were actually withheld from the employees' wages, no income tax, FICA tax, or Additional Medicare Tax related to the employment tax examination should be reported on these statements. See General Instructions for Forms W-2 and W-3. As the examination is not correcting any amounts withheld, boxes for Federal income tax withholding, social security tax withheld, and Medicare tax withheld, should be blank for both "Previously Reported" and "Corrected Information" amounts on the Form W-2, and W-2c, and related transmittals." Under POSTN-117073-18 (June 25, 2018), an employer's payment of taxes that should have been withheld in a prior year does not create additional wages to the employee for the prior year. In the year in which the employment tax liability is paid, if the employer does not seek repayment of the employee's tax in 2018 without collecting the amount from the employee is additional wages to the employee when paid in the subsequent year and is subject to employment taxes. TE/GE Counsel has advised Exam that the 2013-15 statute for form 1040 has expired, 2016 form 1040 statute will expire in April 2021, and 2017 will at best be a short statute and most likely also will have expired by the time the examination is resolved. Counsel advised Exam to not pursue the issue. This decision is based on form 1040 statute concerns and not the merits of the issue.

[6] See Appeals settlement file "Yahoo Workplan".

[7] Altaba Inc. will incur employment tax liabilities for wages paid to employees until dissolution. This estimate assumes future employment tax liabilities to be $4,433,828 annually for each year from 2020 to 2029. See Tab ET Non-Exam Liabilities for computation.

**DOM-001**
**2016 Sale of land and other assets**
**From: 2016 F4797**

| Form **4797** | **Sales of Business Property** | OMB No. 1545-0184 |
|---|---|---|
| | (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2)) | **2016** |
| Department of the Treasury Internal Revenue Service (99) | ▶Attach to your tax return. ▶ Information about Form 4797 and its separate instructions is at www.irs.gov/form4797. | Attachment Sequence No. **27** |

| Name(s) shown on return | Identifying number |
|---|---|
| ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES | 8689 |

**1** Enter the gross proceeds from sales or exchanges reported to you for 2016 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions . . . . . . . . . . . . . **1** ___0___

**Part I   Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft-Most Property Held More Than 1 Year** (see instructions)

| 2 | (a) Description of property | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|---|
| | AVAILABLE UPON | VARIOUS | VARIOUS | 259,024,473 | 337,539,125 | 474,793,576 | 121,770,022 |
| | REQUEST | | | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 | 0 | 0 |

| | | | |
|---|---|---|---|
| **3** Gain, if any, from Form 4684, line 39 . . . . . . . . . . . . . . . . . . . . . . . . | **3** | 0 |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . . . . . | **4** | 0 |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . | **5** | 0 |
| **6** Gain, if any, from line 32, from other than casualty or theft . . . . . . . . . . . . . . | **6** | 0 |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows: . . . | **7** | 121,770,022 |

**Partnerships (except electing large partnerships) and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | | |
|---|---|---|---|
| **8** Nonrecaptured net section 1231 losses from prior years. See instructions . . . . . . . . . . | **8** | 60,415,625 |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions . . . . . . . . . . . . . | **9** | 61,354,397 |

**Part II   Ordinary Gains and Losses** (see instructions)

**10** Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AVAILABLE UPON | VARIOUS | VARIOUS | 0 | 0 | 3,156,469 | -3,156,469 |
| REQUEST | | | 0 | 0 | 0 | 0 |
| | | | 0 | 0 | 0 | 0 |
| | | | 0 | 0 | 0 | 0 |

| | | | |
|---|---|---|---|
| **11** Loss, if any, from line 7 . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** ( | 0 ) |
| **12** Gain, if any, from line 7 or amount from line 8, if applicable . . . . . . . . . . . . . . | **12** | 60,415,625 |
| **13** Gain, if any, from line 31 . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | 0 |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a . . . . . . . . . . . . . . . . | **14** | 0 |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 . . . . . . . . . . . | **15** | 0 |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . | **16** | 0 |
| **17** Combine lines 10 through 16 . . . . . . . . . . . . . . . . . . . . . . . . | **17** | 57,259,156 |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below:

**a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 28, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 23. Identify as from "Form 4797, line 18a." See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18a**

**b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 **18b**

For Paperwork Reduction Act Notice, see separate instructions.                           Form **4797** (2016)

**DOM-002**
**NOL deduction**
**From: 2016 F1120**

| Form **1120**<br>Department of the Treasury<br>Internal Revenue Service | **U.S. Corporation Income Tax Return**<br>For calendar year 2016 or tax year beginning _____, _____, ending _____, 20 ___<br>▶Information about Form 1120 and its separate instructions is at www.irs.gov/form1120. | OMB No. 1545-0123<br>**2016** |

**A Check if:**
1a Consolidated return (attach Form 851) [ ]
b Life/nonlife consolidated return [ ]
2 Personal holding co. (attach Sch. PH) [ ]
3 Personal service corp. (see instructions) [ ]
4 Schedule M-3 attached [X]

TYPE OR PRINT
Name, Number, street, and room or suite no. If a P.O. box, see instructions.
City or town, state, or province, country and ZIP or foreign postal code
ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
140 EAST 45TH STREET, 15TH FLOOR
NEW YORK          NY  10017-3144

**B Employer identification number**
_____ 3689
**C Date incorporated**
04  30  1995
**D Total assets (see instructions)**
$  54,482,974,500

E Check if: (1) [ ] Initial return (2) [ ] Final return (3) [X] Name change (4) [X] Address change

| | | | | |
|---|---|---|---:|---:|
| **Income** | 1a | Gross receipts or sales | 1a | 4,094,204,276 |
| | b | Returns and allowances | 1b | 1,651,800 |
| | c | Balance. Subtract line 1b from line 1a | 1c | 4,092,552,476 |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | 2,125,813,083 |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | 1,966,739,393 |
| | 4 | Dividends (Schedule C, line 19) | 4 | 672,617,256 |
| | 5 | Interest | 5 | 64,519,094 |
| | 6 | Gross rents | 6 | 0 |
| | 7 | Gross royalties | 7 | 0 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | 8 | 63,210,557 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 9 | 57,259,156 |
| | 10 | Other income (see instructions - attach statement) STATEMENT 1 | 10 | 68,571,722 |
| | 11 | Total income. Add lines 3 through 10 ▶ | 11 | 2,892,917,178 |
| **Deductions (See instructions for limitations on deductions.)** | 12 | Compensation of officers (see instructions - attach Form 1125-E) ▶ | 12 | 4,427,340 |
| | 13 | Salaries and wages (less employment credits) | 13 | 1,133,399,823 |
| | 14 | Repairs and maintenance | 14 | 71,280,084 |
| | 15 | Bad debts | 15 | 9,261,801 |
| | 16 | Rents | 16 | 32,098,911 |
| | 17 | Taxes and licenses STATEMENT 2 | 17 | 111,647,298 |
| | 18 | Interest | 18 | 59,296,580 |
| | 19 | Charitable contributions | 19 | 8,382,764 |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | 57,487,642 |
| | 21 | Depletion | 21 | 0 |
| | 22 | Advertising | 22 | 129,686,417 |
| | 23 | Pension, profit-sharing, etc., plans | 23 | 18,146,872 |
| | 24 | Employee benefit programs | 24 | 80,194,153 |
| | 25 | Domestic production activities deduction (attach Form 8903) | 25 | 0 |
| | 26 | Other deductions (attach statement) STATEMENT 3 | 26 | 466,272,580 |
| | 27 | Total deductions. Add lines 12 through 26 ▶ | 27 | 2,181,582,265 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 | 711,334,913 |
| | 29a | Net operating loss deduction (see instructions) 29a 165,543,527 | | |
| | b | Special deductions (Schedule C, line 20) 29b 0 | | |
| | c | Add lines 29a and 29b | 29c | 165,543,527 |
| **Tax, Refundable Credits, and Payments** | 30 | Taxable income. Subtract line 29c from line 28 (see instructions) | 30 | 545,791,386 |
| | 31 | Total tax (Schedule J, Part I, line 11) | 31 | 0 |

DOM-003
NOL deduction
From: 2017 F1120

**Form 1120**
Department of the Treasury
Internal Revenue Service

## U.S. Corporation Income Tax Return

For calendar year 2017 or tax year beginning _____, _____, ending _____, 20 _____
▶ Go to www.irs.gov/Form1120 for instructions and the latest information.

OMB No. 1545-0123

**2017**

| A Check if: | | | |
|---|---|---|---|
| 1a Consolidated return (attach Form 851) | X | TYPE | Name, Number, street, and room or suite no. If a P.O. box, see instructions. City or town, state, or province, country and ZIP or foreign postal code |
| b Life/nonlife consolidated return | | OR | ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES |
| 2 Personal holding co. (attach Sch. PH) | | PRINT | 140 EAST 45TH STREET, 15TH FLOOR |
| 3 Personal service corp. (see instructions) | | | |
| 4 Schedule M-3 attached | X | | NEW YORK          NY  10017-3144 |

B Employer identification number
8689

C Date incorporated
04  30  1995

D Total assets (see instructions)
$  81,203,086,332

E Check if: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change

| | | | | Amount |
|---|---|---|---|---:|
| **Income** | 1a | Gross receipts or sales | 1a  1,873,444,766 | |
| | b | Returns and allowances | 1b  388,234 | |
| | c | Balance. Subtract line 1b from line 1a | 1c | 1,873,056,532 |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | 1,051,943,400 |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | 821,113,132 |
| | 4 | Dividends (Schedule C, line 19) | 4 | 691,907,950 |
| | 5 | Interest | 5 | 99,336,028 |
| | 6 | Gross rents | 6 | 0 |
| | 7 | Gross royalties | 7 | 0 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | 8 | 0 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | 9 | 768,115,250 |
| | 10 | Other income (see instructions - attach statement)   STATEMENT 1 | 10 | 58,432,741 |
| | 11 | **Total income.** Add lines 3 through 10 ▶ | 11 | 2,436,905,101 |
| **Deductions (See instructions for limitations on deductions.)** | 12 | Compensation of officers (see instructions - attach Form 1125-E) | 12 | 5,796,482 |
| | 13 | Salaries and wages (less employment credits) | 13 | 911,808,065 |
| | 14 | Repairs and maintenance | 14 | 4,707,587 |
| | 15 | Bad debts | 15 | 18,921,327 |
| | 16 | Rents | 16 | 15,300,094 |
| | 17 | Taxes and licenses   STATEMENT 2 | 17 | 205,278,950 |
| | 18 | Interest | 18 | 80,463,082 |
| | 19 | Charitable contributions | 19 | 542,301 |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | 15,682,758 |
| | 21 | Depletion | 21 | 0 |
| | 22 | Advertising | 22 | 69,978,253 |
| | 23 | Pension, profit-sharing, etc., plans | 23 | 3,436,844 |
| | 24 | Employee benefit programs | 24 | 13,343,463 |
| | 25 | Domestic production activities deduction (attach Form 8903) | 25 | 1,156,763 |
| | 26 | Other deductions (attach statement)   STATEMENT 3 | 26 | 1,042,170,280 |
| | 27 | **Total deductions.** Add lines 12 through 26 ▶ | 27 | 2,388,586,249 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 | 50,318,852 |
| | 29a | Net operating loss deduction (see instructions) | 29a  38,622,693 | |
| | b | Special deductions (Schedule C, line 20) | 29b  0 | |
| | c | Add lines 29a and 29b | 29c | 38,622,693 |
| **Tax, Refundable Credits, and Payments** | 30 | **Taxable income.** Subtract line 29c from line 28. See instructions | 30 | 11,696,159 |
| | 31 | Total tax (Schedule J, Part I, line 11) | 31 | 0 |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) | 32 | 20,000,000 |
| | 33 | Estimated tax penalty. See instructions. Check if Form 2220 is attached ▶ ☐ | 33 | 0 |
| | 34 | **Amount owed.** If line 32 is smaller than the total of lines 31 and 33, enter amount owed | 34 | 0 |
| | 35 | **Overpayment.** If line 32 is larger than the total of lines 31 and 33, enter amount overpaid | 35 | 20,000,000 |
| | 36 | Enter amount from line 35 you want: **Credited to 2018 estimated tax** ▶  20,000,000  **Refunded** ▶ | 36 | 0 |

DOM-004
**Tax Basis of operating business sale**
From: File" 2017 Tax Return Transaction Gain" provided by taxpayer

| Asset Description | Proceeds | Tax Basis | Gain/(Loss) | Capital Gain/(Loss) | Ordinary Gain/(Loss) |
|---|---|---|---|---|---|
| Flurry | 92,429,815 | 184,656,991 | (92,227,176) | (92,227,176) | |
| Tumblr | 44,000,000 | 726,220,237 | (682,220,237) | (682,220,237) | |
| BrightRoll | 390,400,000 | 703,538,260 | (313,138,260) | (313,138,260) | |
| | | | | | |
| Cash | 34,624,824 | 34,624,824 | - | | - |
| Accounts Receivable | 682,002,289 | 696,271,479 | (14,269,189) | | (14,269,189) |
| Investment in iV Fund | 17,060,000 | 18,810,566 | (1,750,566) | (1,750,566) | |
| Bldgs and other depreciable assets, net | 1,540,096,622 | 848,587,988 | 691,508,634 | 264,048,364 | 427,460,270 |
| Land | 208,030,000 | 89,960,042 | 118,069,958 | 118,069,958 | |
| Intangibles / Goodwill | 1,253,348,238 | 87,136,374 | 1,166,211,864 | 824,137,116 | 342,074,749 |
| | | | | | |
| Intercompany Receivable | 19,280,000 | 19,280,000 | - | | - |
| Prepaid Expenses And Other Current Assets | 66,469,000 | 66,469,000 | - | | - |
| Bond Investment | 17,461,816 | 17,461,816 | - | | - |
| Other Long-Term Assets And Investments | 19,696,000 | 19,696,000 | - | | - |
| | | | | | |
| **Total SalesCo1** | 4,384,898,605 | 3,512,713,576 | 872,185,029 | 116,919,199 | 755,265,829 |
| **Total SalesCo2** | 1,820,515,000 | 1,591,248,211 | 197,755,433 | (362,224,756) | 559,980,189 |
| **Total** | 6,205,413,605 | 5,103,961,788 | 1,069,940,461 | (245,305,557) | 1,315,246,018 |
| Checks | | - | - | | |

**Tax Basis allowed for SaleCo1 for estimate purposes:**

| | Tax Basis |
|---|---|
| Flurry | 184,656,991 |
| Tumblr | 726,220,237 |
| BrightRoll | 703,538,260 |
| Accounts Receivable | 696,271,479 |
| Bldgs, other depreciable asset and land | 938,548,030 |
| Other assets | 263,478,581 |
| | |
| Adjustment agreed by taxpayer based on IDR DOM-18 respsonse | (10,264,086) |
| Depreciable assets adjustment | (337,394) |
| Total tax basis allowed for SaleCo1 | 3,502,112,098   Immaterial remaining questions therefore will allow basis except for $10.6M for 5/15 updated 280 claim purposes. |
| Total SaleCo1 tax basis | 3,512,713,576 |
| Basis adjustments | 10,601,478   Final amounts to be determined through examination process. |

**Tax Basis allowed for SaleCo2 for estimate purposes:**

| Asset Description | Equity Value | Transaction Costs | Adjusted Purchase Price | Tax Basis | Gain/(Loss) | Capital Gain/(Loss) | Ordinary Gain/(Loss) | |
|---|---|---|---|---|---|---|---|---|
| Yahoo Netherlands CV | 1,760,529,000 | (30,473,604) | 1,730,055,396 | 1,485,849,090 | 244,206,306 | (315,536,450) | 559,742,756 | (0) |
| Overture Asia-Pac Services K.K. | 6,000,000 | (103,799) | 5,896,201 | 9,784,548 | (3,888,348) | (3,888,348) | - | - |
| Yahoo! Software Development India Private Limited | 27,600,000 | (477,477) | 27,122,523 | 34,526,469 | (7,403,946) | (7,403,946) | - | - |
| Clarityray Solutions Ltd. | 1,376,000 | (23,805) | 1,352,195 | 10,147,445 | (8,795,250) | (8,795,250) | - | - |
| Yahoo! Argentina de SRL | | | | 3,007,073 | (3,007,073) | (3,007,073) | - | - |
| Yahoo! de Brasil Internet Ltda. | 9,500,000 | (164,349) | 9,335,651 | 31,203,311 | (21,867,660) | (21,867,660) | - | - |
| Yahoo! de Mexico, SA de CV | 3,762,000 | (65,082) | 3,696,918 | 6,101,818 | (2,404,901) | (2,404,901) | - | - |
| Yahoo de Colombia S.A.S | 58,000 | (1,003) | 56,997 | 28,075 | 28,922 | - | 28,922 | - |
| KR3 Services Korea Yuhan Hosea | 4,400,000 | (76,120) | 4,323,880 | 3,645,009 | 678,871 | 678,871 | - | - |
| Yahoo! Hispanic Americas LLC | 7,290,000 | (126,116) | 7,163,884 | 6,955,373 | 208,511 | - | 208,511 | - |
| | | | | | | | | |
| **Total SalesCo2** | 1,820,515,000 | (31,511,356) | 1,789,003,644 | 1,591,248,211 | 197,755,433 | (362,224,756) | 559,980,189 | |
| check | 0 | 0 | 0 | 0 | 0 | | -0.102815151 | |

| | | |
|---|---|---|
| Total tax basis allowed for SaleCo2 | 1,591,248,211 | Immaterial remaining questions therefore will allow basis for 5/15 updated 280 claim purposes. |
| Total SaleCo2 tax basis | 1,591,248,211 | |
| Basis adjustments | - | Final amounts to be determined through examination process. |

**Total tax basis adjustments for SaleCo1 and SaleCo2 for estimate purposes:**

| | |
|---|---|
| SaleCo1 | 10,601,478 |
| SaleCo2 | - |
| Total basis adjustments | 10,601,478 |

**DOM-005**
**Assumption of liability adjustment explanation**

<u>Deferred Revenue Draft Calculation</u>

| | | |
|---|---|---|
| Book Value | 125,290,243 | US payments (IDR Response FP-005) |
| Fair Value | <u>93,195,297</u> | Cost of fulfillment/Assumed Liability (SalesCo1 Gain Calc wp) |
| | 32,094,946 | US payments remaining (to be recognized) |
| | <u>(31,859,955)</u> | US payments already recognized (2016 D6 Deferred Revenue) |
| | 234,991 | Remaining to be recognized |
| Not | <u>(8,800,476)</u> | Decrease to Taxable Income on Tax Return (2017 D6 Def Rev) |
| Difference | <u>9,035,467</u> | Adjustment Increase to Taxable Income |

Deferred revenue consists of advance payments which are an obligation of the seller to provide goods or services.  The courts have held that in theory, a seller who is relieved of a liability through a purchaser's assumption of such liability receives less consideration, so the reduced amount of consideration is economically equivalent to the seller receiving full consideration for the assets and then paying off the liability.  The courts have also held that a seller who is required to recognize additional income at the time that contingent liabilities become fixed is generally entitled to an offsetting deduction.There are provisions in the Code and regulations, as well as administrative guidance, which permit a deferral of income recognition.  For example, IRC § 455 permits a deferral of prepaid subscription income and Treas. Reg. § 1.451-5 allows a deferral of recognition of advance payments for goods and long-term contracts.  In addition, Rev. Proc. 2004-34 allows for an elective deferral of advance payments for goods and services.  The foregoing Code and regulation provisions and Rev. Proc. 2004-34 generally provide that if a taxpayer who defers recognition of income under such provisions or Rev. Proc. 2004-34 is relieved of the deferred revenue liability, any portion of the related advance payments or prepaid income not previously included in gross income must be included in gross income in the tax year such relief occurs. Therefore, a seller in a transaction in which a deferred revenue liability is assumed by the buyer generally: a.Includes the previously unrecognized deferred revenue in gross income in the year of the sale; b.Includes the relief from this liability in the amount realized; and, c.Claims an offsetting deduction for the payment it is deemed to make to the buyer in exchange for the buyer's assumption of the deferred revenue liability.

