IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br> Plaintiff, )<br>  )<br> v. )<br>  )<br> ALTABA, INC. (F.K.A. YAHOO! Inc.) )<br>  )<br> Defendant. ) | C.A. No. 20-811-LPS |

**VERIZON COMMUNICATIONS INC. AND OATH HOLDINGS INC.'S
<u>MOTION TO INTERVENE</u>**

1.  Third parties Verizon Communications Inc. ("Verizon Communications") and Oath Holdings Inc. (formerly known as Yahoo! Holdings, Inc.) ("Oath" and, together with Verizon Communications, "Verizon") move, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in this action because any adjudication of the United States' claims may directly impact Verizon's past and future federal tax liabilities[1]

2.  The United States, on behalf of the IRS, seeks a judgment in this action against Defendant Altaba, Inc. ("Altaba"), to collect purportedly unpaid federal tax liabilities owed by Altaba for the years 2015-2019.

---

[1] Verizon believes that no pleading is necessary for Verizon's intervention in this civil action, in part because Altaba has not yet responded to the Complaint and thus Verizon cannot know its position on the United States' claims. Furthermore, as explained below, Verizon's basis for intervention by right is only necessary because of the possibility that Altaba could effectively shift tax liability to Verizon through this proceeding if Verizon is not allowed to participate. Should the Court determine that Verizon must separately plead its claims in order to properly intervene, Verizon will file an appropriate pleading after Altaba has answered the Complaint and, to the extent Altaba asserts counterclaims, the United States has answered Altaba's counterclaims, or in accordance with a schedule ordered by the Court.

3. Oath is a former subsidiary of Altaba and has several liability for certain of Altaba's tax liabilities for the years 2017 and earlier, including certain of the federal tax liabilities that are the subject of the Plaintiff United States' claims. Altaba is obligated to indemnify Oath for these tax liabilities.

4. Because Verizon's potential several liability and its tax-related indemnification claims against Altaba both arise out of the same federal tax liabilities that are the basis of the United States' claims, Verizon's interest in this case places it squarely within the requirements for intervening as a matter of right pursuant to Fed. R. Civ. P. 24(a). Further, by reason of Altaba's potential use of certain tax attributes and otherwise, Verizon's future tax liabilities may be affected by whatever judgment is entered in this matter and may be left uncertain depending on the outcome here. Logic and efficiency dictate that Verizon's interest in any adjudication of Altaba's tax liability be considered as a part of this action. Although intervention as a matter of right under Rule 24(a) is the appropriate result here, even if the Court finds that intervention of right is not proper, Verizon should be allowed to intervene under the discretionary standard of Rule 24(b).

## BACKGROUND

**A.   Verizon Purchases Yahoo!, and Altaba Agrees to Indemnify Verizon for Certain Liabilities**

5. Prior to June 2017, Defendant Altaba was known as Yahoo! Inc. Its primary operation involved running the Internet business, Yahoo!. Verizon Communications agreed to acquire the Yahoo! operating business in 2016, and the transaction closed in June 2017.

6. In connection with Verizon Communications' acquisition of the Yahoo! operating business, Verizon Communications and Altaba entered into a Stock Purchase Agreement dated July 23, 2016, as amended February 20, 2017 (the "Purchase Agreement"), and Verizon Communications, Altaba, and Oath entered into a Reorganization Agreement dated July 23, 2016,

as amended as of February 20, 2017 and March 23, 2018 (together, with the Purchase Agreement, the "Transaction Agreements").  Pursuant to the Transaction Agreements, Altaba placed Yahoo!'s operating assets into a newly-created subsidiary, Oath (then known as Yahoo! Holdings, Inc.), and Verizon Communications acquired all of Oath's stock.

7. The Transaction Agreements set forth the rights and obligations of Verizon Communications, Oath, and Altaba for Yahoo!'s historical liabilities.  In particular, the Reorganization Agreement provided that Altaba would retain liability and be responsible for indemnifying Oath for numerous categories of actual or contingent claims.