Taxpayer did include the relief of the liability in the amount realized and it is accounted for in the gain calculation. Taxpayer did claim the offsetting deduction for the payment, per IDR responses. Therefore, the issue is with the inclusion of unrecognized deferred revenue in gross income; hence the adjustment. The portion of the related advance payments not previously included in gross income must be included in gross income

**DOM-006**
**Cost basis**
**From: 2018 F1120**

STATEMENT 17 - FORM 8949, PT II, LN 1, BOX F
Form 8949, Pt II, L-T Capital Gains & losses - Box F, Non K-1s

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
2018

| Description of Property | Or EXPIRED/WORTHLESS | Cost or Other Basis | Or EXPIRED | Adjustment Code | Adjustment Amt |
|---|---|---|---|---|---|
| ALTABA ███ 8689 | | | | | |
| HORTONWORKS | | 26,351,534 | | | 0 |
| GOMAJI | | 7,500,000 | | | 0 |
| PAPERLESS | | 13,999,991 | | | 0 |
| BABA | | 1,137,345,659 | | | 0 |
| YAHOO! JAPAN | | 3,371,239,564 | | | 0 |
| Total | | 4,556,436,748 | | | 0 |
| | | | | | |
| Consolidated Total | | 4,556,436,748 | | | 0 |

**Excalibur asset sale**
**From: 2018 N-CSR, page 30**

| | | Excalibur IP, LLC |
|---|---|---|
| Balance of patents held and applications pending at January 1, 2018 | | 3,587 |
| Change in patents held | | (167) |
| Balance of patents held and applications pending at December 31, 2018 | | 3,420 |
| Fair value as of December 31, 2018(2) | $ | 250,000 |
| Change in unrealized appreciation (depreciation)(2) | $ | (415,000) |
| Distributions(2) | $ | - |
| Net realized gain (loss)(2) | $ | 4,175 |

**Blockage discount**
**From: SEC filing PRE-14A April 2, 2019, page 47**

*Potential Tax Claims*

U.S. Federal, State, and Local Income Tax Matters

Even if the Plan of Liquidation and Dissolution is approved and the Fund files a Certificate of Dissolution, the Fund will continue to be subject to U.S. federal income tax on its taxable income and taxable gains until the liquidation is complete (*i.e.*, until all of its remaining assets have been distributed to the stockholders or transferred to a liquidating trust or trusts). Accordingly, the sale or other disposition of the Fund's remaining non-cash assets, including the remaining Alibaba Shares, will generally be taxable to the Fund for U.S. federal income tax purposes. In addition, the Fund's prior dispositions of Alibaba Shares and Yahoo Japan Shares were generally taxable to the Fund for U.S. federal income tax purposes, resulting in significant tax liabilities to the Fund.

With respect to the 2018 Exchange Offer, the Fund recognized taxable gain equal to the excess of (i) the fair market value of the Alibaba Shares exchanged in the 2018 Exchange Offer on the date of the exchange over (ii) the Fund's tax basis in such Alibaba Shares. For these purposes, the valuation of the Alibaba Shares exchanged in the 2018 Exchange Offer is uncertain. In general, the trading price of publicly traded stock is normally presumed to be its fair market value for tax purposes. However, courts and the IRS have recognized that it may be appropriate to apply a "blockage discount" in valuing a large block of stock that cannot be sold in a reasonable time without depressing the market. Due to the large number of Alibaba Shares exchanged in the 2018 Exchange Offer, the 2018 Exchange Offer could support a position that such Alibaba Shares should be valued after the application of a blockage discount that takes into account the size and illiquidity of the block. There is no assurance that the IRS or a court would agree with this position.

**2018 Miscellaneous Sales**

| | Return | 3/20 Claim | 5/15 Claim | |
|---|---|---|---|---|
| HortonWorks Proceeds | 144,108,288 | 144,108,288 | 144,108,288 | |
| HortonWorks Basis | (26,351,534) | - | (26,351,534) | 5/15: Adjusted to reflect substantiation |
| Gomaji Proceeds | 1,698,044 | 1,698,044 | 1,698,044 | |
| Gomaji Basis | (7,500,000) | - | (4,937,850) | 5/15: Adjusted to reflect substantiation |
| Paperless Proceeds | 5,422,150 | 5,422,150 | 5,422,150 | |
| Paperless Basis | (13,999,991) | - | (13,999,991) | 5/15: Adjusted to reflect substantiation |
| **GAIN** | **103,376,957** | **151,228,482** | **105,939,107** | |

**2018 Yahoo Japan Sales**

| | Return | 3/20 Claim | 5/15 Claim |
|---|---|---|---|
| Gross Proceeds | 6,453,451,801 | 6,453,451,801 | 6,453,451,801 |
| GILTI Reported on Return | (98,213,599) | - | - |
| **TOTAL PROCEEDS** | **6,355,238,202** | **6,453,451,801** | **6,453,451,801** |
| Original Basis (Broadcast 332 Liquidation) | 41,135,159 | - | - |

| | | | | |
|---|---|---|---|---|
| Y!J Section 305 Dividend | 501,781,881 | - | 498,024,618 | 5/15: Adjusted to reflect substantiation |
| OSSH Distribution of Y!J to Yahoo Inc. | 20,000,000 | - | 19,920,172 | 5/15: Adjusted to reflect substantiation |
| Section 965 Deemed Distribution | 2,976,312,021 | 2,850,808,632 | 2,471,578,385 | 5/15: Adjusted to reflect 965 inclusion |
| 2018 Y!J Dividend Distribution | (167,989,497) | (167,989,497) | (167,989,497) | |
| **TOTAL BASIS** | **3,371,239,564** | **2,682,819,135** | **2,821,533,678** | |
| | | | | |
| **GAIN** | **2,983,998,638** | **3,770,632,666** | **3,631,918,123** | |

**2018 Alibaba Sales**

| | Return | 3/20 Claim | 5/15 Claim | |
|---|---|---|---|---|
| Gross Proceeds | 17,822,042,356 | 17,822,042,356 | 17,822,042,356 | |
| Blockage Discount | (484,629,600) | - | - | 5/15: New Specified Adjustment |
| GILTI Reported on Return | N/A | N/A | N/A | |
| **TOTAL PROCEEDS** | **17,337,412,756** | **17,822,042,356** | **17,822,042,356** | |
| Original Basis (Prior Year Carryover) | 107,411,150 | - | 107,411,150 | 5/15: Adjusted to reflect substantiation |
| Section 965 Deemed Distribution | 1,029,934,509 | 988,120,878 | 988,120,878 | |
| **TOTAL BASIS** | **1,137,345,659** | **988,120,878** | **1,095,532,028** | |
| | | | | |
| **2018 ALIBABA GAIN** | **16,200,067,097** | **16,833,921,478** | **16,726,510,328** | |

**2019 Alibaba Sales**

| | FP-11 and Return | 3/20 Claim | 5/15 Claim | |
|---|---|---|---|---|
| Gross Proceeds | 46,016,474,485 | 46,016,474,485 | 46,016,474,485 | |
| Fees | (13,813,912) | - | - | |
| **TOTAL PROCEEDS** | **46,002,660,573** | **46,016,474,485** | **46,002,660,573** | |
| 2018 Original Acquisition Carryover Basis | 104,423,748 | | 104,423,748 | 5/15: Adjusted to reflect substantiation |
| 2018 965 Inclusion Carryover Basis | 2,859,318,219 | 2,743,234,646 | 2,743,234,646 | |
| GILTI Basis Step-Up | 1,357,694,148 | - | - | |
| 2018 Book Costs Capitalized to Basis | 9,374,926 | - | - | |
| 2019 Book Costs Capitalized to Basis | 9,803,345 | - | - | |
| Other to Reconcile with Return | (88,418,153) | - | (88,418,153) | 5/15: Adjustment to reflect return |
| **TOTAL BASIS** | **4,252,196,233** | **2,743,234,646** | **2,759,240,241** | |
| | | | | |
| **2019 ALIBABA GAIN** | **41,750,464,340** | **43,273,239,839** | **43,243,420,332** | |

**2020 Alibaba Sales**

| | FP-11 | 3/20 Claim | 5/15 Claim | |
|---|---|---|---|---|
| Gross Proceeds | 1,128,622,531 | 1,128,622,531 | 1,128,622,531 | |
| Fees | (23,363) | - | - | |
| **TOTAL PROCEEDS** | **1,128,599,168** | **1,128,622,531** | **1,128,622,531** | |
| 2018 Original Acquisition Carryover Basis | 8,120,608 | | 8,120,608 | 5/15: Adjusted to reflect substantiation |
| 2018 965 Inclusion Carryover Basis | 51,368,305 | 51,368,305 | 49,282,837 | 5/15: Adjusted to reflect substantiation |
| 2019 GILTI Basis Step-Up | 24,391,285 | - | - | |
| **TOTAL BASIS** | **83,880,198** | **51,368,305** | **57,403,445** | |
| | | | | |
| **2020 ALIBABA GAIN** | **1,044,718,970** | **1,077,254,226** | **1,071,219,086** | |

**Alibaba Multi-Year Allocated Basis Items**

| | Taxpayer | 3/20 Claim | 5/15 Claim | |
|---|---|---|---|---|
| Alibaba Original Tax Basis | 219,955,506 | - | 219,955,506 | 5/15: Adjusted to reflect substantiation |
| Applied to 2018 Sales | (107,411,150) | - | (107,411,150) | Formula Allocation |
| Applied to 2019 Sales | (104,423,748) | - | (104,423,748) | Formula Allocation |
| **Remaining Carryover to 2020** | **8,120,608** | - | **8,120,608** | Formula Allocation |

| | Taxpayer | 3/20 Claim | 5/15 Claim | |
|---|---|---|---|---|
| Alibaba Section 965 Deemed Distribution | 3,940,621,033 | 3,780,638,361 | 3,780,638,361 | 5/15: No change from 3/20 amount |
| Applied to 2018 Sales | (1,029,934,509) | (988,120,878) | (988,120,878) | Formula Allocation |
| Applied to 2019 Sales | (2,859,318,219) | (2,743,234,646) | (2,743,234,646) | Formula Allocation |
| **Remaining Carryover to 2020** | **51,368,305** | **49,282,837** | **49,282,837** | Formula Allocation |

| | Taxpayer | 3/20 Claim | 5/15 Claim |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Alibaba 2019 GILTI Inclusion | 1,382,085,433 | - | - | 5/15: No change from 3/20 amount |
| Applied to 2019 Sales | (1,357,694,148) | - | - | Formula Allocation |
| **Remaining Carryover to 2020** | **24,391,285** | - | - | Formula Allocation |

**DOM-007**
**Schedule D**
**From: 2018 F1120**

| SCHEDULE D (Form 1120) | Capital Gains and Losses | OMB No. 1545-0123 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 1120, 1120-C, 1120-F, 1120-FSC, 1120-H, 1120-IC-DISC, 1120-L, 1120-ND, 1120-PC, 1120-POL, 1120-REIT, 1120-RIC, 1120-SF, or certain Forms 990-T. ▶ Go to www.irs.gov/Form1120 for instructions and the latest information. | **2018** |

Name: ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES

Employer identification number: ████8689

**Part I   Short-Term Capital Gains and Losses** (See instructions.)

| See instructions for how to figure the amounts to enter on the lines below. This form may be easier to complete if you round off cents to whole dollars. | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part I, line 2, column (g) | (h) Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **1a** Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b . . . . . . . . . | 0 | 0 | | 0 |
| **1b** Totals for all transactions reported on Form(s) 8949 with **Box A** checked . . . . . . . . . . . . . | 0 | 0 | 0 | 0 |
| **2** Totals for all transactions reported on Form(s) 8949 with **Box B** checked . . . . . . . . . . . . . | 0 | 0 | 0 | 0 |
| **3** Totals for all transactions reported on Form(s) 8949 with **Box C** checked . . . . . . . . . . . . . | 0 | 0 | 0 | 0 |

| | | |
|---|---|---|
| **4** Short-term capital gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . . . . . . . . . | **4** | 0 |
| **5** Short-term capital gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . | **5** | 0 |
| **6** Unused capital loss carryover (attach computation) . . . . . . . . . . . . . . . . . . . . . . | **6** | ( 408,410,171 ) |
| **7** Net short-term capital gain or (loss). Combine lines 1a through 6 in column h . . . . . . . . . . . . . | **7** | -408,410,171 |

| | | |
|---|---|---|
| Capital loss carryback per return | (408,410,171) | |
| Capital loss Yahoo de Brasil to be confirmed | - | DOM-004 |
| Capital loss carryack allowed for estimate purposes | (408,410,171) | |

**DOM-008**
**Sch. M-3, Part II, line 25**
**From: 2018 F1120**

                                    2018 CONS. FEDERAL 1120 TAX RETURN
ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
[____]8689
Year: 2018

| | COLUMN A INCOME(LOSS) PER INCOME STATEMENT | COLUMN B TEMPORARY DIFFERENCE | COLUMN C PERMANENT DIFFERENCE | COLUMN INCOME(LO PER TA RETURN |
|---|---|---|---|---|
| | **STMT 14   -   SCH M-3, PART II, LINE 25** | | | |
| LINE 25: OTHER INCOME (LOSS) ITEMS WITH | | | | |
|   DIFFERENCES | | | | |
| MTM UNREALIZED GAIN/LOSS | (33,432,075,846 | 33,432,075,846 | | |
| MISCELLANEOUS OTHER INCOME | 44,628,340 | | (15,515,550) | 29,11 |
| EXCHANGE GAIN | 77,032,944 | (77,032,944) | | |
|     TOTAL | (33,310,414,562 | 33,355,042,902 | (15,515,550) | 29,11 |

**DOM-009**

**Form 1120 page 1, Schedule J and Form 3800, Part III**

**From: 2018 F1120**

| | | | |
|---|---|---|---|
| 12 | Compensation of officers (see instructions--attach Form 1125-E) | 12 | 4,169,320 |
| 13 | Salaries and wages (less employment credits) | 13 | 10,974,167 |
| 14 | Repairs and maintenance | 14 | 0 |
| 15 | Bad debts | 15 | 0 |
| 16 | Rents | 16 | 881,211 |
| 17 | Taxes and licenses ... STATEMENT 2 | 17 | 99,350,723 |
| 18 | Interest (see instructions) | 18 | 168,838,257 |
| 19 | Charitable contributions | 19 | 0 |
| 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | 0 |
| 21 | Depletion | 21 | 0 |
| 22 | Advertising | 22 | 0 |
| 23 | Pension, profit-sharing, etc., plans | 23 | 0 |
| 24 | Employee benefit programs | 24 | 0 |
| 25 | Reserved for future use | 25 | |
| 26 | Other deductions (attach statement) ... STATEMENT 3 | 26 | 119,419,090 |
| 27 | **Total deductions.** Add lines 12 through 26 | 27 | 403,632,774 |
| 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | 28 | 27,808,493,076 |
| 29a | Net operating loss deduction (see instructions) | 29a | 23,236,359 |
| b | Special deductions (Schedule C, line 24, column (c)) | 29b | 1,884,377,413 |
| c | Add lines 29a and 29b | 29c | 1,907,613,772 |

**Form 1120 (2018)**                                                                                     Page 3

## Schedule J   Tax Computation and Payment (see instructions)

**Part I - Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)). See Inst. ▶ ☐ | | |
| 2 | Income tax. See instructions | 2 | 5,439,184,654 |
| 3 | Base erosion minimum tax (attach Form 8991) | 3 | 0 |
| 4 | Add lines 2 and 3 | 4 | 5,439,184,654 |
| 5a | Foreign tax credit (attach Form 1118) | 5a | 1,425,502,512 |
| b | Credit from Form 8834 (see instructions) | 5b | 0 |
| c | General business credit (attach Form 3800) | 5c | 27,614,305 |
| d | Credit for prior year minimum tax (attach Form 8827) | 5d | 0 |
| e | Bond credits from Form 8912 | 5e | 0 |
| 6 | **Total credits.** Add lines 5a through 5e | 6 | 1,453,116,817 |
| 7 | Subtract line 6 from line 4 | 7 | 3,986,067,837 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) | 8 | 0 |

**Form 3800 (2018)**                                                                                     Page 3

Name(s) shown on return: ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES        Identifying number: ███3689

## Part III   General Business Credits or Eligible Small Business Credits (see instructions)

Complete a separate Part III for each box checked below. (see instructions)

| | | | | |
|---|---|---|---|---|
| A | ☐ General Business Credit From a Non-Passive Activity | E | ☐ | Reserved |
| B | ☐ General Business Credit From a Passive Activity | F | ☐ | Reserved |
| C | ☒ General Business Credit Carryforwards | G | ☐ | Eligible Small Business Credit Carryforwards |
| D | ☐ General Business Credit Carrybacks | H | ☐ | Reserved |

I  If you are filing more than one Part III with box A or B checked, complete and attach first an additional Part III combining amounts from all
Parts III with box A or B checked. Check here if this is the consolidated Part III ........................ ▶ ☐

| (a)  Description of credit<br><br>Note. On any line where the credit is from more than one source, a separate Part III is needed for each pass-through entity. | (b)<br>If claiming the credit from a pass-through entity, enter the EIN | (c)<br>Enter the appropriate amount |
|---|---|---|
| 1a Investment (Form 3468, Part II only) (attach Form 3468) ... 1a | | 0 |
| b Reserved ... 1b | | |
| c Increasing research activities (Form 6765) ... 1c | | 27,614,305 |
| d Low-income housing (Form 8586, Part I only) ... 1d | | 0 |
| e Disabled access (Form 8826) (see instructions for limitation) ... 1e | | 0 |
| f Renewable electricity, refined coal, and Indian coal production (Form 8835) ... 1f | | 0 |
| g Indian employment (Form 8845) ... 1g | | 0 |
| h Orphan drug (Form 8820) ... 1h | | 0 |
| i New markets (Form 8874) ... 1i | | 0 |
| j Small employer pension plan startup costs (Form 8881) (see instructions for limitation) ... 1j | | 0 |

**DOM-010**

**Consolidated statement of operations**

**From: SEC filing Form N-CSR as of June 30, 2019, page 14**

ALTABA INC.
CONSOLIDATED STATEMENT OF OPERATIONS
For the Period from January 1, 2019 through June 30, 2019 (unaudited)
($ in thousands)

| | |
|---|---:|
| **INVESTMENT INCOME** | |
| Dividend income | $ 10,859 |
| Interest income | 69,623 |
| Other income | 20,218 |
| **Total investment income** | 100,700 |
| **EXPENSES** | |
| Interest expense | 39,126 |
| Professional fees | 18,223 |
| Directors, officers and employees compensation and benefits | 17,319 |
| Loss on extinguishment of debt | 10,230 |
| General and administrative costs | 1,198 |
| Outside administrative fees | 766 |
| Other expenses | 5,255 |
| Legal and other settlements | 2,000 |
| **Total expenses** | 94,117 |
| Net investment income, before current and deferred taxes | 6,583 |
| Current and deferred income tax benefit | 565,742 |
| Net investment income | 572,325 |
| **REALIZED AND UNREALIZED GAIN (LOSS)** | |
| Net realized gain (loss) on: | |
| Unaffiliated investments, before current and deferred taxes | (3) |
| Unaffiliated written warrants, before current and deferred taxes | (10,084) |
| Affiliated investments, before current and deferred taxes | 20,620,159 |
| Controlled affiliate, before current and deferred taxes | 17,256 |
| Current and deferred income tax expense | (4,374,917) |
| Net realized gain (loss) | 16,252,411 |
| Net change in unrealized appreciation (depreciation): | |
| Unaffiliated investments and foreign currency translation, before current and deferred taxes | 3,709 |
| Unaffiliated written warrants, before current and deferred taxes | (67,536) |
| Affiliated investments and foreign currency translation, before current and deferred taxes | (12,684,486) |
| Controlled affiliate, before current and deferred taxes | (17,250) |
| Current and deferred income tax benefit | 2,692,928 |
| Net change in unrealized appreciation (depreciation) | $ (10,072,635) |
| Net realized and unrealized gain on investments | 6,179,776 |
| Net increase in net assets resulting from operations | $ 6,752,101 |

See Notes to Consolidated Financial Statements.