8. Under Section 5.5 of the Reorganization Agreement, Altaba agreed to indemnify Oath for a number of federal, state, and local tax liabilities, including among other things, all tax liabilities of Altaba and its subsidiaries relating to the Altaba retained assets and business and all federal and state income tax liabilities relating to Altaba's 2017 tax year including, but not limited to, any federal and state income tax liabilities relating to the sale of the Yahoo! operating business to Verizon.

9. Under relevant federal income tax regulations, Oath and its direct and indirect U.S. corporate subsidiaries are severally liable for Altaba's unpaid federal tax liabilities for the 2017 and earlier tax years,[2] and the IRS may pursue Oath for the full amount of such liabilities.  It is for this critical reason, among others, that the Reorganization Agreement requires Altaba to indemnify Oath for the specified tax liabilities.

---

[2] Federal income tax regulations provide that "the common parent corporation *and each subsidiary which was a member of the group* during any part of the consolidated return year shall be severally liable for the tax for such year." 26 C.F.R. § 1.1502-6(a) (emphasis added).  For the tax years ending on or before December 31, 2017, Oath and its U.S. corporate subsidiaries were wholly owned subsidiaries of Altaba and therefore were members of the "group" of which Altaba was the common parent, and because Altaba filed consolidated U.S. federal income tax returns in each such year, such years are "consolidated return years." 26 C.F.R. §§ 1.1502-1(a) & (d).

### B. Altaba Notifies Verizon of Its Dissolution But Proposes Holding Back Inadequate Security for Its Indemnification Obligations to Verizon

10. On October 4, 2019, Altaba dissolved and began the process of winding up its affairs.

11. On May 28, 2020, Altaba filed a Verified Petition for Determinations Pursuant to 8 *Del. C.* § 280 (the "Petition") in the Delaware Court of Chancery (now C.A. No. 20-0813-LPS (D. Del.), previously, C.A. No. 2020-0413-JTL (Del. Ch.), the "Security Action"). Security Action, D.I. 1, Ex. A. The Petition seeks a judicial determination of the amount of money Altaba must hold back as security to compensate third parties for all known and contingent claims against Altaba. The Petition names the IRS and Verizon, among others, as claimants. On June 4, 2020, the Court of Chancery entered an order requiring Altaba to provide notice to known claimants and requiring any claimants who objected to Altaba's proposed security to enter an appearance and submit a statement of their position by July 2, 2020.

12. On June 16, 2020, the United States removed the Court of Chancery action to this Court. Security Action, D.I. 1 (the "Notice of Removal"). The Notice of Removal states that the United States has a claim against Altaba in the amount of $1,501,161,359 relating to outstanding federal income and employment tax liabilities. Notice of Removal ¶ 9. The Notice of Removal further states that the Court of Chancery lacks jurisdiction over the federal tax claims, and that this Court has original jurisdiction over them, because a determination of the United States' claim for security would require a determination of Altaba's outstanding federal tax liabilities under federal law. *See* Notice of Removal ¶¶ 27, 41-44.

13. That same day, the United States brought this action, seeking to reduce certain of Altaba's tax liabilities to judgment. The tax liabilities that the United States seeks to bring to judgment in this action include Altaba's income tax liabilities for the 2017 tax year. In its amended

complaint (D.I. 5), the United States claims that Altaba owes over $250 million in additional income tax liability (including interest) for the 2017 tax year. As noted above, Oath is severally liable for these tax liabilities, and Altaba has agreed to indemnify Oath for them.