14

| Form **1120** | | **U.S. Corporation Income Tax Return** | | OMB No. 1545-0123 |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2019 or tax year beginning _____, _____, ending _____, 20___ ▶ Go to www.irs.gov/Form1120 for instructions and the latest information. | | **2019** |

**A** Check if:
- 1a Consolidated return (attach Form 851) . . . [X]
- b Life/nonlife consolidated return . . . .
- 2 Personal holding co. (attach Sch. PH) . . .
- 3 Personal service corp. (see instructions) . . .
- 4 Schedule M-3 attach ed [X]

TYPE OR PRINT

Name, Number, street, and room or suite no. If a P.O. box, see instructions. City or town, state or province, country, and ZIP or foreign postal code

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
140 EAST 45TH STREET, 15TH FLOOR
NEW YORK          NY   10017-3144

**B** Employer identification number
689

**C** Date incorporated  04  30  1995

**D** Total assets (see instructions)
$   13,243,967,393

E Check if:  (1) [ ] Initial return  (2) [ ] Final return  (3) [ ] Name change  (4) [ ] Address change

| | | | | |
|---|---|---|---|---|
| **I n c o m e** | 1a | Gross receipts or sales . . . . . . . . . . . . . . . . . . . . . . . . . | 1a | 0 | |
| | b | Returns and allowances . . . . . . . . . . . . . . . . . . . . . . . . | 1b | 0 | |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . | 1c | 0 |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . | 2 | 0 |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . | 3 | 0 |
| | 4 | Dividends and inclusions (Schedule C, line 23) . . . . . . . . . . . . . . . . . | 4 | 1,567,736,817 |
| | 5 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | 382,422,450 |
| | 6 | Gross rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | 0 |
| | 7 | Gross royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | 0 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) . . . . . . . . . . . . . | 8 | 41,750,464,340 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . | 9 | 0 |
| | 10 | Other income (see instructions - attach statement) . . . . . . . . STATEMENT 1 | 10 | 62,122,909 |
| | 11 | **Total income.** Add lines 3 through 10 . . . . . . . . . . . . . . . . . ▶ | 11 | 43,762,746,516 |
| **Deductions (See instructions for limitations on deductions.)** | 12 | Compensation of officers (see instructions - attach Form 1125-E) . . . . . . . . ▶ | 12 | 5,000,000 |
| | 13 | Salaries and wages (less employment credits) . . . . . . . . . . . . . . . . . | 13 | 6,269,427 |
| | 14 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . | 14 | 0 |
| | 15 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 | 10,229,995 |
| | 16 | Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 | 860,243 |
| | 17 | Taxes and licenses . . . . . . . . . . . . . . . . . . . STATEMENT 2 | 17 | 398,051,535 |
| | 18 | Interest (see instructions) . . . . . . . . . . . . . . . . . . . . . . | 18 | 66,804,399 |
| | 19 | Charitable contributions . . . . . . . . . . . . . . . . . . . . . . . | 19 | 0 |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | 0 |
| | 21 | Depletion . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 | 0 |
| | 22 | Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 | 0 |
| | 23 | Pension, profit-sharing, etc., plans . . . . . . . . . . . . . . . . . . . | 23 | 0 |
| | 24 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . | 24 | 0 |
| | 25 | Reserved for future use . . . . . . . . . . . . . . . . . . . . . . . | 25 | |
| | 26 | Other deductions (attach statement) . . . . . . . . . . . . . STATEMENT 3 | 26 | 48,956,164 |
| | 27 | **Total deductions.** Add lines 12 through 26 . . . . . . . . . . . . . . . ▶ | 27 | 536,171,763 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 . | 28 | 43,226,574,753 |
| | 29a | Net operating loss deduction (see instructions) . . . . . . . . | 29a | 22,816,351 | |
| | b | Special deductions (Schedule C, line 24) . . . . . . . . . . | 29b | 783,868,409 | |
| | c | Add lines 29a and 29b . . . . . . . . . . . . . . . . . . . . . . . | 29c | 806,684,760 |
| **Tax, Refundable Credits, and Payments** | 30 | **Taxable income.** Subtract line 29c from line 28. See instructions . . . . . . . . . . | 30 | 42,419,889,993 |
| | 31 | Total tax (Schedule J, Part I, line 11) . . . . . . . . . . . . . . . . . . . | 31 | 8,745,639,554 |
| | 32 | 2019 net 965 tax liability paid (Schedule J, Part II, line 12) . . . . . . . . . . . . | 32 | 0 |
| | 33 | Total payments, credits, and section 965 net tax liability (Schedule J, Part III, line 23) . . . . . | 33 | 8,767,000,000 |
| | 34 | Estimated tax penalty. See instructions. Check if Form 2220 is attached . . . . . . . . ▶ [ ] | 34 | 0 |
| | 35 | Amount owed. If line 33 is smaller than the total of lines 31, 32, and 34, enter amount owed . . . . | 35 | 0 |
| | 36 | Overpayment. If line 33 is larger than the total of lines 31, 32, and 34, enter amount overpaid . . . | 36 | 21,360,446 |
| | 37 | Enter amount from line 36 you want: **Credited to 2020 estimated tax** ▶  21,360,446 **Refunded** ▶ | 37 | 0 |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer   ALEXI WELLMAN      Date 4/23/20      Title CFO

May the IRS discuss this return with the preparer shown below? See instructions.  [X] Yes  [ ] No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | | Date | Check [ ] if self-employed |
|---|---|---|---|---|
| JEFF SOKOL | | | 4/23/20 | |
| Firm's name ▶ DELOITTE TAX LLP | | | | Firm's EIN ▶ |
| Firm's address ▶ 225 WEST SANTA CLARA STREET SUITE 600   SAN JOSE   CA  95113 | | | | Phone no. 408-704-4000 |

For Paperwork Reduction Act Notice, see separate instructions.          F9.00.01          US1120P1 . Form **1120** (2019)

**DOM-011**

**Note 10 Income Taxes**

**From: SEC filing Form N-CSR as of June 30, 2019, page 31**

As primary obligor, Altaba is generally responsible for all United States federal, state and local uncertain tax benefits through the date of the Sale the uncertain tax benefits are recorded in other liabilities in the consolidated statement of assets and liabilities. Pursuant to the transaction agreeme Media Group is obligated to indemnify the Fund for certain pre-acquisition tax liabilities. The Fund has therefore recorded an indemnification a Group of $219 million in other assets in the consolidated statement of assets and liabilities.

Altaba recognizes interest and/or penalties related to uncertain tax positions in income tax expense. To the extent accrued interest and penalties payable, amounts accrued will be reduced and reflected as a reduction of the overall income tax provision in the period that such determination accrued interest and penalties recorded on the consolidated statement of assets and liabilities as of June 30, 2019 was approximately $64 millio indemnified by Verizon Media Group pursuant to the transaction agreement with Verizon, whereby Verizon Media Group is obligated to indem pre-acquisition tax liabilities.

The Fund is in various stages of examination and appeal in connection with its taxes both in U.S. federal, state and local jurisdictions. These audit 2005 through 2015. As of December 31, 2018, the Fund's 2011 through 2015 U.S. federal income tax examination has concluded. The Fund ha California Franchise Tax Board's adjustments to the 2005 through 2008 returns, but no conclusions have been reached to date. The Fund's 2009 th returns are currently under examination. The Fund's 2011 tax year through the current tax year remain subject to examination by the California California tax purposes. While it is difficult to determine when the examinations will be settled or their final outcomes, certain audits in various ju be resolved in the foreseeable future. The Fund believes that it has adequately provided for any reasonably foreseeable adverse adjustment to indemnification by Verizon Media Group for certain tax liabilities, and that any settlement will not have a material adverse effect on its consolidated of operations, or cash flows.

**DOM-012**
**Other income**
**From: 2018 F1120, page 1, line 10**



ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
8689
Year: 2018

2018 CONS. FEDERAL 1120 TAX RETURN

STATEMENT 1 - FORM 1120, PG 1, LN 10
OTHER INCOME

LINE 10: OTHER INCOME

|  | Total | Elimination | Subtotal | ALTABA 8689 | EXCALIBUR |
|---|---|---|---|---|---|
| MISCELLANEOUS OTHER INCOME | 34,112,790 | 0 | 34,112,790 | 29,112,790 | 5,000,000 |
| SECTION 988 GAIN/LOSS | (5,100,030) | 0 | (5,100,030) | (5,100,030) | 0 |
| TOTAL | 29,012,760 | 0 | 29,012,760 | 24,012,760 | 5,000,000 |

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
8689
Year: 2019

2019 CONS. FEDERAL 1120 TAX RETURN

STATEMENT 1 - FORM 1120, PG 1, LN 10
OTHER INCOME

LINE 10: OTHER INCOME

|  | Total | Elimination | Subtotal | ALTABA 8689 | EXCALIBUR |
|---|---|---|---|---|---|
| MISCELLANEOUS OTHER INCOME | 62,131,969 | 0 | 62,131,969 | 62,131,969 | 0 |
| SECTION 988 GAIN/LOSS | (11,364) | 0 | (11,364) | (11,364) | 0 |
| EXCHANGE GAIN | 2,304 | 0 | 2,304 | 2,304 | 0 |
| TOTAL | 62,122,909 | 0 | 62,122,909 | 62,122,909 | 0 |

**DOM-013**
**Note 13 Investment in affiliates**
**From: SEC filing Form N-CSR as of June 30, 2019, page 33**

### Note 13   Investment in Affiliates

If the Fund's holding represents ownership of 5% or more of voting securities of a company, the company is deemed to be an affiliate as defined in the 1940 Act. The Fund had the following transactions during the period ended June 30, 2019 with affiliated companies[1]:

| | | Alibaba Group Holding Limited |
|---|---|---|
| Balance of shares held at January 1, 2019 | | 283,315,416 |
| Purchases | | |
| Sales | | (134,602,788) |
| Balance of shares held at June 30, 2019 | | 148,712,628 |
| Fair value as of June 30, 2019[2] | $ | 25,199,355 |
| Change in unrealized appreciation (depreciation)[2] | $ | (12,684,486) |
| Distributions | $ | — |
| Net realized gain (loss)[2] | $ | 20,620,159 |

(1)    Affiliated issuer, as defined in the 1940 Act.

(2)    In thousands.

**DOM-014**
**Note 16 Subsequent events**
**From: SEC filing Form N-CSR as of June 30, 2019, page 51**

## Note 16   Subsequent Events

During the period from July 1, 2019 through August 15, 2019, the Fund sold 143,712,628 Alibaba Shares for net proceeds of approximately $24.4 billion and in total the Fund sold 278,315,416 Alibaba Shares for net proceeds of approximately $46 billion pursuant to the Plan of Liquidation and Dissolution. The proceeds generally were reinvested in the Marketable Debt Securities Portfolio.

The Fund continues to hold 5 million Alibaba Shares and currently expects to sell those Alibaba Shares in 2020 for purposes of managing the Fund's tax liabilities. The Alibaba Shares are currently unhedged but the Fund may elect to hedge those Alibaba Shares in the future. The Fund's plans with respect to the Alibaba Shares and any related hedging activity may change at the Fund's discretion.

The Fund has adopted standards, which establish general standards of accounting for disclosure of events that occur after the consolidated statement of assets and liabilities date, but before the financial statements are issued. The Fund has performed an evaluation of subsequent events through the date the financial statements were issued and has determined that no events have occurred that require disclosure.

**DOM-015**
**Consolidated statement of assets and liabilities**
**From: SEC filing Form N-CSR as of June 30, 2019, page 1**

**ALTABA INC.**
**CONSOLIDATED STATEMENT OF ASSETS AND LIABILITIES**
**As of June 30, 2019 (unaudited)**
**($ in thousands, except per share amounts)**

| | | |
|---|---|---:|
| **ASSETS** | | |
| Cash | $ | 17,250 |
| Receivable for investments sold | | 1,392,574 |
| Interest receivable | | 4,169 |
| Dividend receivable | | 1,408 |
| Unaffiliated investments, at value (cost $22,031,811) including: | | 22,033,878 |
|    Marketable securities, $22,033,693 as of June 30, 2019 | | |
|    Equity securities, $185 as of June 30, 2019 | | |
| Affiliated investments, at value (cost $1,061,000) | | 25,199,355 |
| Investment in controlled affiliate (cost $0) | | 232,750 |
| Other assets | | 82,949 |
| Total assets | $ | 48,964,333 |
| **LIABILITIES** | | |
| Deferred tax liabilities on unrealized appreciation | $ | 5,312,043 |
| Taxes payable on sales of Alibaba shares | | 4,302,702 |
| Deferred and other tax liabilities (Note 10) | | 573,534 |
| Payable for investments purchased | | 69,502 |
| Payable to directors, officers and employees | | 20,843 |
| Payable to advisors | | 472 |
| Other liabilities | | 161,599 |
| Total liabilities | $ | 10,440,695 |
| Net assets | $ | 38,523,638 |
| **Net assets consist of:** | | |
| Total distributable earnings, net of deferred taxes | $ | 38,523,638 |
| Total net assets | $ | 38,523,638 |
| Shares outstanding | | 519,511,366 |
| NAV per share | $ | 74.15 |
| **Shares outstanding rollforward:** | | |
| Shares outstanding at December 31, 2017 | | 824,921,315 |
| Tender offer | | (195,000,000) |
| Share repurchases | | (62,457,045) |
| Shares outstanding at December 31, 2018 | | 567,464,270 |
| Share repurchases | | (47,952,904) |
| Shares outstanding at June 30, 2019 | | 519,511,366 |

See Notes to Consolidated Financial Statements.

1

**DOM-016**
**Company news about pre-dissolution liquidating distribution**
**From: Altaba website, under News on September 6, 2019**

Sep 6, 2019

## Altaba Announces Pre-Dissolution Liquidating Distribution of $51.50 Per Share



<< Back

NEW YORK--(BUSINESS WIRE)--Sep. 6, 2019-- Altaba Inc. ("Altaba" or the "Fund") (NASDAQ: AABA) today announced that, on September 5, 2019, the Board of Directors (the "Board") of the Fund declared a pre-dissolution liquidating distribution of $51.50 in cash per share of its common stock, par value $0.001 per share (the "Shares"), which will be paid on September 23, 2019 to stockholders of record as of September 16, 2019 (the "Pre-Dissolution Liquidating Distribution"). The Fund expects that the ex-dividend date for such distribution will be September 24, 2019, the day after the payment date for the Pre-Dissolution Liquidating Distribution.

As previously announced, stockholders of the Fund approved the liquidation and dissolution of the Fund pursuant to a Plan of Complete Liquidation and Dissolution (the "Plan") at a special meeting of stockholders held on June 27, 2019. Promptly following payment of the Pre-Dissolution Liquidating Distribution, the Fund intends to file a certificate of dissolution (the "Certificate of Dissolution") with the Secretary of State of the State of Delaware to dissolve the Fund. The Fund will issue a press release not less than five business days before filing the Certificate of Dissolution to announce (i) that the Board has determined to proceed with the liquidation and dissolution of the Fund and (ii) the anticipated filing date of the Certificate of Dissolution.

Thomas J. McInerney, Chief Executive Officer of the Fund, said, "This distribution represents a major milestone in our plan to liquidate and dissolve. A significant amount of work and judgment went into the determination of the distribution amount and, while not necessarily by design, it is in the middle of the range outlined in the proxy statement we filed with the U.S. Securities and Exchange Commission (the "SEC") on May 17, 2019, as supplemented on June 7, 2019. Our work to resolve actual and potential liabilities has made significant progress overall, but much remains to be done. Our principal assumptions, plans and expected outcomes, while still subject to risk and uncertainty, remain generally unchanged. We continue to be convinced that this plan is the right course for stockholders."

**DOM-017**

**Excalibur market value**

**From: Taxpayer response to IDR IE-002,  Y Excalibur market approach update file 3-3**

YAHOO! INC.                                                                                      EXHIBIT 15.0
ESTIMATION OF THE FAIR VALUE OF ASSETS IN EXCALIBUR PATENT PORTFOLIO
SUMMARY OF MARKET APPROACH
VALUATION DATE: December 31, 2016
($000s, Except Percentages and Number of Patents/Patent Applications)

Valuation of Excalibur Portfolio — Market Approach

| Comparable Market Transaction Approach (1) | Quantity | | | Value | | | Estimated Portfolio Value |
|---|---|---|---|---|---|---|---|
| Strength-adjusted Implied Value per WW Patent/Patent Application | 4,148 | WW Patents and Patent Applications | (2) $ | 179.4 | per WW Patent/Patent Application | (3) $ | 744,032 |
| Strength-adjusted Implied Value per Expected US Patent | 2,205 | US Patents and Probability-adjusted Published Pending Patent Applications | (4) $ | 338.6 | per Expected US Patent | (5) $ | 746,656 |
| Average Strength-adjusted Implied Value of Excalibur Portfolio | | | | | | $ | 745,344 |
| Market Approach Fair Value of Excalibur Portfolio [Rounded] (6) | | | | | | $ | 750,000 |

Notes:
(1)  See Exhibit 15.1 for more details.
(2)  The quantity is based on the total number of assets (patents and patent applications) in Excalibur Portfolio.
(3)  See Exhibit 16.0 for more details.
(4)  The quantity is based on the number of granted US patents and the probability-adjusted number of published pending US patent applications in the Excalibur Portfolio (collectively, the "Expected US Patent"). See Exhibit 15.1 for more details.
(5)  See Exhibit 16.2 for more details.
(6)  The Fair Value of Excalibur Portfolio is based on the average of the estimated portfolio values.