14. On July 2, 2020, Verizon filed its Statement of Claimants Verizon Communications Inc. and Oath Holdings Inc. in this Court. Security Action, D.I. 11 ("Statement of Claims"). Verizon's Statement of Claims explains that Altaba is obligated to indemnify Verizon for a number of liabilities, including certain federal, state, and local tax liabilities for Altaba's 2017 and earlier tax years. Statement of Claims ¶ 17. As noted, under relevant federal income tax regulations, Oath and its direct and indirect U.S. corporate subsidiaries are severally liable for Altaba's unpaid federal tax liabilities for the 2017 and earlier tax years. Accordingly, Verizon has taken the position in its Statement of Claims that Altaba must hold back as security an amount sufficient to cover the full extent of Altaba's potential federal tax liabilities for those tax years because the IRS may seek payment from Oath for those liabilities, including if the security held back for the IRS claims proves to be insufficient. *Id.*

15. Altaba, in contrast, seeks to hold back a significantly lesser amount. The Petition states that the IRS is currently requesting $1,501,161,359 in security for claims related to income and employment tax matters from 2016-2029. Petition ¶ 53. While the Petition states that Altaba will withhold that amount on an interim basis, Altaba intends to ask the Court to order $659,177,452 in final security with respect to the IRS's claims. Petition ¶¶ 54-55. Altaba contends that this amount is also sufficient to cover Verizon's claim for indemnification for federal tax liabilities, which Altaba says is "duplicative" of the IRS's claim. Petition ¶ 57(c)(ii). Accordingly, Altaba's position is that no additional security is required for Verizon's federal tax-related claims. Petition ¶ 58. And, upon information and belief, Altaba maintains the position notwithstanding

that the United States now alleges in its amended complaint (D.I. 5) that Altaba owes over $250 million in additional income tax liability for the 2017 tax year alone.

16. Despite Verizon's numerous requests, Altaba has refused to allow Verizon to participate in the process with the IRS for negotiating the security to be set aside for the IRS's tax claims and has prevented Verizon from having adequate visibility into those discussions, including the bases for the IRS's claims concerning Altaba's tax liabilities for periods for which Oath is severally liable. On May 6, 2020, counsel for Verizon sent Altaba a letter requesting that Altaba include it in conversations with the IRS about the proposed security for any federal tax claims.[3] On May 22, 2020, counsel for Altaba responded by contending that Verizon was not entitled to participate in discussions with the IRS regarding the IRS's claim for security and asserting that any attempt by Verizon to contact the IRS directly on these matters would be a breach of the Transaction Agreements. While Verizon does not believe that contacting the IRS would be a breach of the Transaction Agreements, it continues to seek a cooperative approach to working with both the IRS and Altaba. To date, Altaba continues to refuse Verizon's request for a cooperative approach to communications with the IRS. Consequently, Verizon currently lacks visibility into whether the IRS may assert additional claims for which Oath may ultimately be liable if sufficient security is not held back and Altaba is unable to pay.

17. Finally, to the extent Altaba uses certain federal tax attributes related to the Yahoo! operating business acquired by Verizon (such as research and development credits, capital losses, and net operating losses) to reduce its federal tax liabilities, that use can negatively affect Verizon's ability to use those same tax attributes in the future to reduce its own tax liabilities. Absent the

---

[3] Verizon had made this same request on numerous prior occasions, both orally and in a March 18, 2020 letter.

ability to participate in this litigation, Verizon will have no visibility into and no ability to be heard on whether or not the use of tax attributes is appropriate, or the extent to which it is appropriate, for Altaba to use particular tax attributes to reduce its federal tax liabilities.

## ARGUMENT

18. Under Rule 24 of the Federal Rules of Civil Procedure, a party may intervene as of right or with permission of the court. Verizon meets both the mandatory and permissive intervention standards.

### I. The Court Should Grant Verizon's Motion to Intervene as a Matter of Right

#### A. Intervention As A Matter Of Right Under Rule 24(a)(2)

19. Rule 24(a)(2) permits intervention as a matter of right when a party "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "Courts construe Rule 24 liberally in favor of intervention." *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, C.A. No. 14-874-SLR, 2015 WL 5163035, at *2 (D. Del. Sept. 3, 2015).