**CBA-01**

**Info from 2011-2015 NOPA 16 - Reducing 2013 per exam audit adjustment since potential claim reduce NOL carryback**

| Form **886-A** (May 2017) | Department of the Treasury – Internal Revenue Service **EXPLANATIONS OF ITEMS** | Schedule number or exhibit |
|---|---|---|
| | | NOPA-016 |
| Name of taxpayer | Taxpayer Identification Number (last 4 digits) | Year/Period ended |
| Altaba Inc. and Subsidiaries (FKA:Yahoo! Inc. & Subsidiaries) | 8689 | 201312, 201412 and 201512 |

## Form 1120, line 29a – Net operating loss deduction

| line 29a – Net operating loss deduction | 201312 | 201412 |
|---|---|---|
| Per Return | $79,376,242 | $142,695,424 |
| Per Exam | $475,982,679 | $159,405,172 |
| Taxable Income Net Changes | ($396,606,437) | ($16,709,748) |

## Form 4626, line 6 – Alternative tax net operating loss deduction

| line 6 – Alternative tax net operating loss deduction | 201312 | 201412 |
|---|---|---|
| Per Return | $79,376,242 | $141,272,700 |
| Per Exam | $467,956,825 | $157,982,448 |
| Taxable Income Net Changes | ($388,580,583) | ($16,709,748) |

**CBA-02**

**Summary of Taxpayer's 2015 amended return model Foreign tax expense to Foreign Tax Credit**

|  | Tax as Originally Filed | Tax as Amended | Difference |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
| 2013 | 34,575,447 | 77,897,410 | 43,321,963 |  |  | 123,777,038.00 |
| 2014 | 3,192,834,050 | 3,154,799,800 | (38,034,250) |  |  |  |
| 2015 | - | - | - |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  | 5,287,714 |  |  |  |
|  |  |  |  |  |  |  |

|  | 2013 | | |
|---|---|---|---|
|  | (After 2011-2015 IRS Audit) | With FTC Conversion | Difference |
| Taxable Income Before NOL | 2,294,541,310 | 2,294,541,310 | - |
| | | | |
| Adjustments to Taxable Income | (367,041,811) | (367,041,811) | - |
| | | | |
| | | - | |
| Taxable Income Before NOL w/ Adj. | 1,927,499,499 | 1,927,499,499 | - |
| | | | |
| NOL Utilization | (79,376,242) | (79,376,242) | - |
| NOL Carryback | (396,606,437) | (272,829,399) | 123,777,038 |
| | | | |
| Taxable Income After NOL | 1,451,516,820 | 1,575,293,858 | 123,777,038 |
| | | | |
| Tax @ 35% | 508,030,887 | 551,352,850 | 43,321,963 |
| | | | |
| FTC Utilized | (457,767,372) | (457,767,372) | - |
| Tax Liability After FTC | 50,263,515 | 93,585,478 | 43,321,963 |
| | - | | |
| R&D Credit Utilized | (15,688,068) | (15,688,068) | - |
| Tax Liability After FTC & R&D | 34,575,447 | 77,897,410 | 43,321,963 |
| Minimum Tax Credit | - | - | - |
| | | | |
| Tax Liability After Credits | 34,575,447 | 77,897,410 | 43,321,963 |
| | | | |
| Alternative Minimum Tax | | | |
| AMTI | 1,927,499,499 | 1,927,499,499 | - |
| AMT Adjustments | (975,038) | (975,038) | - |
| AMTI After Adjustments | 1,926,524,461 | 1,926,524,461 | - |
| AMTI Loss Carryback | | | - |
| AMT NOL | (487,620,355) | (363,843,317) | 123,777,038 |
| AMTI After NOL | 1,438,904,106 | 1,562,681,144 | 123,777,038 |
| | | | |
| AMT Before FTC (@20%) | 287,780,821 | 312,536,229 | 24,755,408 |
| AMT FTC | (278,295,341) | (278,295,341) | - |
| Tentative Minimum Tax | 9,485,480 | 34,240,888 | 24,755,408 |
| AMT | - | - | - |
| | | | |
| **Total Tax Liability** | 34,575,447 | 77,897,410 | 43,321,963 |

CBA-03
2016 Form 1120

| Form **1120** | | **U.S. Corporation Income Tax Return** | | | OMB No. 1545-0123 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2016 or tax year beginning _____ , ending _____ , 20 ____ ▶ Information about Form 1120 and its separate instructions is at www.gov/form1120. | | | **2016** |

**A** Check if:
**1a** Consolidated return (attach Form 851) . . . [X]
**b** Life/nonlife consolidated return . . . . .
**2** Personal holding co. (attach Sch. PH) . . . .
**3** Personal service corp. (see instructions) . . .
**4** Schedule M-3 attached [X]

TYPE OR PRINT

Name, Number, street, and room or suite no. If a P.O. box, see instructions.
City or town, state, or province, country and ZIP or foreign postal code

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
140 EAST 45TH STREET, 15TH FLOOR

NEW YORK          NY  10017-3144

**B** Employer identification number
            3889

**C** Date incorporated
04  30  1995

**D** Total assets (see instructions)
$   54,482,974,500

**E** Check if: **(1)** [ ] Initial return  **(2)** [ ] Final return  **(3)** [X] Name change  **(4)** [X] Address change

| | | | | | | |
|---|---|---|---|---|---|---|
| **I n c o m e** | 1a | Gross receipts or sales | | 1a | 4,094,204,276 | |
| | b | Returns and allowances | | 1b | 1,651,800 | |
| | c | Balance. Subtract line 1b from line 1a | | | 1c | 4,092,552,476 |
| | 2 | Cost of goods sold (attach Form 1125-A) | | | 2 | 2,125,813,083 |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | 3 | 1,966,739,393 |
| | 4 | Dividends (Schedule C, line 19) | | | 4 | 672,617,256 |
| | 5 | Interest | | | 5 | 64,519,094 |
| | 6 | Gross rents | | | 6 | 0 |
| | 7 | Gross royalties | | | 7 | 0 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | | | 8 | 63,210,557 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 9 | 57,259,156 |
| | 10 | Other income (see instructions--attach statement) | STATEMENT 1 | | 10 | 68,571,722 |
| | 11 | **Total income.** Add lines 3 through 10 | | ▶ | 11 | 2,892,917,178 |
| **D e d u c t i o n s** | 12 | Compensation of officers (see instructions--attach Form 1125-E) | | ▶ | 12 | 4,427,340 |
| | 13 | Salaries and wages (less employment credits) | | | 13 | 1,133,399,823 |
| | 14 | Repairs and maintenance | | | 14 | 71,280,084 |
| | 15 | Bad debts | | | 15 | 9,261,801 |
| | 16 | Rents | | | 16 | 32,098,911 |
| | 17 | Taxes and licenses | STATEMENT 2 | | 17 | 111,647,298 |
| | 18 | Interest | | | 18 | 59,296,580 |
| | 19 | Charitable contributions | | | 19 | 8,382,764 |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | | 20 | 57,487,642 |
| | 21 | Depletion | | | 21 | 0 |
| | 22 | Advertising | | | 22 | 129,686,417 |
| | 23 | Pension, profit-sharing, etc., plans | | | 23 | 18,146,872 |
| | 24 | Employee benefit programs | | | 24 | 80,194,153 |
| | 25 | Domestic production activities deduction (attach Form 8903) | | | 25 | 0 |
| | 26 | Other deductions (attach statement) | STATEMENT 3 | | 26 | 466,272,580 |
| | 27 | **Total deductions.** Add lines 12 through 26 | | ▶ | 27 | 2,181,582,265 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11. | | | 28 | 711,334,913 |
| | 29a | Net operating loss deduction (see instructions) | | 29a | 165,543,527 | |
| | b | Special deductions (Schedule C, line 20) | | 29b | 0 | |
| | c | Add lines 29a and 29b | | | 29c | 165,543,527 |
| **Tax, Refundable Credits, and Payments** | 30 | Taxable income. Subtract line 29c from line 28 (see instructions) | | | 30 | 545,791,386 |
| | 31 | Total tax (Schedule J, Part I, line 11) | | | 31 | 0 |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) | | | 32 | 0 |
| | 33 | Estimated tax penalty (see instructions). Check if Form 2220 is attached | ▶ [ ] | | 33 | 0 |
| | 34 | Amount owed. If line 32 is smaller than the total of lines 31 and 33, enter amount owed | | | 34 | 0 |
| | 35 | Overpayment. If line 32 is larger than the total of lines 31 and 33, enter amount overpaid | | | 35 | 0 |
| | 36 | Enter amount from line 35 you want: Credited to 2017 estimated tax ▶ | 0  Refunded ▶ | | 36 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

[signature] alexi a. Wellma          10/13/2017          CFO

May the IRS discuss this return with the preparer shown below (see instructions)?

CBA-03

| Form 1120 (2016) | ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES | | | 8689 Page 2 |
|---|---|---|---|---|
| **Schedule C** | **Dividends and Special Deductions** (see instructions) | (a) Dividends received | (b) % | (c) Special deductions (a) x (b) |
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . . . . . | 0 | 70 | 0 |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . . . . . | 0 | 80 | 0 |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations . . . . . . . | 0 | see instructions | 0 |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities . . . . | 0 | 42 | 0 |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities . . . . | 0 | 48 | 0 |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs . . . . | 0 | 70 | 0 |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs . . . . | 0 | 80 | 0 |
| 8 | Dividends from wholly owned foreign subsidiaries . . . . . . . . . . . . . . . . . . | 0 | 100 | 0 |
| 9 | Total. Add lines 1 through 8. See instructions for limitation . . . . . . . . . . . . | | | 0 |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 . . . . . . . . | 0 | 100 | 0 |
| 11 | Dividends from affiliated group members . . . . . . . . . . . . . . . . . . . . . | 0 | 100 | 0 |
| 12 | Dividends from certain FSCs . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | 100 | 0 |
| 13 | Dividends from foreign corporations not included on lines 3, 6, 7, 8, 11, or 12 . . . . | 484,895,935 | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) | 3,173,549 | | |
| 15 | Foreign dividend gross-up . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 184,547,772 | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 . . . . . . . . | 0 | | |
| 17 | Other dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities . . . . . . | | | 0 |
| 19 | Total dividends. Add lines 1 through 17. Enter here and on page 1, line 4 . . . . ▶ | 672,617,256 | | |
| 20 | Total special deductions. Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b . . . . . . . . . . . ▶ | | | 0 |

Form **1120** (2016)

CBA-03

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES                                                     9889

Form 1120 (2016)                                                                                          Page **3**

| **Schedule J** | **Tax Computation and Payment** (see instructions) | | | |
|---|---|---|---|---|
| **Part I - Tax Computation** | | | | |
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)) . . . . . ▶ ☐ | | | |
| 2 | Income tax. Check if a qualified personal service corporation (see instructions) . . . . . . . . . . . . ▶ ☐ | | **2** | 191,026,985 |
| 3 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **3** | 0 |
| 4 | Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **4** | 191,026,985 |
| 5a | Foreign tax credit (attach Form 1118) . . . . . . . . . . | **5a** | 191,026,985 | | |
| b | Credit from Form 8834 (see instructions) . . . . . . . . . | **5b** | 0 | | |
| c | General business credit (attach Form 3800) . . . . . . . . | **5c** | 0 | | |
| d | Credit for prior year minimum tax (attach Form 8827) . . . . | **5d** | 0 | | |
| e | Bond credits from Form 8912 . . . . . . . . . . . . . . | **5e** | 0 | | |
| 6 | **Total credits.** Add lines 5a through 5e . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **6** | 191,026,985 |
| 7 | Subtract line 6 from line 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **7** | 0 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . . . . . . | | **8** | 0 |
| 9a | Recapture of investment credit (attach Form 4255) . . . . . | **9a** | 0 | | |
| b | Recapture of low-income housing credit (attach Form 8611) . . | **9b** | 0 | | |
| c | Interest due under the look-back method--completed long-term contracts (attach Form 8697) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9c** | 0 | | |
| d | Interest due under the look-back method--income forecast method (attach Form 8866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9d** | 0 | | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) . . . . . . . . . | **9e** | 0 | | |
| f | Other (see instructions--attach statement) . . . . . . . . . . . . . . . . . | **9f** | 0 | | |
| 10 | **Total.** Add lines 9a through 9f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **10** | 0 |
| 11 | **Total tax.** Add lines 7, 8, and 10. Enter here and on page 1, line 31 . . . . . . . . . . . . . . . | | **11** | 0 |
| **Part II - Payments and Refundable Credits** | | | | |
| 12 | 2015 overpayment credited to 2016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **12** | 0 |
| 13 | 2016 estimated tax payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **13** | 0 |
| 14 | 2016 refund applied for on Form 4466 . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **14** | ( 0 ) |
| 15 | Combine lines 12, 13, and 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **15** | 0 |
| 16 | Tax deposited with Form 7004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **16** | 0 |
| 17 | Withholding (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **17** | 0 |
| 18 | **Total payments.** Add lines 15, 16, and 17 . . . . . . . . . . . . . . . . . . . . . . . . . | | **18** | 0 |
| 19 | Refundable credits from: | | | |
| a | Form 2439 . . . . . . . . . . . . . . . . . . . . . . . | **19a** | 0 | | |
| b | Form 4136 . . . . . . . . . . . . . . . . . . . . . . . | **19b** | 0 | | |
| c | Form 8827, line 8c . . . . . . . . . . . . . . . . . . . | **19c** | 0 | | |
| d | Other (attach statement--see instructions) . . . . . . . . | **19d** | 0 | | |
| 20 | **Total credits.** Add lines 19a through 19d . . . . . . . . . . . . . . . . . . . . . . . . . . | | **20** | 0 |
| 21 | **Total payments and credits.** Add lines 18 and 20. Enter here and on page 1, line 32 . . . . . . . . . | | **21** | 0 |

| **Schedule K** | **Other Information** (see instructions) | | |
|---|---|---|---|
| | | **Yes** | **No** |
| 1 | Check accounting method:   a ☐ Cash   b ☒ Accrual   c ☐ Other (specify) ▶ _____ | | |
| 2 | See the instructions and enter the: | | |
| a | Business activity code no. ▶ 519130 | | |
| b | Business activity ▶ PUBLISHING AND BROADCASTING | | |
| c | Product or service ▶ PUBLISHING AND BROADCASTING | | |
| 3 | Is the co... | | x |

CBA-04
2017 Tax Return

**Form 1120**
Department of the Treasury
Internal Revenue Service

**U.S. Corporation Income Tax Return**

For calendar year 2017 or tax year beginning _____, ending _____, 20____

▶ Go to www.irs.gov/Form1120 for instructions and the latest information.

OMB No. 1545-0123

**2017**

**A Check if:**
1a Consolidated return (attach Form 851) . . . . [X]
 b Life/nonlife consolidated return . . . . .
2 Personal holding co. (attach Sch. PH) . . . .
3 Personal service corp. (see instructions) . . . .
4 Schedule M-3 attached [X]

TYPE OR PRINT

Name, Number, street, and room or suite no. If a P.O. box, see instructions.
City or town, state, or province, country and ZIP or foreign postal code

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES
140 EAST 45TH STREET, 15TH FLOOR

NEW YORK          NY   10017-3144

**B Employer identification number**
        8689

C ___Incorporated
04  30  1995

D Total assets (see instructions)
$ 81,203,086,332

E Check if: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change

| | | | | |
|---|---|---|---|---|
| **I n c o m e** | 1a | Gross receipts or sales . . . . . . . . . . . . . . | 1a | 1,873,444,766 | |
| | b | Returns and allowances . . . . . . . . . . . . | 1b | 388,234 | |
| | c | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . . . | 1c | 1,873,056,532 |
| | 2 | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . . . | 2 | 1,051,943,400 |
| | 3 | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . . | 3 | 821,113,132 |
| | 4 | Dividends (Schedule C, line 19) . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | 691,907,950 |
| | 5 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | 99,336,028 |
| | 6 | Gross rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 | 0 |
| | 7 | Gross royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 | 0 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) . . . . . . . . . . . . . . . | 8 | 0 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . . | 9 | 768,115,250 |
| | 10 | Other income (see instructions--attach statement) . . . . . . STATEMENT 1 | 10 | 58,432,741 |
| | 11 | Total income. Add lines 3 through 10 . . . . . . . . . . . . . . . . ▶ | 11 | 2,438,905,101 |
| **D e d u c t i o n s** (See instructions for limitations on deductions.) | 12 | Compensation of officers (see instructions--attach Form 1125-E) . . . . . . . . ▶ | 12 | 5,796,482 |
| | 13 | Salaries and wages (less employment credits) . . . . . . . . . . . . . . . . . | 13 | 911,808,065 |
| | 14 | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . | 14 | 4,707,587 |
| | 15 | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 | 18,921,327 |
| | 16 | Rents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 | 15,300,094 |
| | 17 | Taxes and licenses . . . . . . . . . . . . . . . . . . . STATEMENT 2 | 17 | 205,278,950 |
| | 18 | Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 | 80,463,082 |
| | 19 | Charitable contributions . . . . . . . . . . . . . . . . . . . . . . . . . | 19 | 542,301 |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 20 | 15,682,758 |
| | 21 | Depletion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 | 0 |
| | 22 | Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 | 69,978,253 |
| | 23 | Pension, profit-sharing, etc., plans . . . . . . . . . . . . . . . . . . . . | 23 | 3,436,844 |
| | 24 | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . | 24 | 13,343,463 |
| | 25 | Domestic production activities deduction (attach Form 8903) . . . . . . . . . . . . | 25 | 1,156,763 |
| | 26 | Other deductions (attach statement) . . . . . . . . . . . . STATEMENT 3 | 26 | 1,042,170,280 |
| | 27 | Total deductions. Add lines 12 through 26 . . . . . . . . . . . . . . . ▶ | 27 | 2,388,586,249 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 . | 28 | 50,318,852 |
| | 29a | Net operating loss deduction (see instructions) . . . . | 29a | 38,622,693 | |
| | b | Special deductions (Schedule C, line 20) . . . . . . | 29b | 0 | |
| | c | Add lines 29a and 29b . . . . . . . . . . . . . . . . . . . . . . . . . | 29c | 38,622,693 |
| **Tax, Refundable Credits, and Payments** | 30 | Taxable income. Subtract line 29c from line 28. See instructions . . . . . . . . . . | 30 | 11,696,159 |
| | 31 | Total tax (Schedule J, Part I, line 11) . . . . . . . . . . . . . . . . . . . | 31 | 0 |
| | 32 | Total payments and refundable credits (Schedule J, Part II, line 21) . . . . . . . . . | 32 | 20,000,000 |
| | 33 | Estimated tax penalty. See instructions. Check if Form 2220 is attached . . . . . . ▶ ☐ | 33 | 0 |
| | 34 | Amount owed. If line 32 is smaller than the total of lines 31 and 33, enter amount owed . . . | 34 | 0 |
| | 35 | Overpayment. If line 32 is larger than the total of lines 31 and 33, enter amount overpaid . . . | 35 | 20,000,000 |
| | 36 | Enter amount from line 35 you want: Credited to 2018 estimated tax ▶ 20,000,000 Refunded ▶ | 36 | 0 |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

CBA-04

Form 1120 (2017)     ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES                                 8689     Page **2**

| Schedule C | Dividends and Special Deductions (see instructions) | (a) Dividends received | (b) % | (c) Special deductions (a) x (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | 70 | 0 |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | 80 | 0 |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations . . . . . . . | 0 | see instructions | 0 |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities . . . . | 0 | 42 | 0 |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities . . . . | 0 | 48 | 0 |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs . . . . | 0 | 70 | 0 |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs . . . . | 0 | 80 | 0 |
| 8 | Dividends from wholly owned foreign subsidiaries . . . . . . . . . . . . . . . . | 0 | 100 | 0 |
| 9 | Total. Add lines 1 through 8. See instructions for limitation . . . . . . . . . . . . . | | | 0 |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 . . . . . . . . | 0 | 100 | 0 |
| 11 | Dividends from affiliated group members . . . . . . . . . . . . . . . . . . . . | 0 | 100 | 0 |
| 12 | Dividends from certain FSCs . . . . . . . . . . . . . . . . . . . . . . . . | 0 | 100 | 0 |
| 13 | Dividends from foreign corporations not included on lines 3, 6, 7, 8, 11, or 12 . . . . | 561,453,299 | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) | 129,579,993 | | |
| 15 | Foreign dividend gross-up . . . . . . . . . . . . . . . . . . . . . . . . . | 874,658 | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 . . . . . . . . | 0 | | |
| 17 | Other dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0 | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities . . . . . . | | | 0 |
| 19 | Total dividends. Add lines 1 through 17. Enter here and on page 1, line 4 . . . . ▶ | 691,907,950 | | |
| 20 | Total special deductions. Add lines 9, 10, 11, 12, and 18. Enter here and on page 1, line 29b . . . . . . . . . . . ▶ | | | 0 |

Form **1120** (2017)

CBA-04

ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES                                    ████ 3689

Form 1120 (2017)                                                                                          Page 3