20. "The Third Circuit has articulated four elements that must be established to permit intervention pursuant to Rule 24(a)(2): "'(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *Crystallex Int'l Corp. v. PDV Holding Inc.*, C.A. No. 15-1082-LPS, 2019 WL 6785504, at *5 (D. Del. Dec. 12, 2019) (citing *United States v. Terr. of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014); *see also Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 948 (3d Cir. 2012); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder,*

*Inc.*, 72 F.3d 361, 366 (3d Cir. 1995).  "The Third Circuit's approach favors 'pragmatism' and 'elasticity' over 'rigid rules' or 'narrow approach[es];' it further 'favors intervention over subsequent collateral attacks.'" *Crystallex Int'l Corp.*, 2019 WL 6785504, at *5 (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970-971 (3d Cir. 1998).  "A very strong showing that one of the requirements is met may result in a lesser showing of another requirement." *Harris v. Pernsley*, 820 F.2d 592, 596 at n.6 (3d Cir. 1987).  As discussed below, all four elements are met for Verizon to intervene as a matter of right.

        **B.**      **Verizon Should Be Allowed To Intervene As A Matter of Right**

21.    All four of the factors that apply to the intervention as a matter of right favor Verizon.

22.    First, Verizon's motion is undoubtedly timely as Verizon did not delay.  Verizon filed this motion during the pleadings stage of this litigation—before Altaba responded to the Complaint—and there has been no scheduling order entered, so there will be no delay of the proceedings nor any prejudice to the parties.  *Dep't of Nat. Res. & Envtl. Control v. Mountaire Farms of Delaware, Inc.*, 375 F. Supp. 3d 522, 528 (D. Del. 2019) ("given that the motion was filed just twenty-five days after DNREC filed its Complaint, and given that this case is still at the pleadings stage, the Court finds that Intervenors did not delay and their motion is timely") (internal citation omitted); *see also Benjamin ex rel. Yock*, 701 F.3d at 948 ("To determine whether the intervention motion is timely, we have listed three factors for courts to consider: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." (quotation marks and citation omitted)).

23.    Second, Verizon faces several liability for certain of the Altaba federal tax obligations that the United States seeks to bring to judgment in this action.  Verizon therefore has

a direct and substantial interest in the claims asserted by the United States against Altaba. That interest will be affected by any judgment against Altaba for past federal tax liability.

24.   Third, there is a substantial likelihood that Verizon's interests will be impaired by any judgment in this action. Unless Verizon is allowed to participate in this proceeding, its federal tax liability for 2017 and earlier tax years will be affected by rulings made by this Court or concessions made by either Altaba or the United States without Verizon having had the opportunity to be heard.

25.   Because Verizon has several liability for Altaba's tax liabilities for the years 2017 and earlier, any judgment in this action with respect to Altaba's 2017 or earlier tax years exposes Verizon to potential additional tax liability. Verizon therefore has a direct interest in any judgment for those tax years in this action. The Court's rulings on the United States's income tax claims for those years will therefore directly implicate, and impair, Verizon's interests.

26.   Moreover, the Court's rulings for later tax years may also implicate and impair Verizon's interests. In the Security Action, Altaba is proposing a lump-sum holdback for the IRS for all tax years and insists that the same holdback is sufficient for Verizon's tax-related indemnification claims. But as shown by the recent amendment to the IRS's complaint in this action, in which the IRS increased its total tax liability claim against Altaba by over $472 million (with interest), including over $208 million for 2018 (D.I. 5 at ¶ 57), the IRS has not completed its analysis of Altaba's tax liability for all tax years and may still determine to claim greater amounts not only for tax years for which Verizon is severally liable, but also later tax years. To the extent any lump-sum security held back by Altaba proves inadequate because the IRS increases its tax liability claim for future years, Verizon—which has several liability for 2017 and earlier tax years—may be left "holding the bag" for those earlier tax years.