## Schedule J    Tax Computation and Payment (see instructions)

### Part I - Tax Computation

| | | | |
|---|---|---:|---:|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)). See inst. ▶ ☐ | | |
| 2 | Income tax. Check if a qualified personal service corporation. See instructions . . . . . . . . . . . ▶ ☐ | **2** | 3,993,656 |
| 3 | Alternative minimum tax (attach Form 4626) . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | 0 |
| 4 | Add lines 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | 3,993,656 |
| 5a | Foreign tax credit (attach Form 1118) . . . . . . . . . . . . . . . **5a** 3,993,656 | | |
| b | Credit from Form 8834 (see instructions) . . . . . . . . . . . 0 **5b** 0 | | |
| c | General business credit (attach Form 3800) . . . . . . . . . . . **5c** 0 | | |
| d | Credit for prior year minimum tax (attach Form 8827) . . . . . . **5d** 0 | | |
| e | Bond credits from Form 8912 . . . . . . . . . . . . . . . . . . **5e** 0 | | |
| 6 | Total credits. Add lines 5a through 5e . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | 3,993,656 |
| 7 | Subtract line 6 from line 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **7** | 0 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) . . . . . . . . . . . . . . . . . | **8** | 0 |
| 9a | Recapture of investment credit (attach Form 4255) . . . . . . . . **9a** 0 | | |
| b | Recapture of low-income housing credit (attach Form 8611) . . . . **9b** 0 | | |
| c | Interest due under the look-back method--completed long-term contracts (attach Form 8697) . . . . . . . . . . . . . . . . . . . . . . . . . . . **9c** 0 | | |
| d | Interest due under the look-back method--income forecast method (attach Form 8866) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9d** 0 | | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) . . . . . . . . **9e** 0 | | |
| f | Other (see instructions--attach statement) . . . . . . . . . . . . **9f** 0 | | |
| 10 | Total. Add lines 9a through 9f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **10** | 0 |
| 11 | Total tax. Add lines 7, 8, and 10. Enter here and on page 1, line 31 . . . . . . . . . . . . . . 0 | **11** | 0 |

### Part II- Payments and Refundable Credits

| | | | |
|---|---|---:|---:|
| | | | 0 |
| 12 | 2016 overpayment credited to 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12** | 0 |
| 13 | 2017 estimated tax payments . . . . . . . . . . . . . . . . . . . 0 . . . . . . . . . . 0 | **13** | 0 |
| 14 | 2017 refund applied for on Form 4466 . . . . . . . . . . . . . . . . . . . . . . . . . . . | **14** | ( 0 ) |
| 15 | Combine lines 12, 13, and 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **15** | 0 |
| 16 | Tax deposited with Form 7004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **16** | 20,000,000 |
| 17 | Withholding (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **17** | 0 |
| 18 | Total payments. Add lines 15, 16, and 17 . . . . . . . . . . . . . . . . . . . . . . . . . | **18** | 20,000,000 |
| 19 | Refundable credits from: | | |
| a | Form 2439 . . . . . . . . . . . . . . . . . . . . . . . . . . . **19a** 0 | | |
| b | Form 4136 . . . . . . . . . . . . . . . . . . . . . . . . . . . **19b** 0 | | |
| c | Form 8827, line 8c . . . . . . . . . . . . . . . . . . . . . . . **19c** 0 | | |
| d | Other (attach statement--see instructions) . . . . . . . . . . . **19d** 0 | | |
| 20 | Total credits. Add lines 19a through 19d . . . . . . . . . . . . . . . . . . . . . . . . . . | **20** | 0 |
| 21 | Total payments and credits. Add lines 18 and 20. Enter here and on page 1, line 32 . . . . . . . . . . . . . | **21** | 20,000,000 |

## Schedule K    Other Information (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:  a ☐ Cash   b ☒ Accrual   c ☐ Other (specify) ▶ _____ | | |
| 2 | See the instructions and enter the: | | |
| a | Business activity code no.  ▶ 519130 | | |
| b | Business activity ▶ PUBLISHING AND BROADCASTING | | |
| c | Product or service ▶ PUBLISHING AND BROADCASTING | | |
| 3 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . . . . . . . . . . . . . . . . . | | X |
| | If "Yes," enter name and EIN of the parent corporation ▶ _____ | | |
| 4 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the | | |

CBA-05

| Form 886-A | U.S. Treasury Department-Internal Revenue Service **EXPLANATION OF ITEMS** | NOPA # 01 |
|---|---|---|
| Name of Taxpayer | | Year / Period Ended |
| Altaba Inc. and Subsidiaries (FKA: Yahoo! Inc. & Subsidiaries) EIN: xx-xxx8689 | | FY 2016 – FY 2017 |

### Form 1120, Line 10, Other Income – Cost Sharing Transactions ("CST") Payment

| CST Payment (Cost Pool Offset Adjustment) | FY 2016 | FY 2017 |
|---|---|---|
| Per Exam | $ 18,356,627 | $ 8,268,733 |
| Per Return | $ 0 | $ 0 |
| Adjustment to Taxable Income | $ 18,356,627 | $ 8,268,733 |

### Issue

Is it permissible under the cost sharing regulations, specifically Treasury Regulation §1.482-7(d), for Altaba[1] (FKA Yahoo Inc. and Subsidiaries), to reduce the pool of allocable intangible development costs ("IDCs") by the amount of certain licensing revenues in its tax returns for FY 2016 and FY 2017?

CBA-06

| Form<br>886-A | U.S. Treasury Department-Internal Revenue Service<br>**EXPLANATION OF ITEMS** | NOPA # 02 |
|---|---|---|
| Name of Taxpayer | | Year / Period Ended |
| Altaba Inc. and Subsidiaries (FKA: Yahoo Inc. & Subsidiaries)<br>EIN:  xx-xxx8689 | | FY 2016 – FY 2017 |

### Form 1120, Line 10, Other Income - R&D Cost Share Payment

| Cost Share Payment (Stock-based compensation) | FY 2016 | FY 2017 |
|---|---|---|
| **Per Return** | $ 117,767,693 | $ 50,768,703 |
| **Per Exam** | $ 160,049,295 | $ 67,884,664 |
| **Adjustment to Taxable Income** | $ 42,281,602 | $ 17,115,961 |

<u>Issue</u>

Did Altaba[1] ( FKA Yahoo Inc. and Subsidiaries, "Taxpayer") properly cost share as intangible development costs ("IDC") allocable stock-based compensation ("SBC") costs under its cost sharing arrangement ("CSA") with its foreign affiliate in FY 2016 and FY 2017 pursuant to Treas. Reg. § 1.482-7 (2011)?

CBA-07

| Form 886-A<br>(Rev. January 1994) | EXPLANATIONS OF ITEMS | Schedule number or exhibit<br>NOPA 03 Attachment<br>pg 1 of 3 |
|---|---|---|
| Name of taxpayer<br>Altaba Inc. and Subsidiaries (fka Yahoo!<br>Inc. and Subsidiaries) | Tax Identification Number<br>xx-xxx8689 | Year/Period ended<br>FY2016-FY2017 |

**Form 1120 Line 26 Other Deductions – R&D Cost Sharing Allocation Adjustment:  (Arm's Length Rental Charge) :**

|  | FY2016 | FY2017 |
|---|---|---|
| Per Return | 0 | 0 |
| Per Exam | $1,637,127 | $ 293,679 |
| Adjustment – T/I Increase | $1,637,127 | $ 293,679 |

**Issue:**

Should the arm's length rental charge for the use of any land or depreciable tangible property (as determined under Treas. Reg.  § 1.482–2(c) Use of tangible property) be considered in the cost-sharing allocation calculations pursuant to Treas. Reg. §1.482-7 during the period FY2016 and FY2017?

CBA-08

| Form<br>886-A | U.S. Treasury Department-Internal Revenue Service<br>**EXPLANATION OF ITEMS** | NOPA # 04 |
|---|---|---|
| **Name of Taxpayer** | | **Year / Period Ended** |
| Altaba Inc. and Subsidiaries (FKA: Yahoo Inc. & Subsidiaries)<br>EIN:  xx-xxx8689 | | FY 2016 – FY 2017 |

### Form 1120, Line 10, Other Income – Intercompany Service Charges

| **Intercompany Service Charges**<br>**(Stock-based compensation)** | **FY 2016** | **FY 2017** |
|---|---|---|
| **Per Exam** | $ 119,038,778 | $ 51,532,463 |
| **Per Return** | $102,072,057 | $ 45,525,479 |
| **Adjustment to Taxable Income** | $ 16,966,721 | $ 6,006,984 |

## Issue

Did Altaba[1] (FKA Yahoo Inc. and Subsidiaries, "Taxpayer") properly allocate stock-based compensation ("SBC") to its foreign affiliate under IRC § 482 during the period FY 2016-FY 2017?

CBA-09

# U.S. Corporation Income Tax Return

**Form 1120**
Department of the Treasury
Internal Revenue Service

For calendar year 2018 or tax year beginning _____, _____, ending _____, 20___
▶ Go to www.irs.gov/Form1120 for instructions and the latest information.

OMB No. 1545-0123

**2018**

| A Check if: | | | | | | |
|---|---|---|---|---|---|---|
| 1a Consolidated return (attach Form 851) | X | TYPE | Name. Number, street, and room or suite no. If a P.O. box, see instructions. | | **B Employer identification number** | |
| b Life/nonlife consolidated return | | OR | City or town, state, or province, country and ZIP or foreign postal code | | | 689 |
| 2 Personal holding co. (attach Sch. PH) | | PRINT | ALTABA, INC. (FKA YAHOO! INC) & SUBSIDIARIES | | Incorporated | |
| 3 Personal service corp. (see instructions) | | | 140 EAST 45TH STREET, 15TH FLOOR | | 04 | 30 | 1995 |
| 4 Schedule M-3 attached | X | | NEW YORK          NY   10017-3144 | | **D Total assets (see instructions)** $ 47,542,185,329 |

E Check if: (1) Initial return  (2) Final return  (3) Name change  (4) Address change

| | | | | | |
|---|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales | 1a | 0 | |
| | b | Returns and allowances | 1b | 0 | |
| | c | Balance. Subtract line 1b from line 1a | | 1c | 0 |
| | 2 | Cost of goods sold (attach Form 1125-A) | | 2 | 0 |
| | 3 | Gross profit. Subtract line 2 from line 1c | | 3 | 0 |
| | 4 | Dividends and inclusions (Schedule C, line 23, column (a)) | | 4 | 9,152,104,253 |
| | 5 | Interest | | 5 | 151,976,316 |
| | 6 | Gross rents | | 6 | 0 |
| | 7 | Gross royalties | | 7 | 0 |
| | 8 | Capital gain net income (attach Schedule D (Form 1120)) | | 8 | 18,879,032,521 |
| | 9 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 9 | 0 |
| | 10 | Other income (see instructions – attach statement)          STATEMENT 1 | | 10 | 29,012,760 |
| | 11 | **Total income.** Add lines 3 through 10 | ▶ | 11 | 28,212,125,850 |
| **Deductions (See instructions for limitations on deductions.)** | 12 | Compensation of officers (see instructions—attach Form 1125-E) | ▶ | 12 | 4,169,326 |
| | 13 | Salaries and wages (less employment credits) | | 13 | 10,974,167 |
| | 14 | Repairs and maintenance | | 14 | 0 |
| | 15 | Bad debts | | 15 | 0 |
| | 16 | Rents | | 16 | 881,211 |
| | 17 | Taxes and licenses          STATEMENT 2 | | 17 | 99,350,723 |
| | 18 | Interest (see instructions) | | 18 | 168,838,257 |
| | 19 | Charitable contributions | | 19 | 0 |
| | 20 | Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | 20 | 0 |
| | 21 | Depletion | | 21 | 0 |
| | 22 | Advertising | | 22 | 0 |
| | 23 | Pension, profit-sharing, etc., plans | | 23 | 0 |
| | 24 | Employee benefit programs | | 24 | 0 |
| | 25 | Reserved for future use | | 25 | |
| | 26 | Other deductions (attach statement)          STATEMENT 3 | | 26 | 119,419,090 |
| | 27 | **Total deductions.** Add lines 12 through 26 | ▶ | 27 | 403,632,774 |
| | 28 | Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11. | | 28 | 27,808,493,076 |
| | 29a | Net operating loss deduction (see instructions) | 29a | 23,236,359 | |
| | b | Special deductions (Schedule C, line 24, column (c)) | 29b | 1,884,377,413 | |
| | c | Add lines 29a and 29b | | 29c | 1,907,613,772 |
| **Tax, Refundable Credits, and Payments** | 30 | **Taxable income.** Subtract line 29c from line 28. See instructions | | 30 | 25,900,879,304 |
| | 31 | Total tax (Schedule J, Part I, line 11) | | 31 | 3,986,067,837 |
| | 32 | 2018 net 965 tax liability paid (Schedule J, Part II, line 12) | | 32 | 96,276,786 |
| | 33 | Total payments, credits, and section 965 net tax liability (Schedule J, Part III, line 23) | ▶ | 33 | 4,083,576,786 |
| | 34 | Estimated tax penalty. See instructions. Check if Form 2220 is attached | ▶ ☐ | 34 | 0 |
| | 35 | Amount owed. If line 33 is smaller than the total of lines 31, 32, and 34, enter amount owed | | 35 | 0 |
| | 36 | Overpayment. If line 33 is larger than the total of lines 31, 32, and 34, enter amount overpaid | | 36 | 1,232,163 |
| | 37 | Enter amount from line 36 you want: Credited to 2019 estimated tax ▶  1,232,163  Refunded ▶ | | 37 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer: _ALEXI WELLMAN_          Date: 10/14/19          Title: CFO

May the IRS discuss this return with the preparer shown below? See instructions.  ☑ Yes  ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| JEFF SOKOL | | 10/14/2019 | | |
| Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ | |
| Firm's address ▶ 225 WEST SANTA CLARA STREET, SUITE 600, SAN JOSE, CA 95113 | | | Phone no. 408-704-4000 | |

For Paperwork Reduction Act Notice, see separate instructions.          F8.00.01   US1120P1 . Form **1120** (2018)

ERF

CBA-10

Form 1120 (2018)  ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES  3689  Page **2**

| Schedule C | Dividends, Inclusions, and Special Deductions (see instructions) | (a) Dividends and inclusions | (b) % | (c) Special deductions (a) × (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) | 0 | 50 | 0 |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) | 0 | 65 | 0 |
| 3 | Dividends on certain debt-financed stock of domestic and foreign corporations | 0 | see instructions | 0 |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | 0 | 23.3 | 0 |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | 0 | 26.7 | 0 |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs | 0 | 50 | 0 |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs | 0 | 65 | 0 |
| 8 | Dividends from wholly owned foreign subsidiaries | 0 | 100 | 0 |
| 9 | **Subtotal.** Add lines 1 through 8. See instructions for limitations | 0 | see instructions | 0 |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | 0 | 100 | 0 |
| 11 | Dividends from affiliated group members | 0 | 100 | 0 |
| 12 | Dividends from certain FSCs | 0 | 100 | 0 |
| 13 | Foreign-source portion of dividends received from a specified 10%-owned foreign corporation (excluding hybrid dividends) (see instructions) | 0 | 100 | 0 |
| 14 | Dividends from foreign corporations not included on line 3, 6, 7, 8, 11, 12, or 13 (including any hybrid dividends) | 114,148 | | |
| 15 | Section 965(a) inclusion | 6,916,933,054 | see instructions | 1,811,577,705 |
| 16a | Subpart F inclusions derived from the sale by a controlled foreign corporation (CFC) of the stock of a lower-tier foreign corporation treated as a dividend (attach Form(s) 5471) (see instructions) | 0 | 100 | 0 |
| b | Subpart F inclusions derived from hybrid dividends of tiered corporations (attach Form(s) 5471) (see instructions) | 0 | | |
| c | Other inclusions from CFCs under subpart F not included on line 15, 16a, 16b, or 17 (attach Form(s) 5471) (see instructions) | 0 | | |
| 17 | Global Intangible Low-Taxed Income (GILTI) (attach Form(s) 5471 and Form 8992) | 98,213,599 | | |
| 18 | Gross-up for foreign taxes deemed paid | 2,136,843,452 | | |
| 19 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 | 0 | | |
| 20 | Other dividends | 0 | | |
| 21 | Deduction for dividends paid on certain preferred stock of public utilities | | | 0 |
| 22 | Section 250 deduction (attach Form 8993) | | | 72,799,708 |
| 23 | **Total dividends and inclusions.** Add lines 9 through 20. Enter here and on page 1, line 4 | 9,152,104,253 | | |
| 24 | **Total special deductions.** Add lines 9 through 22, column (c). Enter here and on page 1, line 29b | | | 1,884,377,413 |

Form **1120** (2018)

CBA-11

| SCHEDULE A (Form 965) | U.S. Shareholder's Section 965(a) Inclusion Amount | | |
|---|---|---|---|
| (January 2019) | ▶ Attach to Form 965. | | |
| Department of the Treasury Internal Revenue Service | ▶ Go to www.irs.gov/Form965 for instructions and the latest information. | | OMB No. 1545-0123 |

Name of person filing this return: ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES

Identifying number: 8689

| | Name of Deferred Foreign Income Corporation (DFIC) | (a) EIN or Reference ID Number of the Foreign Corporation (see instructions) | (b) U.S. Tax Year End (Year/Month) of DFIC (see instructions) | (c) Accumulated Post-1986 Deferred Foreign Income in Functional Currency (see instructions) | (d) December 31, 2017 Spot Rate | (e) Accumulated Post-1986 Deferred Foreign Income in U.S. Dollars (divide column (c) by column (d)) |
|---|---|---|---|---|---|---|
| 1 | YAHOO! JAPAN | | 2018   03 | 8,369,831,330 | 1.00000000 | 8,369,831,330 |
| 2 | ALIBABA GROUP HOLDING LIMITED | | 2018   03 | 25,993,542,435 | 1.00000000 | 25,993,542,435 |
| 3 | | | | 0 | 0.00000000 | 0 |
| 4 | | | | 0 | 0.00000000 | 0 |
| 5 | | | | 0 | 0.00000000 | 0 |
| 6 | | | | 0 | 0.00000000 | 0 |
| 7 | | | | 0 | 0.00000000 | 0 |
| 8 | | | | 0 | 0.00000000 | 0 |
| 9 | | | | 0 | 0.00000000 | 0 |
| 10 | | | | 0 | 0.00000000 | 0 |
| 11 | | | | 0 | 0.00000000 | 0 |
| 12 | | | | 0 | 0.00000000 | 0 |
| 13 | | | | 0 | 0.00000000 | 0 |
| 14 | | | | 0 | 0.00000000 | 0 |
| 15 | | | | 0 | 0.00000000 | 0 |
| 16 | Total (lines 1-15) . . . . . . . . . . . . . . . . . . . | | | | | |

ERF   For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.     F8.00.01   US965AP1   Schedule A (Form 965) (1-2019)

F 965 Sch A Col (e)

| Yahoo Japan | 8,369,831,330 |
|---|---|
| Alibaba | 25,993,542,435 |
| | 34,363,373,765 |

Schedule A (Form 965) (1-2019)     ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES     8689     Page **2**

| | (f) U.S. Shareholder's Pro Rata Share of Column (e) | (g) Deficit Allocation Ratio (column (f) amount divided by column (f), line 16) | (h) U.S. Shareholder's Aggregate Foreign E&P Deficit (see instructions) | (i) Section 965(a) Inclusion Amount (column (f) less column (h)) | (j) Section 965(a) Inclusion Amount Taken Into Account in the 2017 Tax Year | (k) Section 965(a) Inclusion Amount Taken Into Account in the 2018 Tax Year |
|---|---|---|---|---|---|---|
| 1 | 2,976,312,021 | 0.00000000 | 0 | 2,976,312,021 | 0 | 2,976,312,021 |
| 2 | 3,940,621,033 | 0.00000000 | 0 | 3,940,621,033 | 0 | 3,940,621,033 |
| 3 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 4 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 5 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 6 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 7 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 8 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 9 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 10 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 11 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 12 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 13 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 14 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 15 | 0 | 0.00000000 | 0 | 0 | 0 | 0 |
| 16 | 0 | | 0 | 6,916,933,054 | 0 | 6,916,933,054 |

Add schedules as needed.