27. To the extent Altaba uses certain tax attributes related to the Yahoo! operating business acquired by Verizon (such as research and development credits, capital losses, and net operating losses) to reduce its federal tax liabilities, Verizon's ability to use those same attributes in the future to reduce its own tax liabilities may be negatively affected. Absent the ability to participate in this litigation, Verizon will have no opportunity to be heard on the appropriateness of Altaba's use of those tax attributes to reduce its federal tax liabilities or of its resulting impact on Verizon.[4]

28. Moreover, if Verizon is not permitted to intervene—notwithstanding its direct interest in the outcome of this litigation and the litigation's potential effect on Verizon's future tax liabilities, tax-related indemnification rights, and interests—it may nevertheless be estopped from arguing whether certain tax liabilities are correctly determined against Altaba and, by relation, Verizon, because the United States and Altaba will have already presented the issues to this Court and this Court will have decided them. Certain claims and issues determinative of Altaba's, and by virtue of tax law Verizon's (*see* footnote 2, *supra*), federal tax liability, may be subject to *res judicata* or collateral estoppel effect, thus preventing Verizon from litigating and defending such claims and issues on its own behalf. On this basis alone, Verizon should be allowed to intervene. Fed. R. Civ. P. 24 (a)(2) (requiring intervention as of right for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that

---

[4] Although Altaba is obligated under the Transaction Agreements to compensate Verizon for Altaba's use of certain federal and state tax attributes related to the Yahoo! operating business acquired by Verizon, because Altaba is vigorously advocating to provide grossly inadequate security for Verizon's claims in the Security Action, it is all the more important that Verizon have the ability to be heard in this action with respect to Altaba's use of tax attributes.

disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest …").[5]

29. Although Altaba and the United States may reach some agreement or consent judgment to resolve this litigation, the United States may later assert other tax liability theories that it could not assert against Altaba (by virtue of their agreement or a consent judgment) but could potentially raise against Verizon if Verizon is not a party to this action and therefore the settlement or consent judgment. Unless allowed to intervene, Verizon will not have finality with respect to its federal tax liability resulting from its purchase of Yahoo!.

30. Fourth, Altaba cannot adequately protect Verizon's interests. Verizon seeks to intervene for the purpose of protecting its interest as a party with several tax liability for certain tax years and its interest to indemnification under the Transaction Agreements, and to ensure that Altaba does not fashion an arrangement with the United States whereby its post-2017 tax obligations somehow get shifted to 2017 or earlier years—for which Verizon is severally responsible—or that may adversely affect Verizon's own tax liability in future years. Altaba's and Verizon's interests are at odds because Altaba has every incentive to push federal tax liability to years for which Verizon has several liability and to use tax attributes that would otherwise reduce Verizon's future tax liability, all while it is advocating for insufficient security for Verizon's claims in the Security Action.

31. Verizon cannot predict the positions Altaba may take in response to the United States' claims in this action. However, given the history of the relationship between Verizon and Altaba as it relates to Verizon's claims and the matters at issue in the Security Action, including

---

[5] Although it is not required for a proposed intervenor to show that it would be barred by *res judicata* or collateral estoppel, *Steinberg v. Shearson Hayden Stone, Inc.*, 598 F. Supp. 273, 280 (D. Del. 1984), the strong likelihood of such a possibility here greatly favors granting intervention.

among other things Altaba's blanket refusal to allow Verizon to participate in the negotiations between Altaba and the United States concerning the adequacy of security, it is clear that Verizon's interests will not be adequately represented by Altaba. The bar to meet this factor is low. "[A]n intervenor need only show that representation may be inadequate, not that it is inadequate." *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 278 F.R.D. 98, 110 (M.D. Pa. 2011). Verizon is uniquely situated to understand the effect this litigation may have on its future tax obligations, and it should come as no surprise that Altaba—a company in dissolution and seeking to maximize distributions to its stockholders—would have no interest in representing Verizon's interest. Simply put, Altaba's interest in minimizing its own tax liability and potentially finding ways to effectively shift its tax liabilities to Verizon, makes clear that Verizon's interests are not represented in this action.