F8.00.01   US965AP2     Schedule A (Form 965) (Rev. 1-2019)

CBA-12

| | Alibaba Group Holdings Ltd. | Subtotal |
|---|---|---|
| US Shareholder | Altabe Inc. | |
| Type | DFIC | |
| Accumulated Post-1986 Deferred Foreign Income as of December 31, 2017 - Positive E&P | $ 4,134,130,135 | $4,134,130,135 |
| Accumulated Post-1986 Deferred Foreign Income as of December 31, 2017 - Deficit | - | |
| §959(c)(3) Taxes | - | |
| Cash Position as of March 31, 2018 | 4,964,142,000 | 4,964,142,000 |
| Cash Position as of Mar 31, 2017 | 3,231,960,400 | 3,231,960,400 |
| Cash Position as of Mar 31, 2016 | 2,622,243,579 | 2,622,243,579 |
| Last Date in 2017 on Which Tax Year Ends | 12/31/2017 | |
| Calendar year in which the US shareholder's tax year that includes the last day of the SFC's transition tax year ends | 12/31/2017 | |
| Accumulated E&P | 4,101,147,660 | 4,101,147,660 |
| §951(a) Inclusion | 4,134,130,135 | 4,134,130,135 |
| Attributable Taxes | - | |
| Cash Position (Prior Two Year Average) | 2,927,101,989 | 2,927,101,989 |
| Relevant Cash Position | 4,964,142,000 | 4,964,142,000 |

Total E&P to Cash % = 55.71% * 4,134,130,135 = 2,303,301,075

| | Yahoo! Japan | Subtotal |
|---|---|---|
| US Shareholder | Altabe Inc. | |
| Type | DFIC | |
| Accumulated Post-1986 Deferred Foreign Income as of December 31, 2017 - Positive E&P | $ 3,276,122,497 | $3,276,122,497 |
| Accumulated Post-1986 Deferred Foreign Income as of December 31, 2017 - Deficit | - | |
| §959(c)(3) Taxes | - | |
| Cash Position as of March 31, 2018 | 3,365,060,397 | 3,365,060,397 |
| Cash Position as of Mar 31, 2017 | 1,637,700,207 | 1,637,700,207 |
| Cash Position as of Mar 31, 2016 | 1,297,021,164 | 1,297,021,164 |
| Last Date in 2017 on Which Tax Year Ends | 3/31/2017 | |
| Calendar year in which the US shareholder's tax year that includes the last day of the SFC's transition tax year ends | 12/31/2017 | |
| Accumulated E&P | 3,396,585,441 | 3,396,585,441 |
| §951(a) Inclusion | 3,276,122,497 | 3,276,122,497 |
| Attributable Taxes | - | |
| Cash Position (Prior Two Year Average) | 1,467,360,686 | 1,467,360,686 |
| Relevant Cash Position | 3,365,060,397 | 3,365,060,397 |

Total E&P to Cash % = 26.19% * 3,276,122,497 = 858,032,082

**Form 8992** (December 2018)
Department of the Treasury
Internal Revenue Service

**U.S. Shareholder Calculation of Global Intangible Low-Taxed Income (GILTI)**

► Go to www.irs.gov/Form8992 for instructions and the latest information.

OMB No. 1545-0123
Attachment Sequence No. **992**

Name of person filing this return — **A** Identifying number

Name of U.S. shareholder — ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES — **B** Identifying number 8689

**Part I  Net Controlled Foreign Corporation (CFC) Tested Income** (see instructions)

| | | |
|---|---|---|
| 1 Sum of Pro Rata Share of Net Tested Income (total from Form 8992–Schedule A, line 1, column (e)) | 1 | 108,362,006 |
| 2 Sum of Pro Rata Share of Net Tested Loss (total from Form 8992–Schedule A, line 1, column (f)) | 2 | (0) |
| 3 Net CFC Tested Income (combine line 1 and line 2) (if zero or negative, stop here) | 3 | 108,362,006 |

**Part II  Calculation of Global Intangible Low-Taxed Income (GILTI)**

| | | |
|---|---|---|
| 1 Net CFC Tested Income (from Part I, line 3). | 1 | 108,362,006 |
| 2a Pro Rata Share of QBAI multiplied by 10% (total from Form 8992–Schedule A, line 1, column (g)) | 2a | 10,148,407 |
| b Specified Interest Expense (total from Form 8992–Schedule A, line 1, column (i)) | 2b | 0 |
| c Net Deemed Tangible Income Return (DTIR) (subtract 2b from line 2a) (if zero or less, enter -0- here) | 2c | 0 |
| 3 GILTI (subtract 2c from line 1) (see instructions) | 3 | 98,213,599 |

For Paperwork Reduction Act Notice, see separate instructions.  Cat. No. 37816Y  Form **8992** (12-2018)

Sch A Col | (c) | (e) | %
403,883,734 | 108,362,006 | 26.83%

Form 8992 (12-2018)  Page **2**

**Schedule A  Schedule A for U.S. Shareholder Calculation of Global Intangible Low-Taxed Income (GILTI)**

Name of person filing this return — **A** Identifying number

Name of U.S. shareholder — ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES — **B** Identifying number 8689

| (a) Name of CFC | (b) EIN or Reference ID | (c) Tested Income | (d) Tested Loss | (e) Pro Rata Share of Tested Income | (f) Pro Rata Share of (Tested Loss) | (g) Pro Rata Share of Qualified Business Asset Investment (QBAI) Multiplied by 10% (0.10) | (h) Pro Rata Share of Interest Expense | (i) Specified Interest Expense | (j) Allocation Ratio (Divide Col. (e) by Col. (e) Line 1 Total) | (k) GILTI Allocated to Tested Income CFCs (Multiply Form 8992, Part II, Line 3, by Col. (j)) |
|---|---|---|---|---|---|---|---|---|---|---|
| YAHOO! JAPAN | | 403,883,734 | | 108,362,006 | | 10,148,407 | | | 1 | 98,213,599 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1.** Totals (see instructions) | | 403,883,734 | | 108,362,006 | | 10,148,407 | | | | 98,213,599 |

Totals on line 1 should include the totals from any continuation sheets.

Form 8992 (12-2018)

CBA-13

| Form **965**<br>(January 2019)<br>Department of the Treasury<br>Internal Revenue Service | **Inclusion of Deferred Foreign Income<br>Upon Transition to Participation Exemption System**<br>▶Attach to tax return.<br>▶Go to www.irs.gov/Form965 for instructions and the latest information. | OMB No. 1545-0123 |
|---|---|---|

| For calendar year 20 **18** , or other tax year beginning , 20 and ending , 20 of the filer. |
|---|

| Name of person filing this return | Identifying number |
|---|---|
| ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES | ████3689 |

**Note.** Throughout this form, the term "2018 tax year" refers to 2018 calendar years and fiscal tax years of the person filing this return that begin in 2018. The term "2017 tax year" refers to 2017 calendar years and fiscal tax years of the person filing this return that begin in 2017.

| **Part I** | **Section 965(a) Inclusion** | | |
|---|---|---|---|
| 1 | 2018 tax year section 965(a) inclusion amounts from Schedule A. | | |
| | Enter the sum of column (k) of Schedule A . . . . . . . . . . . . . . . | **1** | 6,916,933,054 |
| 2 | 2018 tax year section 965(a) inclusions from pass-throughs. Attach schedule . . . . . . . . . . . | **2** | 0 |
| 3 | Total 2018 tax year section 965(a) inclusion. Add lines 1 and 2. | | |
| | Enter the sum here and on your tax return as follows. Corporations: Enter the line 3 total on | | |
| | Form 1120, Schedule C, line 15, column (a), or the corresponding line of other corporate tax | | |
| | returns. All others: See instructions . . . . . . . . . . . . . . . . . . . . ▶ | **3** | 6,916,933,054 |
| 4 | 2017 tax year section 965(a) inclusion amounts from Schedule A. | | |
| | Enter the sum of column (j) of Schedule A . . . . . . . . . . . . . . . | **4** | 0 |
| 5 | 2017 tax year section 965(a) inclusions from pass-throughs. Attach schedule . . . . . . . . . | **5** | 0 |
| 6 | Total 2017 tax year section 965(a) inclusion. Add lines 4 and 5 . . . . . . . . . . . . . . . ▶ | **6** | 0 |

| **Part II** | **Section 965(c) Deduction** | | |
|---|---|---|---|

| SECTION 1 - Section 965(c) Deduction by Tax Year | | **2018 Tax Year** |
|---|---|---|
| 7 | Enter the amount from Part I, line 1. If -0-, skip to line 16 . . . . . . . . . . . . . . . . . | **7** | 6,916,933,054 |
| 8 | **Aggregate Foreign Cash Position.** | | |
| | Enter the sum from Schedule D, line 21 . . . . . . . . . . . . . . . . . . . . . . | **8** | 6,916,933,054 |
| 9 | Enter the smaller of line 7 or 8 . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | 6,916,933,054 |
| 10 | Enter the 2018 15.5% Rate Equivalent Percentage from Part II, Section 2. | | |
| | Enter amount from Section 2, line 1a . . . . . . . . . . . . . . . . . . . . . . . | **10** | 26.1904762 |
| 11 | **Section 965(c) Deduction Related to 15.5% Rate Equivalent Percentage.** | | |
| | Multiply line 9 by line 10 . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** | 1,811,577,705 |
| 12 | Subtract line 9 from line 7 . . . . . . . . . . . . . . . . . . . . . . . . . . | **12** | 0 |
| 13 | Enter the 2018 8% Rate Equivalent Percentage from Part II, Section 2. | | |
| | Enter amount from Section 2, line 1b . . . . . . . . . . . . . . . . . . . . . . | **13** | 61.9047619 |
| 14 | **Section 965(c) Deduction Related to 8% Rate Equivalent Percentage.** | | |
| | Multiply line 12 by line 13 . . . . . . . . . . . . . . . . . . . . . . . . . . | **14** | 0 |
| 15 | **2018 tax year section 965(c) deduction not from pass-throughs.** | | |
| | Add lines 11 and 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . | **15** | 1,811,577,705 |
| 16 | **2018 tax year section 965(c) deduction from pass-throughs.** | | |
| | Attach schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **16** | 0 |
| 17 | **Total 2018 tax year section 965(c) deduction.** Add lines 15 and 16. | | |
| | Enter the sum here and on your tax return as follows. Corporations: Enter the line 17 total on | | |
| | Form 1120, Schedule C, line 15, column (c), or the corresponding line of other corporate tax | | |
| | returns. All others: See instructions . . . . . . . . . . . . . . . . . . . . | **17** | 1,811,577,705 |

For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.                    Form **965** (1-2019)

ERF

CBA-14

| Form **8993** | Section 250 Deduction for Foreign-Derived Intangible Income (FDII) and Global Intangible Low-Taxed Income (GILTI) | OMB No. 1545-0123 |
|---|---|---|

(December 2018)
Department of the Treasury
Internal Revenue Service

▶ Go to www.irs.gov/Form8993 for instructions and the latest information.

Attachment
Sequence No. **933**

| Name of person filing this return | Identifying number |
|---|---|
| ALTABA, INC. (FKA YAHOO! INC.) & SUBSIDIARIES | 3689 |

**Part I    Determining Deduction Eligible Income (DEI)** (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Gross Income | | | **1** | 0 |
| 2 | Exclusions | | | | |
| a | Income included under section 951(a)(1) | **2a** | 47,385,817 | | |
| b | Income included under section 951A (from Form 8992, Part II, line 3) | **2b** | 98,213,599 | | |
| c | Financial Services Income | **2c** | 0 | | |
| d | CFC Dividends | **2d** | 0 | | |
| e | Domestic Oil and Gas Extraction Income | **2e** | 0 | | |
| f | Foreign Branch Income | **2f** | 0 | | |
| 3 | Total Exclusions (add lines 2a through 2f) | | | **3** | 145,599,416 |
| 4 | Gross Income less Total Exclusions (subtract line 3 from line 1) | | | **4** | -145,599,416 |
| 5 | Deductions properly allocable to the amount on line 4 | | | **5** | 0 |
| 6 | Deduction Eligible Income (DEI) (subtract line 5 from line 4) | | | **6** | -145,599,416 |

**Part II    Determining Deemed Intangible Income (DII)** (see instructions)

| | | | |
|---|---|---|---|
| 1 | DEI (from Part I, line 6, above) | **1** | -145,599,416 |
| 2 | Deemed Tangible Income Return (10% of QBAI) | **2** | 0 |
| 3 | Deemed Intangible Income (DII) (subtract line 2 from line 1) | **3** | -145,599,416 |

**Part III    Determining Foreign Derived Ratio** (see instructions)

| | | | | |
|---|---|---|---|---|
| 1a | DEI derived from sales, leases, exchanges, or other dispositions (but not licenses) of property to a foreign person for a foreign use (see instructions) | **1a** | 0 | |
| b | DEI derived from a license of property to a foreign person for a foreign use (see instructions) | **1b** | 0 | |
| c | DEI derived from services provided to a person or with respect to property located outside of the United States (see instructions) | **1c** | 0 | |
| 2 | Foreign Derived Deduction Eligible Income (FDDEI) (add lines 1a through 1c) | | **2** | 0 |
| 3 | Deduction Eligible Income (DEI) (from Part I, line 6, above) | | **3** | -145,599,416 |
| 4 | Foreign Derived Ratio (FDDEI / DEI) (divide line 2 by line 3) | | **4** | 0.000000 |

**Part IV    Determining FDII and/or GILTI Deduction** (see instructions)

| | | | |
|---|---|---|---|
| 1 | Deemed Intangible Income (DII) (from Part II, line 3) | **1** | -145,599,416 |
| 2 | Foreign Derived Ratio (from Part III, line 4) | **2** | 0.000000 |
| 3a | FDII (multiply line 1 by line 2) | **3a** | 0 |
| b | Global Intangible Low-Taxed Income (GILTI) (see instructions for line 3b) | **3b** | 145,599,416 |
| c | Total FDII and GILTI (add lines 3a and 3b) | **3c** | 145,599,416 |
| 4 | Taxable Income (see instructions for line 4) | **4** | 25,900,879,304 |
| 5 | Excess FDII and GILTI over Taxable Income (subtract line 4 from line 3c). If zero or less, enter -0- here and on lines 6 and 7 | **5** | 0 |
| 6 | FDII Reduction (divide line 3a by line 3c; multiply by line 5) | **6** | 0 |
| 7 | GILTI Reduction (subtract line 6 from line 5) | **7** | 0 |
| 8 | FDII Deduction (see instructions for line 8). (Enter here and on Form 1120, Schedule C; see instructions for information on other tax forms) | **8** | 0 |
| 9 | GILTI Deduction (see instructions for line 9). (Enter here and on Form 1120, Schedule C; see instructions for information on other tax forms) | **9** | 72,799,708 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **8993** (12-2018)

ERF

CBA-15

**Form 1118**
(Rev. December 2018)
Department of the Treasury
Internal Revenue Service

**Foreign Tax Credit- Corporations**
▶ Attach to the corporation's tax return.
▶ Go to www.irs.gov/Form1118 for instructions and the latest information.

OMB No. 1545-0123

For calendar year 20 18 , or other tax year beginning      , 20    , and ending      , 20

Name of corporation: ALTABA, INC. (FKA YAHOO! INC.)

Employer identification number: 8689

Use a separate Form 1118 for each applicable category of income (see instructions).
a  Separate Category (Enter code - see instructions.) ......................................▶ GEN
b  If code 901j is entered on line a, enter the country code for the sanctioned country (see instructions) ...........▶
c  If code RBT is entered on line a, enter the country code for the treaty country (see instructions) ..............▶

**Schedule A    Income or (Loss) Before Adjustments** (Report all amounts in U.S. dollars. See Specific Instructions.)

| 1. EIN or Reference ID Number (see instructions)* | 2. Foreign Country or U.S. Possession (enter two-letter code—use a separate line for each) (see instructions) | 3. Inclusions Under Sections 951(a)(1) and 951A (a) Exclude Gross-Up | (b) Gross-Up (section 78) | 4. Dividends (a) Exclude Gross-Up | (b) Gross-Up (section 78) | 5. Interest |
|---|---|---|---|---|---|---|
| A  FOREIGN/US | JA | 6,916,933,054 | 2,830,878,086 | 0 | 0 | 0 |
| B | | 0 | 0 | 0 | 0 | 0 |
| C | | 0 | 0 | 0 | 0 | 0 |
| Totals (add lines A through C) ▶ | | 6,916,933,054 | 2,830,878,086 | 0 | 0 | 0 |

| | 6. Gross Rents, Royalties, and License Fees | 7. Sales | 8. Gross Income from Performance of Services | 9. Section 986(c) Gain or Loss | 10. Section 987 Gain or Loss | 11. Section 988 Gain or Loss | 12. Other (attach schedule) |
|---|---|---|---|---|---|---|---|
| A | 5,000,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| B | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| C | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 5,000,000 | 0 | 0 | 0 | 0 | 0 | 0 |

| | 13. Total (add columns 3(a) through 12) | 14. Allocable Deductions | | | | | |
|---|---|---|---|---|---|---|---|
| | | (a) Dividends Received Deduction (see instructions) | (b) Deduction Allowed Under Section 250(a)(1)(A)- Foreign Derived Intangible Income | (c) Deduction Allowed Under Section 250(a)(1)(B)- Global Intangible Low- Taxed Income | (d) Depreciation, Depletion, and Amortization | (e) Other Allocable Expenses | (f) Expenses Allocable to Sales Income |
| A | 9,752,811,140 | 0 | 0 | 0 | 0 | 0 | 0 |
| B | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| C | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 9,752,811,140 | 0 | 0 | 0 | 0 | 0 | 0 |

| | 14. Allocable Deductions (continued) | | | 15. Apportioned Share of Deductions (enter amount from applicable line of Schedule H, Part II, column (d)) | 16. Net Operating Loss Deduction | 17. Total Deductions (add columns 14(i) through 16) | 18. Total Income or (Loss) Before Adjustments (subtract column 17 from column 13) |
|---|---|---|---|---|---|---|---|
| | (g) Expenses Allocable to Gross Income From Performance of Services | (h) Other Allocable Deductions | (i) Total Allocable Deductions (add columns 14(a) through 14(h)) | | | | |
| A | 0 | 2,552,998,156 | 2,552,998,156 | 0 | 0 | 2,552,998,156 | 7,199,812,984 |
| B | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| C | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 2,552,998,156 | 2,552,998,156 | 0 | 0 | 2,552,998,156 | 7,199,812,984 |

* For section 863(b) income, NOLs, income from RICs, high- taxed income, section 965, and section 951A, use a single line (see instructions).

For Paperwork Reduction Act Notice, see separate instructions.