## II. The Court Should Grant Verizon's Motion to Intervene on the Basis of Permissive Intervention

32. Even if Verizon is not entitled to intervene as of right under Rule 24(a), Verizon meets the discretionary standard for permissive intervention under Rule 24(b)(1)(B). *Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992); *Bell Atlantic-Delaware, Inc. v. Global NAPS South, Inc.*, 77 F.Supp. 2d 492, 502 (D. Del. 1999) ("The decision to permit intervention is within the court's discretion."). "To establish that intervention is warranted under Rule 24(b), the intervenor must demonstrate: (1) an independent basis for subject matter jurisdiction, (2) a timely motion, and (3) a claim or defense that has a common question of law or fact with the primary litigation." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-193-LPS, 2014 WL 4445953, at *2 (D. Del. Sept. 8, 2014). "[T]he central consideration for the exercise of discretion [to permit intervention] is whether allowing intervention will cause delay or prejudice." *Bell Atlantic-Delaware, Inc.,* 77 F. Supp. 2d at 502.

33. First, subject matter jurisdiction clearly exists over the federal tax liability claims at issue. *See* ¶ 12, *supra*.

34. Second, for the reasons explained above, Verizon's motion is timely. *See* ¶ 22, *supra*.

35. Third, Verizon's defenses—arising from the same common nucleus of operative facts as Altaba's federal tax liabilities—involve common questions of law or fact with the "primary litigation." Verizon is severally liable for Altaba's tax liabilities for certain tax years. Adjudication of this matter in the absence of Verizon being allowed to intervene could substantially prejudice Verizon's rights. Although the case is in its earliest stages, Verizon expects that it will defend against claims asserted and positions articulated by both the United States and Altaba regarding Altaba's (and by extension Verizon's) tax liabilities for tax years for which Oath has several liability, as well as claims and positions relating to Altaba's use of tax attributes. Such defenses are plainly based upon the very same facts and questions of law that underly the United States' claims and Altaba's defenses. Indeed, in the Security Action, the United States did not oppose remand of Verizon's claims for security related to Altaba's federal tax liabilities because it agreed that those claims arose from the same common nucleus of operative facts as the United States's tax liability claims against Altaba. Security Action, D.I. 25 at 1 ("The United States agrees with Verizon that there is a common nucleus of operative fact between the Internal Revenue Service's claim for taxes and Verizon's tax-related indemnification claims.").

36. Finally, Verizon's intervention could cause neither delay nor prejudice to the United States or Altaba. This case is at its inception; no discovery has been taken. The Court may enter an appropriate scheduling order that will allow Verizon's participation and still provide for a timely resolution of the United States' claims.

## **CONCLUSION**

37. For the foregoing reasons, the Court should grant Verizon's Motion to Intervene as a matter of right or, in the alternative, as an exercise of the Court's discretion to permit intervention.

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL | By: */s/ Michael A. Pittenger* |
|  | Michael A. Pittenger (#3212) |
| William Savitt | Berton W. Ashman, Jr. (#4681) |
| Adam M. Gogolak | David A. Seal (#5992) |
| WACHTELL, LIPTON, ROSEN & KATZ | Hercules Plaza, 6th Floor |
|  | 1313 North Market Street |
| 51 W. 52nd Street | Wilmington, DE  19801 |
| New York, NY 10019 | (302) 984-6000 |
| (212) 403-1000 | mpittenger@potteranderson.com |
|  | bashman@potteranderson.com |
| Dated:  August 11, 2020 | dseal@potteranderson.com |
| 6837023 |  |
|  | *Attorneys for Third Party Intervenors Verizon Communications Inc. and Oath Holdings Inc.* |