F8.00.02   US1118P1    Form 1118 (Rev. 12- 2018)

---

ALTABA, INC. (FKA YAHOO! INC.)    8689

Form 1118 (Rev. 12- 2018)    Page 2

**Schedule B    Foreign Tax Credit** (Report all foreign tax amounts in U.S. dollars.)

**Part I - Foreign Taxes Paid, Accrued, and Deemed Paid** (see instructions)

| 1. Credit is Claimed for Taxes (check one): ☐ Paid  ☒ Accrued | 2. Foreign Taxes Paid or Accrued (attach schedule showing amounts in foreign currency and conversion rate(s) used) | | | | | |
|---|---|---|---|---|---|---|
| | Tax Withheld at Source on: | | | | | |
| Date Paid / Date Accrued | (a) Dividends | (b) Distributions of Previously Taxed Income | (c) Branch Remittances | (d) Interest | (e) Rents, Royalties, and License Fees | (f) Other |
| A  12 31 2018 | 3,720,967 | 0 | 0 | 0 | 825,000 | 0 |
| B | 0 | 0 | 0 | 0 | 0 | 0 |
| C | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals (add lines A through C) ▶ | 3,720,967 | 0 | 0 | 0 | 825,000 | 0 |

| | 2. Foreign Taxes Paid or Accrued (attach schedule showing amounts in foreign currency and conversion rate(s) used) | | | | 3. Tax Deemed Paid (see instructions) |
|---|---|---|---|---|---|
| | Other Foreign Taxes Paid or Accrued on: | | | | |
| | (g) Sales | (h) Services Income | (i) Other | (j) Total Foreign Taxes Paid or Accrued (add columns 2(a) through 2(i)) | |
| A | 0 | 0 | 0 | 4,545,967 | 1,254,078,992 |
| B | 0 | 0 | 0 | 0 | 0 |
| C | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 0 | 0 | 4,545,967 | 1,254,078,992 |

**Part II - Separate Foreign Tax Credit** (Complete a separate Part II for each applicable category of income.)

| | | |
|---|---|---|
| 1a | Total foreign taxes paid or accrued (total from Part I, column 2(j)) .................... | 4,545,967 | |
| b | Foreign taxes paid or accrued by the corporation during prior tax years that were suspended due to the rules of section 909 and for which the related income is taken into account by the corporation during the current tax year (see instructions) ......... | 0 | |
| 2 | Total taxes deemed paid (total from Part I, column 3) ...................... | 1,254,078,992 | |
| 3 | Reductions of taxes paid, accrued, or deemed paid (enter total from Schedule G) ............ | (0) | |
| 4 | Taxes reclassified under high- tax kickout .......................... | 0 | |
| 5 | Enter the sum of any carryover of foreign taxes (from Schedule K, line 3, column (xiv), and from Schedule I, Part III, line 3) plus any carrybacks to the current tax year ........................ | 156,008,981 | |
| 6 | Total foreign taxes (combine lines 1a through 5) ...................... | | 1,414,633,940 |
| 7 | Enter the amount from the applicable column of Schedule J, Part I, line 11 (see instructions). If Schedule J is not required to be completed, enter the result from the "Totals" line of column 18 of the applicable Schedule A ............... | | 7,199,812,984 |
| 8a | Total taxable income from all sources (enter taxable income from the corporation's tax return) ...... | 25,900,879,304 | |
| b | Adjustments to line 8a (see instructions) ......................... | 0 | |
| c | Subtract line 8b from line 8a ............................ | | 25,900,879,304 |
| 9 | Divide line 7 by line 8c. Enter the resulting fraction as a decimal (see instructions). If line 7 is greater than line 8c, enter 1 ..... | | 0.27797562 |
| 10 | Total U.S. income tax against which credit is allowed (regular tax liability (see section 26(b)) minus American Samoa economic development credit) ............................ | | 5,439,184,654 |
| 11 | Credit limitation (multiply line 9 by line 10) (see instructions) ................. | ▶ | 1,511,960,727 |
| 12 | Separate foreign tax credit (enter the smaller of line 6 or line 11). Enter here and on the appropriate line of Part III ....... | ▶ | 1,414,633,940 |

F8.00.01   US1118P2    Form 1118 (Rev. 12- 2018)

**CBA-15**

ALTABA, INC. (FKA YAHOO! INC.)

Form 1118 (Rev. 12-2018)                                                                                          9689                    Page 3

| Schedule B | Foreign Tax Credit (continued) (Report all foreign tax amounts in U.S. dollars.) |

**Part III - Summary of Separate Credits** (Enter amounts from Part II, line 12 for each applicable category of income.  Do not  include taxes paid to sanctioned countries.)

| | | |
|---|---|---|
| 1 | Credit for taxes on section 951A category income .................................................. | 10,868,571 |
| 2 | Credit for taxes on foreign branch category income .................................................. | 0 |
| 3 | Credit for taxes on passive category income .................................................. | 0 |
| 4 | Credit for taxes on general category income .................................................. | 1,414,633,940 |
| 5 | Credit for taxes on section 901(j) category income (combine all such credits on this line) .... | 0 |
| 6 | Credit for taxes on income re- sourced by treaty (combine all such credits on this line) .... | 0 |
| 7 | Total (add lines 1 through 6) .................................................. | 1,425,502,511 |
| 8 | Reduction in credit for international boycott operations (see instructions) .................. | 0 |
| 9 | Total foreign tax credit  (subtract line 8 from line 7). Enter here and on the appropriate line of the corporation's tax return | 1,425,502,511 |

| Schedule C | Tax Deemed Paid With Respect to Section 951(a)(1) Inclusions by Domestic Corporation Filing Return (Section 960(a)) |

Use this schedule to report the tax deemed paid by the corporation with respect to section 951(a)(1) inclusions of earnings from foreign corporations under section 960(a).

| 1a.  Name of Foreign Corporation | 1b.  EIN or Reference ID Number of the Foreign Corporation (see instructions) | 2.  Tax Year End (Year/Month) (see instructions) | 3.  Country of Incorporation (enter country code - see instructions) | 4.  E&P for Tax Year Indicated (in functional currency) | 5.  Foreign Taxes Paid for Tax Year Indicated (see instructions) | 6.  Section 951(a)(1) Inclusions | | 7.  Taxes Deemed Paid (see instructions) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | (a)  Functional Currency | (b)  U.S. Dollars | |
| | | | | 0 | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | 0 |

Total  (add amounts in column 7. Enter the result here and include on the "Totals" line of Schedule B, Part I, column 3 .................................................. ▶ | | | | | | | | 0 |

F8.00.02   US1118P3                                                                        Form 1118 (Rev. 12- 2018)

---

**CBA-15**

ALTABA, INC. (FKA YAHOO! INC.)

Form 1118 (Rev. 12-2018)                                                                                          9689                    Page 6

| Schedule F-1 | Tax Deemed Paid by Domestic Corporation Filing Return -  Pre-2018 Taxable Years of Foreign Corporations |

Use this schedule to figure the tax deemed paid by the corporation with respect to dividends from a first-tier foreign corporation under section 902(a), and deemed inclusions of earnings from a first- or lower-tier foreign corporation under section 960(a). Report all amounts in U.S. dollars unless otherwise specified.

IMPORTANT:  Applicable to dividends or inclusions from taxable years of foreign corporations beginning on or before December 31, 2017.
If taxpayer does not have such a dividend or inclusion, do not complete Schedule F-1 (see instructions).

**Part I - Dividends and Deemed Inclusions From Post-1986 Undistributed Earnings**

| 1a.  Name of Foreign Corporation (identify DISCs and former FSCs) | 1b.  EIN (if any) of the Foreign Corporation | 1c.  Reference ID Number (see instructions) | 2.  Tax Year End (Year/Month) (see instructions) | 3.  Country of Incorporation (enter country code - see instructions) | 4.  Post- 1986 Undistributed Earnings (in functional currency) (attach schedule) | 5.  Opening Balance in Post- 1986 Foreign Income Taxes | 6.  Foreign Taxes Paid and Deemed Paid for Tax Year Indicated | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | (a)  Taxes Paid | (b)  Taxes Deemed Paid (see instructions) |
| YAHOO! JAPAN | | | 2018 12 | JA | 6,916,933,054 | 1,254,078,992 | 0 | 0 |
| | | | | | 0 | 0 | 0 | 0 |
| | | | | | 0 | 0 | 0 | 0 |
| | | | | | 0 | 0 | 0 | 0 |
| | | | | | 0 | 0 | 0 | 0 |
| | | | | | 0 | 0 | 0 | 0 |

| 7.  Post- 1986 Foreign Income Taxes (add columns 5, 6(a), and 6(b)) | 8.  Dividends and Deemed Inclusions | | 9.  Divide Column 8(a) by Column 4 | 10.  Multiply Column 7 by Column 9 | 11.  Section 960(c) Limitation | 12.  Tax Deemed Paid (subtract column 10 from column 11) |
|---|---|---|---|---|---|---|
| | (a)  Functional Currency | (b)  U.S. Dollars | | | | |
| 1,254,078,992 | 6,916,933,054 | 6,916,933,054 | 1.00000000 | 1,254,078,992 | 0 | 1,254,078,992 |
| 0 | 0 | 0 | 0.00000000 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0.00000000 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0.00000000 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0.00000000 | 0 | 0 | 0 |
| 0 | 0 | 0 | 0.00000000 | 0 | 0 | 0 |
| | | | | | | 0 |

Total  (add amounts in column 12. Enter the result here and include on the "Totals" line of Schedule B, Part I, column 3 .................................................. ▶ | | | | | | 1,254,078,992 |

F8.00.01   US1118P6                                                                        Form 1118  (Rev. 12- 2018)

**Altaba Inc.**
EIN: ▨▨▨8689
**Form 941 Employment Tax Examination**
**Actual and Projected Wage and Tax Adjustments for Tax Preparation Services Provided to Employees 2013-2017**

ET 1

| Description | Actuals | | | | | | Projection | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2013 [1] | | 2014 [2] | | 2015 | | 2016 | | 2017 | |
| | Total | Average | Total | Average | Total | % | Total | % | Total | % |
| Total Domestic Tax Preparation Fees | 182,700 | 2,100.00 | 355,320 | 1,890.00 | | | | | | |
| Total Foreign Tax Preparation Fees | 158,842 | 1,825.77 | 396,466 | 2,108.86 | | | | | | |
| Amount Previously Included in Wages | (35,000) | (402.30) | (88,500) | (470.74) | | | | | | |
| Adjustment | 306,542 | 3,523 | 663,286 | 3,528 | | | | | | |
| | | | | | | | | | | |
| Inflation Factor Applied by Exam [5] | | | | | 3.4% | | 1.1% | | 3.3% | |
| Average Adjustment in 2015-17 | | | | | 3,648 | | 3,688 | | 3,810 | |
| | | | | | | | | | | |
| # Forms W-2 [3] | 9,723 | | 11,131 | | 10,240 | | 9,434 | | 5,464 | |
| % Employees Included in Adjustment | | 0.89% | | 1.69% | 1.69% | | 1.69% | | 1.69% | |
| # Employee Included in Adjustment | 87 | | 188 | | 173 | | 159 | | 92 | |
| | | | | | | | | | | |
| Total Adjustment | | | | | $630,926 | | $587,639 | | $351,608 | $0 |
| | | | | | | | | | | |
| **Wage Adjustment:** | | | | | | | | | | |
| FITW & Medicare Wage Adjustment | 306,542 | | 663,286 | | 630,926 | | 587,639 | | 351,608 | |
| Social Security Wage Adjustment [4] | 135,013 | 44% | 46,388 | 7% | 630,926 | 100% | 587,639 | 100% | 351,608 | 100% |
| Additional Medicare Wage Adjustment [4] | 48,597 | 16% | 158,588 | 24% | - | 0% | - | 0% | - | 0% |
| | | | | | | | | | | |
| **Tax Adjustment:** | | | | | | | | | | |
| FITW @ 25% | $76,636 | | $165,822 | | $157,732 | | $146,910 | | $87,902 | |
| Medicare @ 2.9% | 8,890 | | 19,235 | | 18,297 | | 17,042 | | 10,197 | |
| Social Security @ 12.4% | 16,742 | | 5,752 | | 78,235 | | 72,867 | | 43,599 | |
| Additional Medicare @ 0.9% | 437 | | 1,427 | | - | | - | | - | |
| Total Tax Adjustment | $102,705 | | $192,236 | | $254,264 | | $236,819 | | $141,698 | |

ET 1

| | | | | |
|---|---|---|---|---|
| Accuracy Penalty @ 20% | $20,541 | $38,447 | $50,853 | $47,364 | $28,340 |
| FTD Penalty @ 10% | 1,282 [6] | 1,249 [6] | 4,827 | 4,495 | 2,690 |
| Total Penalties | $21,823 | $39,697 | $55,679 | $51,859 | $31,029 |

Notes and sources:

[1] Agrees to 2013-14 examination workpaper "Actual Wage and Tax Adjustments for Tax Preparation Services Provided to Employees - 2013." Schedule will be provided upon request.

[2] Agrees to 2013-14 examination workpaper "Actual Wage and Tax Adjustments for Tax Preparation Services Provided to Employees - 2014." Schedule will be provided upon request.

[3] See Tab ET 4, Forms W-2 and 1099-MISC Data per PMFOLS & BMFOLU Transcripts, 2013-2017.

[4] Exam applied the conservative assumption that 100% of the adjustment is subject to Social Security tax and 0% is subject to Additional Medicare tax.

[5] Exam applied the increase in the National Average Wage Index to Total Domestic Tax Preparation Fees, Total Foreign Tax Preparation, and Amount Included in Wages. See Tab ET 5, Table of Adjustments for Inflation - 2013-2017.

[6] FTD penalty was not asserted in 2013-14 examination, because it was not materially in excess of Campus' minimum threshold for assertion of $250 per quarter per issue.

ET 1

ET 2

**Altaba Inc.**
EIN: ▮▮▮689
Form 941 Employment Tax Examination
Actual and Projected Wage and Tax Adjustments for Failure to Withhold FICA, Without FICA Exemption
2013-2017

| Description | Actuals | | | | Projection | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2013 [1] | | 2014 [2] | | 2015 [3] | | | 2016 [4] | | | Q1-Q2, 2017 [5] | | |
| | Total | % | Total | Average | Total Wages | % | # Employees | Total Wages | % | # Employees | Total Wages | % | # Employees |
| # Employees Included in Adjustment [6] | 5 | 18.5% | 6 | 15.8% | | | | | | | | | |
| **2015-2017 - Wages with Low/No FICA Withholding: [7]** | | | | | | | | | | | | | |
| Low/No FICA wages > $99,999 | | | | | 9,772,339 | | 75 | 7,461,596 | | 62 | - | | - |
| Low/No FICA wages > $30,900 and less than $100,000 | | | | | 8,671,503 | | 146 | 7,799,008 | | 150 | 4,313,184 | | 94 |
| Total Low/No FICA wages > $30,900 | | | | | 18,443,842 | | 221 | 15,260,604 | | 212 | 4,313,184 | | 94 |
| Error rate used by Exam [8] | | | | | 18.5% | | | 18.5% | | | 18.5% | | |
| **Wage Adjustment:** | | | | | | | | | | | | | |
| Medicare Wage Adjustment | 268,184 | | 176,626 | | 3,415,526 | | | 2,826,038 | | | 798,738 | | |
| Social Security Wage Adjustment [9] | 268,184 | | 176,626 | | 3,415,526 | 100% | | 2,826,038 | 100% | | 798,738 | 100% | |
| Additional Medicare Wage Adjustment [9] | | | | | - | 0% | | - | 0% | | - | 0% | |
| **Tax Adjustment:** | | | | | | | | | | | | | |
| FITW @ 25% | $0 | | $0 | | $0 | | | $0 | | | $0 | | |
| Medicare @ 2.9% | 7,777 | | 5,122 | | 99,050 | | | 81,955 | | | 23,163 | | |
| Social Security @ 12.4% | 33,255 | | 21,902 | | 423,525 | | | 350,429 | | | 99,043 | | |
| Additional Medicare @ 0.9% | | | | | - | | | - | | | - | | |
| Total Tax Adjustment | $41,032 | | $27,024 | | $522,575 | | | $432,384 | | | $122,206 | | |
| Accuracy Penalty @ 20% | $8,206 [10] | | $5,405 | | $104,515 | | | $86,477 | | | $24,441 | | |
| FTD Penalty @ 10% | 2,052 [11] | | 1,351 [11] | | 26,129 | | | 21,619 | | | 6,110 | | |
| Total Penalties | $10,258 | | $6,756 | | $130,644 | | | $108,096 | | | $30,552 | | |

Notes and sources:
[1] Agrees to 2013-14 examination workpaper, "Taxpayer's Response to IDR ET-10 - Substantiation for FICA Exemption - 2013." Schedule will be provided upon request.
[2] Agrees to 2013-14 examination workpaper, "Taxpayer's Response to IDR ET-10 - Substantiation for FICA Exemption - 2014." Schedule will be provided upon request.
[3] Agrees to IRS Martinsburg Data Center - Forms W-2 with Low or No FICA Withholding - 2015. Schedule will be provided upon request.
[4] Agrees to IRS Martinsburg Data Center - Forms W-2 with Low or No FICA Withholding - 2016. Schedule will be provided upon request.
[5] Agrees to IRS Martinsburg Data Center - Forms W-2 with Low or No FICA Withholding - 2017. Schedule will be provided upon request.
[6] Examiner in the 2013-14 cycle tested a small percentage of wages where there was no FICA withholding and determined there was an 18.5% and 15.8% improper FICA withholding rate for 2013 and 2014, respectively. 2013-14 Examiner did not expand the sample to the entire population of employees for whom there was no FICA withholding.
[7] Examiner in the 2015-17 examination ran IRPTRI reports and tabulated and stratified those employees with little or no FICA withholding. Employees with cumulative wages below $30,900 were ignored.
[8] In calculating the wage adjustment, Exam used the higher of the 2013-14 error rates for improper FICA withholding.
[9] Exam applied the conservative assumption that 100% of the adjustment is subject to Social Security tax and 0% is subject to Additional Medicare tax.
[10] Examiner in the 2013-14 cycle asserted $8,100 accuracy penalty. However, $41,032 x 20% = $8,206. (Computation error by prior Examiner).
[11] FTD penalty was not asserted in 2013-14 examination, because it was not materially in excess of Campus' minimum threshold for assertion of $250 per quarter per issue.

ET 3

**Altaba Inc.**
EIN: ███8689
Form 941 Employment Tax Examination
Actual and Projected Wage and Tax Adjustments for Free Unlimited Meals and "Snacks"
2013-2017

| | Actuals | | | | Projection | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2013 | | 2014 | | 2015 | | 2016 | | 2017 | |
| Description | Total | % | Total | % | Total | % | Total | % | Total | % |
| # Forms W-2 [1] | 9,723 | | 11,131 | | 10,240 | | 9,434 | | 5,464 | |
| # Employees Included in Adjustment [2] | 9,723 | 100.00% | 11,131 | 100.00% | 10,240 | | 9,434 | | 5,464 | |
| | | | | | | | | | | |
| General Ledger - Kitchen Expense [3] | $28,229,341 | | $36,577,649 | | | | | | | |
| | | | | | | | | | | |
| _Taxpayer's Computation of Direct Operating Cost Excluding "Snacks" [4]_ | | | | | | | | | | |
| Sunnyvale Food | $7,499,729 | | $10,819,499 | | | | | | | |
| Sunnyvale Labor | 5,726,457 | | 6,232,171 | | | | | | | |
| Sunnyvale Catering Costs | - | | - | | | | | | | |
| Hillsboro Food | 726,711 | | 415,645 | | | | | | | |
| Hillsboro Labor | 332,972 | | 409,644 | | | | | | | |
| Food All Other Locations | 4,328,404 | | 7,629,829 | | | | | | | |
| Burbank Food Cards | 513,302 | | 612,474 | | | | | | | |
| Total Direct Operating Costs | 19,127,575 | | 26,119,262 | | | | | | | |
| Times 150% | $28,691,363 | | $39,178,893 | | | | | | | |
| | | | | | | | | | | |
| _Taxpayer's Computation of "Adjusted Direct Operating Cost" Excluding "Snacks" [5]_ | | | | | | | | | | |
| Sunnyvale Food | $7,499,729 | | $10,819,499 | | | | | | | |
| Sunnyvale Labor | 2,465,005 | | 2,465,005 | | | | | | | |
| Sunnyvale Catering Costs | (490,556) | | (422,261) | | | | | | | |
| Hillsboro Food | 726,711 | | 415,645 | | | | | | | |
| Hillsboro Labor | 159,827 | | 196,629 | | | | | | | |
| Food All Other Locations | 1,442,801 | | 2,543,276 | | | | | | | |
| Burbank Food Cards | 171,101 | | 204,158 | | | | | | | |
| Total "Adjusted" Direct Operating Costs | 11,974,618 | | 16,221,951 | | | | | | | |
| Times 150% | $17,961,927 | | $24,332,927 | | | | | | | |
| | | | | | | | | | | |
| _Fair Market Value of Meals and "Snacks" Provided to Employees:_ | | | | | | | | | | |
| FMV of Meals and "Snacks" [3] | $28,229,341 | | $36,577,649 | | $34,795,520 | | $32,405,790 | | $11,308,659 | |
| Average FMV per Form W-2 [6] | $2,903 | | $3,286 | | $3,398 | | $3,435 | | $3,548 | |
| Increase in FMV [7] | | | 13.2% | | 3.4% | | 1.1% | | 3.3% | |
| | | | | | | | | | | |
| _Wage Adjustment:_ | | | | | | | | | | |
| FITW & Medicare Wage Adjustment | $28,229,341 | | $36,577,649 | | $34,795,520 | | $32,405,790 | | $11,308,659 | |
| Social Security Wage Adjustment [8] | 28,229,341 | 100% | 36,577,649 | 100% | 34,795,520 | 100% | 32,405,790 | 100% | 11,308,659 | 100% |
| Additional Medicare Wage Adjustment [8] | 28,229,341 | 100% | 36,577,649 | 100% | - | 0% | - | 0% | - | 0% |

*See Tab ET 4, Forms W-2 and 1099-MISC Data per PMFOLS & BMFOLU Transcripts - 2013-2017.*

| Tax Adjustment: | | | | | |
|---|---|---|---|---|---|
| FITW @ 25% | $7,057,335 | $9,144,412 | $8,698,880 | $8,101,448 | $2,827,165 |
| Medicare @ 2.9% | 818,651 | 1,060,752 | 1,009,070 | 939,768 | 327,951 |
| Social Security @ 12.4% | 3,500,438 | 4,535,628 | 4,314,644 | 4,018,318 | 1,402,274 |
| Additional Medicare @ 0.9% [9] | 254,064 | 329,199 | - | - | - |
| Total Tax Adjustment | $11,630,488 | $15,069,991 | $14,022,594 | $13,059,534 | $4,557,390 |
| | | | | | |
| Accuracy Penalty @ 20% | $2,326,098 | $3,013,998 | $2,804,519 | $2,611,907 | $911,478 |
| FTD Penalty @ 10% | 215,954 | 279,819 | 266,186 | 247,904 | 86,511 |
| Total Penalties | $2,542,052 | $3,293,817 | $3,070,705 | $2,859,811 | $997,989 |

Notes and sources:

[1] See Tab ET 4, Forms W-2 and 1099-MISC Data per PMFOLS & BMFOLU Transcripts - 2013-2017.

[2] It is the Taxpayer's oral and written testimony that all employees are provided unlimited meals and "snacks" without discrimination. The Taxpayer provided no evidence in 2013-14 that non-employees consumed any meals. Absent that substantiation, Exam concludes that only employees received free meals and "snacks" in the "employer's eating facilities for employees", break rooms, and coffee bars.

[3] Examiner in 2013-14 cycle used total cost of food program (General Ledger account for "Kitchen Expenses"), which includes the cost of "snacks", as the fair market value of meals and snacks under the *general valuation rule* . Examiner used the general valuation rule because Exam did not accept the Taxpayers computation of Direct Costs for the reasons given in footnote [2] below), and because the Direct Food Costs x 150% under the *special valuation rule* exceed the General Ledger total costs for "Kitchen Expenses." See 2013-14 NOPA ET12-5, *Meals & Snacks* .

[4] Examiner in the 2013-14 examination did not accept the Taxpayer's Direct Food Costs because those costs excluded the cost of "snacks" (which are unlimited, continuously provided, and comprise a cold breakfast buffet), because the Taxpayer computed the costs based on an unsubstantiated sample that the Taxpayer unilaterally selected without consulting Exam or obtaining Exam's agreement. Exam does not agree that the sample is adequate evidence upon which to base its proposed computation.

[5] Examiner in the 2013-14 examination did not accept the Taxpayer's "adjusted" Direct Food Costs because those costs excluded the cost of unlimited, continuously provided "snacks", the Taxpayer did not substantiate the costs or requested adjustments, and Examiner did not agree with the reasoning for some of the requested exclusions. For example, there is no basis to exclude assumed management fee and overhead for meals prepared offsite by a third party (such as a restaurant or caterer) in the third party's own business premises. The third party's business premises are not an "employer operated eating facility for employees" for which the special valuation rule for meals can be applied. See Exam's rebuttal for 2013-14 examination for Exam's complete analysis and critique of the Taxpayer's computation of Direct Operating Costs. In the 2015-2017, Exam has issued IDRs requesting direct operating costs including "snacks", but the Taxpayer has not yet provided this information.

[6] The Taxpayer provided no evidence in 2013-14 that non-employees consumed any meals. Exam has computed an average FMV per diner based on the number of Forms W-2 filed by the Taxpayer.

[7] For 2015-2017, Exam applied the increase in the National Average Wage Index to Kitchen Expense. Exam computed the average FMV per employee first (for 2015 based on the average FMV per employee in 2014), multiplied by the increase from 2014 to 2015 in the National Average Wage Index), and then multiplied that average FMV per employee by the number of forms W-2 actually filed by the Taxpayer for the calendar year. For 2017, a pro rata amount for the Taxpayer's 7 months of operations is included in the computation. After that date the meals were provided by the successor employer, Oath Holdings Inc.

[8] Exam applied the conservative assumption that 100% of the adjustment is subject to Social Security tax and 0% is subject to Additional Medicare tax.

[9] The 2013-14 examination NOPA proposed Additional Medicare Tax on the entire adjustment, in additional to Social Security tax on the entire adjustment. For purposes of the 2015-17 computation, only Social Security tax is computed because it is the more conservative approach.

ET 3

**Altaba Inc.**  **ET 4**

**EIN:**  689

**Form 941 Employment Tax Examination**

**Forms W-2 and 1099-MISC Data**

**2013-2017**

| Tax Period | W-2 | | | 1099-MISC | | | Total W-2 and 1099-MISC | | |
|---|---|---|---|---|---|---|---|---|---|
| | No. | Total | Average | No. | Total | Average | No. | Total | Average |
| 2013 | 9,723 | $1,362,212,450 | $140,102 | 807 | $425,051,108 | $526,705 | 10,530 | $1,787,263,558 | $169,731 |
| 2014 | 11,131 | 1,851,238,137 | 166,314 | 833 | 404,642,136 | 485,765 | 11,964 | 2,255,880,273 | 188,556 |
| 2015 | 10,240 | 1,825,202,175 | 178,242 | 962 | 381,193,271 | 396,251 | 11,202 | 2,206,395,446 | 196,964 |
| 2016 | 9,434 | 1,525,848,853 | 161,739 | 781 | 337,906,793 | 432,659 | 10,215 | 1,863,755,646 | 182,453 |
| Q1-Q2 2017 | 5,464 | 655,172,347 | 119,907 | 66 | 44,767,921 | 678,302 | 5,530 | 699,940,268 | 126,571 |

Source: PMFOLS and BMFOLU transcripts for 2013-2017, MFT 01.

**Altaba Inc.**　　　　　　　**ET 5**
**EIN:** ▓▓▓▓ **689**
**Form 941 Employment Tax Examination**
**Table of Adjustments for Inflation**
**2013-2017**

| Tax Period | National Average Wage Index [1] | | Cost of Living Index [2] | | Inflation Factor Applied by Exam |
|---|---|---|---|---|---|
| | Average | % Increase | Average | % Increase | |
| 2013 | $44,888 | n/a | 229.324 | n/a | |
| 2014 | 46,482 | 3.4% | 232.771 | 1.5% | |
| 2015 | 48,099 | 3.4% | 231.810 | -0.4% | 3.4% |
| 2016 | 48,642 | 1.1% | 234.076 | 1.0% | 1.1% |
| 2017 | 50,322 | 3.3% | 238.065 | 1.7% | 3.3% |

| Monthly Cost of Living Index [2] | | | | | |
|---|---|---|---|---|---|
| Month | 2013 | 2014 | 2015 | 2016 | 2017 |
| Jan | 226.520 | 230.040 | 228.294 | 231.061 | 236.854 |
| Feb | 228.677 | 230.871 | 229.421 | 230.972 | 237.477 |
| Mar | 229.323 | 232.560 | 231.055 | 232.209 | 237.656 |
| Apr | 228.949 | 233.443 | 231.520 | 233.438 | 238.432 |
| May | 229.399 | 234.216 | 232.908 | 234.436 | 238.609 |
| Jun | 230.002 | 234.702 | 233.804 | 235.289 | 238.813 |
| Jul | 230.084 | 234.525 | 233.806 | 234.771 | 238.617 |
| Aug | 230.359 | 234.030 | 233.366 | 234.904 | |
| Sep | 230.537 | 234.170 | 232.661 | 235.495 | |
| Oct | 229.735 | 233.229 | 232.373 | 235.732 | |
| Nov | 229.133 | 231.551 | 231.721 | 235.215 | |
| Dec | 229.174 | 229.909 | 230.791 | 235.390 | |
| Ave | 229.324 | 232.771 | 231.810 | 234.076 | 238.065 |
| % Increase (Decrease) | | 1.5% | -0.4% | 1.0% | 1.7% |

Notes and sources:

[1] National Average Wage Index:  Tabulated by the Social Security Administration,
    measured by annual wage data for wages subject to FITW and contributions to deferred
    compensation plans.  See: https://www.ssa.gov/OACT/COLA/AWI.html (last visited
    10/17/2019).

[2] Cost of Living Index:  The Bureau of Labor Statistics (BLS) publishes the Consumer Price
    Index for Urban Wage Earners and Clerical Workers (CPI-W) on a monthly basis.
    See: https://www.ssa.gov/OACT/STATS/cpiw.html (last visited 10/17/2019).

Altaba Inc.
EIN ████ 689 [1][2]
Non-Examination Liabilities
2013-2019

| Year | Per BMFOLT | Projected | Totals |
|------|-----------|-----------|--------|
| 2013 | ($1,359,500.89) | $0.00 | ($1,359,500.89) |
| 2014 | (464.87) | - | (464.87) |
| 2015 | (2,318.10) | - | (2,318.10) |
| 2016 | (2,401.92) | - | (2,401.92) |
| 2017 | 52,477.75 | - | 52,477.75 |
| 2018 | - | - | - |
| 2019 | - | 2,986,926.84 | 2,986,926.84 |
| 2020 | - | 4,433,827.58 | 4,433,827.58 |
| 2021 | - | 4,433,827.58 | 4,433,827.58 |
| 2022 | - | 4,433,827.58 | 4,433,827.58 |
| 2023 | - | 4,433,827.58 | 4,433,827.58 |
| 2024 | - | 4,433,827.58 | 4,433,827.58 |
| 2025 | - | 4,433,827.58 | 4,433,827.58 |
| 2026 | - | 4,433,827.58 | 4,433,827.58 |
| 2027 | - | 4,433,827.58 | 4,433,827.58 |
| 2028 | - | 4,433,827.58 | 4,433,827.58 |
| 2029 | - | 4,433,827.58 | 4,433,827.58 |
| Totals | ($1,312,208.03) | $47,325,202.67 | $46,012,994.64 |

Notes:

[1] This computation excludes potential CAWR liabilities.  CAWR liabilities arise when
there is a difference between what the employer reported on Form 941 and what the
the employer reported on Forms W-2 and W-3.  CAWR liabilities have been excluded
because for 2015-17 they net to ($22,283.73).  BMFOLU (CAWR) reports are not yet
available for 2018-2019 on the Business Master File.

[2] The liabilities and credits shown in this spreadsheet have already been posted by the
Campus, with the exception of the remainder of 201912-202912.  Exam has projected
the employment tax liability for the remainder of the 4th quarter of 2019 as described
on tab ET Non-Exam BMFOLT.  The projection assumes that the entity will pay a
bonus for each year in the year to which it accrues and not in a later period.

Altaba Inc.
EIN ████8689
Non-Examination Liabilities Per BMFOLT
Periods 201303 to 201909
As of 11/15/2019

| | BMFOLT | | | |
|---|---|---|---|---|
| Period | MFT 01<br>Form 941 | MFT 10<br>Form 940 | MFT 16<br>Form 945 | Totals |
| 201303 | $0.00 | | | $0.00 |
| 201306 | (33,493.62) | | | (33,493.62) |
| 201309 | - | | | - |
| 201312 | (1,326,007.27) | - | - | (1,326,007.27) |
| 2013 Total | (1,359,500.89) | - | - | (1,359,500.89) |
| | | | | |
| 201403 | (464.87) | | | (464.87) |
| 201406 | - | | | - |
| 201409 | - | | | - |
| 201412 | - | - | - | - |
| 2014 Total | (464.87) | - | - | (464.87) |
| | | | | |
| 201503 | - | | | - |
| 201506 | - | | | - |
| 201509 | - | | | - |
| 201512 | - | - | (2,318.10) | (2,318.10) |
| 2015 Total | - | - | (2,318.10) | (2,318.10) |
| | | | | |
| 201603 | - | | | - |
| 201606 | - | | | - |
| 201609 | - | | | - |
| 201612 | - | - | (2,401.92) | (2,401.92) |
| 2016 Total | - | - | (2,401.92) | (2,401.92) |
| | | | | |
| 201703 | 56,065.96 | | | 56,065.96 |
| 201706 | (3,588.21) | | | (3,588.21) |
| 201709 | - | | | - |
| 201712 | - | - | - | - |
| 2017 Total | 52,477.75 | - | - | 52,477.75 |
| | | | | |
| 201803 | - | | | - |
| 201806 | - | | | - |
| 201809 | - | | | - |
| 201812 | - | - | - | - |
| 2018 Total | - | - | - | - |
| | | | | |
| 201903 | - | | | - |
| 201906 | - | | | - |
| 201909 | - | | | - |
| 201903-201909 Total | - | - | - | - |

Altaba Inc.
EIN ███ 689
Non-Examination Projected Liabilities
Periods 201912 to 202912
As of 11/15/2019

| Period | | MFT 01 Form 941 | MFT 10 Form 940 | MFT 16 Form 945 | Totals |
|---|---|---|---|---|---|
| | | | Projected | | |
| **Calculation of Average Quarterly Employment Tax Liability:** | | | | | |
| Liabilities per BMFOLT: | | | | | |
| 201712 | | $519,924.69 | | | |
| 201803 | | 986,578.09 | | | |
| 201806 | | 2,473,216.11 | | | |
| 201809 | [a] | 464,429.42 | | | |
| 201812 | [a] | 464,055.61 | $714.00 | | |
| 201903 | | 3,123,058.80 | | | |
| 201906 | [a] | 410,248.71 | | | |
| 201909 | [a] | 408,005.97 | | | |
| Average "Regular" Quarter [1] | [b]=Average[a] | 436,684.93 | 714.00 | | |
| **Calculation of Annual Bonus Amount:** | | | | | |
| 201903 Liability per BMFOLT | | 3,123,058.80 | | | |
| Minus: Average "Regular" Quarter [1] | =-[b] | (436,684.93) | | | |
| Equals: Projected Annual Bonus | [c] | 2,686,373.87 | - | $0.00 | |
| **Calculation of Projected Liabilities:** | | | | | |
| Average "Regular" Quarter [1] | =[b] | 436,684.93 | 714.00 | | |
| Minus: 201912 Credits per BMFOLT @ 11/15/2019 | | (136,467.96) | (378.00) | | |
| 201912 Remaining "Regular" Liability | | 300,216.97 | 336.00 | - | |
| Plus: Annual Bonus Amount | =[c] | 2,686,373.87 | - | - | |
| 201912 Remaining Liability | | 2,986,590.84 | 336.00 | - | 2,986,926.84 |
| 202003 | =[b] | 436,684.93 | | | 436,684.93 |
| 202006 | =[b] | 436,684.93 | | | 436,684.93 |
| 202009 | =[b] | 436,684.93 | | | 436,684.93 |
| 202012 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2020 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| 202103 | =[b] | 436,684.93 | | | 436,684.93 |
| 202106 | =[b] | 436,684.93 | | | 436,684.93 |
| 202109 | =[b] | 436,684.93 | | | 436,684.93 |
| 202112 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2021 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| 202203 | =[b] | 436,684.93 | | | 436,684.93 |
| 202206 | =[b] | 436,684.93 | | | 436,684.93 |
| 202209 | =[b] | 436,684.93 | | | 436,684.93 |
| 202212 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2022 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |

| | | | | | |
|---|---|---|---|---|---|
| 202303 | =[b] | 436,684.93 | | | 436,684.93 |
| 202306 | =[b] | 436,684.93 | | | 436,684.93 |
| 202309 | =[b] | 436,684.93 | | | 436,684.93 |
| 202312 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2023 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| | | | | | |
| 202403 | =[b] | 436,684.93 | | | 436,684.93 |
| 202406 | =[b] | 436,684.93 | | | 436,684.93 |
| 202409 | =[b] | 436,684.93 | | | 436,684.93 |
| 202412 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2024 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| | | | | | |
| 202503 | =[b] | 436,684.93 | | | 436,684.93 |
| 202506 | =[b] | 436,684.93 | | | 436,684.93 |
| 202509 | =[b] | 436,684.93 | | | 436,684.93 |
| 202512 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2025 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| | | | | | |
| 202603 | =[b] | 436,684.93 | | | 436,684.93 |
| 202606 | =[b] | 436,684.93 | | | 436,684.93 |
| 202609 | =[b] | 436,684.93 | | | 436,684.93 |
| 202612 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2026 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| | | | | | |
| 202703 | =[b] | 436,684.93 | | | 436,684.93 |
| 202706 | =[b] | 436,684.93 | | | 436,684.93 |
| 202709 | =[b] | 436,684.93 | | | 436,684.93 |
| 202712 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2027 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| | | | | | |
| 202803 | =[b] | 436,684.93 | | | 436,684.93 |
| 202806 | =[b] | 436,684.93 | | | 436,684.93 |
| 202809 | =[b] | 436,684.93 | | | 436,684.93 |
| 202812 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2028 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |
| | | | | | |
| 202903 | =[b] | 436,684.93 | | | 436,684.93 |
| 202906 | =[b] | 436,684.93 | | | 436,684.93 |
| 202909 | =[b] | 436,684.93 | | | 436,684.93 |
| 202912 | =[b]+[c] | 3,123,058.80 | 714.00 | - | 3,123,772.80 |
| 2029 Total | | 4,433,113.58 | 714.00 | - | 4,433,827.58 |

Notes:

JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Altaba, Inc. (F.K.A. YAHOO! Inc.) |

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Dennis Donohue and Catriona Coppler, U.S. Department of Justice, Tax Division, P.O. Box 227, Ben Franklin Station, Washington, D.C. 20044, 202-307-6420 (DMD), 202-514-5153 (CMC)

Attorneys *(If Known)*
Paul J. Lockwood, Arthur R. Bookout, Matthew P. Majarian, and Gregory P. Ranzini,  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, 920 N. King Street, P.O. Box 636, Wilmington, DE 19899-0636

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402
Brief description of cause:
Suit to reduce federal income and employment tax liabilities to judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
1,143,629,408.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE  * Case will be removed shortly

DOCKET NUMBER  Del. Chancery Ct. 2020-413

DATE
06/16/2020

SIGNATURE OF ATTORNEY OF RECORD
/c/ Catriona M. Coppler

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____